UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

FILED

JUN 29 2015

CLERK, US DISTRICT COURT
NORFOLK, VA

G.G., by his next friend and mother,
DEIRDRE GRIMM,

        Plaintiff,

v.

GLOUCESTER COUNTY SCHOOL
BOARD,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 4:15cv54

Judge Robert G. Doumar
Magistrate Judge Tommy E. Miller

## STATEMENT OF INTEREST OF THE UNITED STATES

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

INTEREST OF THE UNITED STATES ........................................................................ 2

I.    BACKGROUND ...................................................................................................... 3

II.   ARGUMENT ............................................................................................................ 4

   A.    Preliminary Injunction Standard .................................................................. 4

   B.    G.G. Has Established a Likelihood of Success on the Merits Because Title IX Prohibits Discrimination Based on Sex, Including Gender Identity, Transgender Status, and Nonconformity to Sex Stereotypes. .................................................................. 4

      1.    Discrimination Based on Gender Identity, Including Transgender Status, is Discrimination Based on Sex. ................................................................ 5

      2.    Discrimination Based on a Transgender Individual's Nonconformity to Sex Stereotypes is Discrimination Based on Sex. ..................................... 10

   C.    Granting a Preliminary Injunction is in the Public Interest. ........................ 13

CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

*Cases*

*Auer v. Robbins,*
  519 U.S. 452 (1997) .......................................................................................................... 9

*Barnes v. City of Cincinnati,*
  401 F.3d 729 (6th Cir. 2005) .......................................................................................... 11

*Biediger v. Quinnipiac Univ.,*
  691 F.3d 85 (2d Cir. 2012) ................................................................................................ 9

*Brown v. Bd. of Educ.,*
  347 U.S. 483 (1954) .................................................................................................. 13, 14

*Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) ........................................................................................................ 16

*Cohen v. Brown Univ.,*
  991 F. 2d 888 (1st Cir. 1993) .......................................................................................... 13

*Crosby v. Reynolds,*
  763 F. Supp. 666 (D. Me. 1991) ..................................................................................... 16

*Cruzan v. Special Sch. Dist. No. 1,*
  294 F.3d 981 (8th Cir. 2002) .......................................................................................... 16

*D.L. ex rel K.L. v. Balt. Bd. of Sch. Comm'rs,*
  706 F.3d 256 (4th Cir. 2013) ............................................................................................ 8

*Davis v. Monroe Cnty. Bd. of Educ.,*
  526 U.S. 629 (1999) .......................................................................................................... 8

*Doe v. Brimfield Grade Sch.,*
  552 F. Supp. 2d 816 (C.D. Ill. 2008) .............................................................................. 11

*Doe v. Reg'l Sch. Unit 26,*
  86 A.3d 600 (Me. 2014) ................................................................................................... 10

*Doe v. Wood Cnty. Bd. of Educ.,*
  888 F. Supp. 2d 771 (S.D. W. Va. 2012) .......................................................................... 4

*EEOC v. Boh Bros. Const. Co.,*
  731 F.3d 444 (5th Cir. 2013) .......................................................................................... 11

*Elrod v. Burns,*
  427 U.S. 347 (1976) .......................................................................................................... 3

*Etsitty v. Utah Transit Auth.,*
    502 F.3d 1215 (10th Cir. 2007) ............................................................................... 12

*Finkle v. Howard Cnty.,*
    12 F. Supp. 3d 780 (D. Md. 2014) ........................................................................... 11

*Franklin v. Gwinnett Cnty. Pub. Sch.,*
    503 U.S. 60 (1992) ..................................................................................................... 6

*Jennings v. Univ. of N.C.,*
    482 F.3d 686 (4th Cir. 2007) ..................................................................................... 6

*Johnston v. Univ. of Pittsburgh,*
    No. 13-213, 2015 WL 1497753 (W.D. Pa. Mar. 31, 2015) .................................. 7, 12

*Kastl v. Maricopa Cnty. Cmty. Coll. Dist.,*
    2004 WL 200895 (D. Ariz. June 3, 2004) ................................................... 10, 11, 12

*Kastl v. Maricopa Cnty. Cmty. Coll. Dist.,*
    2006 WL 2460636 (D. Ariz. Aug. 22, 2006) .......................................................... 12

*Kastl v. Maricopa Cnty. Cmty. Coll. Dist.,*
    325 Fed. Appx. 492, (9th Cir. 2009) ....................................................................... 12

*League of Women Voters of N.C. v. North Carolina,*
    769 F.3d 224 (4th Cir. 2014) ................................................................................. 4, 5

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ................................................................................................ 12

*Michaels v. Akal Sec., Inc.,*
    No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988 (D. Colo. June 24, 2010) .......... 11

*Montgomery v. Indep. Sch. Dist. No. 709,*
    109 F. Supp. 2d 1081 (D. Minn. 2000) ................................................................... 11

*North Haven Bd. of Educ. v. Bell,*
    456 U.S. 512 (1982) .................................................................................................. 6

*Oncale v. Sundowner Offshore Serv., Inc.,*
    523 U.S. 75 (1998) ..................................................................................................... 7

*PA Dep't of Corr. v. Yeskey,*
    524 U.S. 206 (1998) ................................................................................................... 7

*Palmore v. Sidoti,*
    466 U.S. 429 (1984) ................................................................................................ 16

*Pashby v. Delia,*
    709 F.3d 307 (4th Cir. 2013) ................................................................................ 4

*Pratt v. Indian River Cent. Sch. Dist.,*
    803 F. Supp. 2d 135 (N.D.N.Y. 2011).................................................................. 10

*Preston v. Virginia ex rel New River Comm. Coll.,*
    31 F.3d 203 (4th Cir. 1994) ................................................................................... 6

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989)......................................................................... 6, 7, 10, 11

*Schroer v. Billingston,*
    577 F. Supp. 2d 293 (D.D.C. 2008) ................................................................. 7, 8

*Schwenk v. Hartford,*
    204 F.3d 1187 (9th Cir. 2000) .............................................................................. 7

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985)............................................................................................... 7

*Smith v. City of Salem,*
    378 F.3d 566 (6th Cir. 2004) .......................................................................... 7, 11

*Theno v. Tonganoxie Unified Sch. Dist.,*
    377 F. Supp. 2d 952 (D. Kan. 2005)................................................................... 11

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) .................................................................................................. 4

**Statutes**

20 U.S.C. § 1687.......................................................................................................... 5

28 U.S.C § 517.............................................................................................................. 2

Cal. Ed. Code § 221.5 ................................................................................................ 15

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ........................... 3, 5

**Other Authorities**

Dear Colleague Letter from Secretary Duncan (June 14, 2011)................................... 14

Letter from James A. Ferg-Cadima, Acting Deputy Assistant Secretary of Policy, Office for Civil
    Rights, U.S. Department of Education, January 7, 2015 ......................................... 10

*Lusardi v. McHugh,*
    Appeal No. 0120133395, 2015 WL 1607756 (EEOC Apr. 1, 2015)........................ 8, 12, 14, 16

*Macy v. Holder*,
   2012 WL 1435995 (EEOC Apr. 20, 2012) ........................................................... 7, 16

Resolution Agreement between U.S. Department of Education Office for Civil Rights &
   Downey Unified School District, Oct. 8, 2014 ....................................................... 2, 3

Resolution Agreement between United States &
   Arcadia Unified School District, July 24, 2013 ........................................................... 3

U.S. Department of Education Office for Civil Rights,
   Guiding Principles: A Resource Guide for Improving School Climate and Discipline (2014) 14

U.S. Department of Education Office for Civil Rights,
   Questions & Answers on Title IX and Sexual Violence (Apr. 29, 2014) ....................... 6, 9, 12

U.S. Department of Education Office for Civil Rights,
   Questions & Answers on Title IX and Single-Sex Elementary and Secondary Classes and
   Extracurricular Activities (Dec. 1, 2014) .................................................................... 9

U.S. Department of Education Office for Civil Rights, Revised Sexual Harassment Guidance:
   Harassment of Students by School Employees, Other Students, or Third Parties (2001) ........ 13

U.S. Department of Labor, Occupational Safety and Health Administration,
   A Guide to Restroom Access for Transgender Workers (June 1, 2015) .................................. 15

U.S. Office of Personnel Management,
   Gender Identity Guidance (May 27, 2011) ................................................................. 15

United States' *Amicus Curiae* Brief Supporting Plaintiffs-Appellants and Urging Reversal in
   *Carmichael v. Galbraith*, No. 12-11074 (5th Cir. Apr. 1, 2013) ................................... 2

United States' Complaint-in-Intervention, *Doe v. Anoka-Hennepin Sch. Dist. No. 11*,
   No. 0:11-cv-01999 (D. Minn. Mar. 6, 2012) ............................................................. 2

United States' Memorandum as *Amicus Curiae* in Response to Defendants' Motion to
   Dismiss/Motion for Summary Judgment, *Pratt v. Indian River Central School District*,
   No. 7:09-cv-00411 (N.D.N.Y. Jan. 3, 2011) ............................................................. 2

**Regulations**

28 C.F.R. Part 54 .......................................................................................................... 3, 5, 6

3 Colo. Code Regs. (Dec. 2014) ..................................................................................... 15

34 C.F.R. Part 106 ...................................................................................................... 3, 5, 6

## INTRODUCTION

Plaintiff G.G. is a 16-year-old student who is enrolled at Gloucester High School in Gloucester Public School District (the "District"). Declaration of G.G. ("G.G. Decl.") ¶¶4-5. Defendant Gloucester County School Board is an elected body responsible for the operation of the District. *See* Plaintiff's Complaint ("Compl.") at ¶11. G.G. is a transgender boy.[1] *See* G.G. Decl. at ¶10. He was assigned the female sex at birth, but his gender identity is male and he presents as a boy in all aspects of his life. *See id.* at ¶¶6, 11. G.G. alleges that the District denied him equal treatment and benefits and subjected him to discrimination based on sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, when it passed a policy banning his continued use of the boys' restrooms because the School Board did deem him to be "'biologically' male," despite his use of those facilities without incident for seven weeks. Compl. ¶¶6, 65; *see also* G.G. Decl. at ¶¶20, 22-23. G.G. has moved for a preliminary injunction requiring the District to allow him to resume using the boys' restrooms at Gloucester High School when he returns for the first day of classes on September 8, 2015. Plaintiff's Memorandum In Support of Motion for Preliminary Injunction at 1 ("Plaintiff Memo").

The United States files this Statement of Interest to assist the Court in evaluating G.G.'s request for a preliminary injunction, specifically, in determining whether G.G. has established a likelihood of success on the merits and whether an injunction is in the public interest.[2] Under Title IX, discrimination based on a person's gender identity, a person's transgender status, or a person's nonconformity to sex stereotypes constitutes discrimination based on sex. As such,

---

[1] A transgender person has a gender identity (*i.e.*, one's internal sense of gender) that is different from the individual's assigned sex at birth (*i.e.*, the gender designation listed on one's original birth certificate).

[2] The United States does not address the factors of irreparable harm or the balance of hardships that are also used to establish the need for a preliminary injunction. *See infra* p. 4.

prohibiting a student from accessing the restrooms that match his gender identity is prohibited sex discrimination under Title IX. There is a public interest in ensuring that all students, including transgender students, have the opportunity to learn in an environment free of sex discrimination.

## INTEREST OF THE UNITED STATES

The United States has authority to file this Statement of Interest pursuant to 28 U.S.C § 517, which permits the Attorney General to attend to the interests of the United States in any case pending in a federal court. The United States has a significant interest in ensuring that all students, including transgender students, have the opportunity to learn in an environment free of sex discrimination and that the proper legal standards are applied to claims under Title IX.[3] The United States Departments of Justice and Education enforce Title IX and its implementing

---

[3] The United States has furthered its significant interests noted above by intervening or submitting briefs in lawsuits involving claims of sex discrimination based on sex stereotyping and gender-based harassment against students under Title IX. *See, e.g.*, United States' *Amicus Curiae* Brief Supporting Plaintiffs-Appellants and Urging Reversal in *Carmichael v. Galbraith*, No. 12-11074 (5th Cir. Apr. 1, 2013) (explaining that the prohibitions against sex discrimination under Title IX prohibit sex-based harassment predicated on sex stereotyping), available at http://www.justice.gov/crt/about/app/briefs/carmichaelbrf.pdf; United States' Complaint-in-Intervention, *Doe v. Anoka-Hennepin Sch. Dist. No. 11*, No. 0:11-cv-01999 (D. Minn. Mar. 6, 2012) (explaining that the prohibitions against sex discrimination under Title IX and the Equal Protection Clause prohibit sex-based harassment because of gender non-conformity), available at http://www.justice.gov/crt/about/edu/documents/anokacompint.pdf; and United States' Mem. as *Amicus Curiae* in Response to Defs. Mot. to Dismiss/Mot. for Summary Judgment, *Pratt v. Indian River Cent. Sch. Dist.*, No. 7:09-cv-00411 (N.D.N.Y. Jan. 3, 2011) (same), available at http://www.justice.gov/crt/about/edu/documents/prattamicus.pdf.

regulations in the education context. *See* 20 U.S.C. §§ 1681-1688 (2006); 34 C.F.R. Part 106 (2010); 28 C.F.R. Part 54 (2000).[4]

The United States thus respectfully submits this Statement of Interest to provide the correct legal standards governing sex discrimination claims under Title IX.  Applying these standards, there is a strong likelihood of success on the merits of G.G.'s allegation of discrimination based on sex because the District has adopted and is enforcing a policy that discriminates based on sex (*e.g.*, one's gender identity, including one's transgender status) and there is a strong public interest in eliminating discrimination based on sex in public schools.

## I.  BACKGROUND

The United States recites the following facts drawn from Plaintiff's Complaint and Declaration. *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976) ("[U]ncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true.").  Gloucester County Public Schools and Gloucester High School are education programs receiving Federal financial assistance. Compl. ¶63.  G.G. is a transgender student who completed his sophomore year at Gloucester High School. *See* G.G. Decl. at ¶¶5, 10.  G.G. alleges that the District denied him the treatment and benefits afforded to other male students and that he was subjected to discrimination in violation of Title IX. *See* Plaintiff Memo; G.G. Decl. at ¶¶23, 32.  Specifically, G.G. alleges that, although the school had allowed him to use the boys' restroom for approximately seven weeks without incident, the school board passed a policy limiting the use of

---

[4] The Departments of Justice and Education have also enforced Title IX in matters involving claims of sex discrimination against transgender students. *See, e.g.*, Resolution Agreement between United States & Arcadia Unified Sch. Dist., July 24, 2013, available at http://www.justice.gov/crt/about/edu/documents/casesummary.php#arcadia; Resolution Agreement between U.S. Dep't of Educ. Office for Civil Rights ("OCR") & Downey Unified Sch. Dist. (Oct. 8, 2014), available at http://www2.ed.gov/documents/press-releases/downey-school-district-agreement.pdf.

restroom facilities to students with "corresponding biological genders" and required students with "gender identity issues" to use an alternative private facility. Plaintiff Memo at 17. By passing this policy, the school board prohibited G.G. from continuing his use of the boys' restrooms. G.G. Decl. at ¶24. G.G. seeks a preliminary injunction to reinstate his access to the boys' restrooms, the status quo prior to the District's approval of the policy in question. G.G. Decl. at ¶20. G.G. asks this Court to order that injunction before the first day of classes on September 8, 2015. Plaintiff Memo at 15.

## II. ARGUMENT

### A. Preliminary Injunction Standard

To obtain a preliminary injunction, "Plaintiffs must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Doe v. Wood Cnty. Bd. of Educ.*, 888 F. Supp. 2d 771, 773 (S.D. W. Va. 2012) (granting preliminary injunction in case alleging Title IX violations, relying on U.S. Department of Education regulations). To demonstrate that a plaintiff is likely to succeed on the merits, a plaintiff must make a "clear showing" that he is likely to succeed at trial, but "need not show a certainty of success." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). The Supreme Court has also instructed courts to "pay particular regard" to public interest considerations. *Winter*, 555 U.S. at 24.

### B. G.G. Has Established a Likelihood of Success on the Merits Because Title IX Prohibits Discrimination Based on Sex, Including Gender Identity, Transgender Status, and Nonconformity to Sex Stereotypes.

In considering G.G.'s request for a preliminary injunction, this Court must consider G.G.'s likelihood of success on the merits – that is, whether either Title IX prohibits a school

4

district from passing, and then enforcing, a policy that prohibits a student from using the restroom that matches his gender identity. *See League of Women*, 769 F.3d at 236. For the reasons set forth below, Title IX prohibits such a policy as unlawful sex discrimination. Therefore, G.G. is likely to succeed on the merits.

### 1. Discrimination Based on Gender Identity, Including Transgender Status, is Discrimination Based on Sex.

G.G. is likely to succeed on the merits under Title IX. Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see also* 34 C.F.R. § 106.31(a); 28 C.F.R. § 54.400(a).[5] The plain language of the statute thus affirms that Title IX protects all persons, including transgender students, from sex discrimination. Title IX's implementing regulations specifically prohibit recipients from engaging in differential or adverse treatment on the basis of sex, including, inter alia,

- "[t]reat[ing] one person differently from another in determining whether such person satisfies any requirement or condition for the provision of such aid, benefit, or service;"

- "[p]rovid[ing] different aid, benefits, or services or provid[ing] aid, benefits, or services in a different manner;"

- "[d]eny[ing] any person any such aid, benefit, or service;"

- "[s]ubject[ing] any person to separate or different rules of behavior, sanctions, or other treatment;" or

---

[5] The District's restroom policy is part of its "educational program or activity." *See* 20 U.S.C. § 1687(2)(b) (defining "program or activity" to mean "all the operations" of a "local education agency . . . any part of which is extended Federal financial assistance").

- "[o]therwise limit[ing] any person in the enjoyment of any right, privilege, advantage, or opportunity."

34 C.F.R § 106.31(b); 28 C.F.R. § 54.400(b). Therefore, any student, including a transgender student, may state a valid claim under Title IX by alleging that the defendant denied or limited the student's ability to participate in or benefit from the school's programs or activities on the basis of sex.[6]

The term "sex" as it is used in Title IX is broad and encompasses gender identity, including transgender status. "There is no doubt that 'if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language.'" *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (brackets omitted). In *Price Waterhouse v. Hopkins*, the Supreme Court flatly rejected the notion that "sex" encompasses only one's biological status as male or female, concluding, instead, that sex discrimination also encompasses differential treatment based on one's failure to conform to socially-constructed gender expectations.[7] 490 U.S. 228, 250 (1989) (plurality opinion). Thus, "under *Price Waterhouse*, 'sex' under Title VII encompasses both sex – that is, the biological differences between men and women – *and*

---

[6] *See* OCR, Questions and Answers on Title IX and Sexual Violence (Apr. 29, 2014), available at http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf ("OCR Sexual Violence Q&A"), at 5 ("[T]he actual or perceived sexual orientation or gender identity of the parties does not change a school's [Title IX] obligations.").

[7] All the cases cited in this paragraph except for *North Haven* interpret Title VII of the Civil Rights Act ("Title VII"). Federal courts routinely rely on Title VII's analogous prohibition of sex discrimination in employment when construing the meaning of Title IX's antidiscrimination provisions. *See, e.g., Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (applying Supreme Court's interpretation of sex discrimination under Title VII to Title IX); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX."); *Preston v. Virginia ex rel New River Comm. Coll.*, 31 F.3d 203, 207-08 (4th Cir. 1994) (holding that Title IX discrimination claim should be interpreted in accordance with principles governing Title VII).

gender." *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000) (court's italics); *see also Macy v. Holder*, 2012 WL 1435995, at *6 (EEOC Apr. 20, 2012).[8] This is because an individual's gender identity is one aspect of an individual's sex. *See, e.g., Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004); *Schroer v. Billington*, 424 F. Supp. 2d 203, 211 (D.D.C. 2006) ("scientific observation may well confirm . . . that sex is not a cut-and-dried matter of chromosomes") (internal citations omitted). Consequently, discrimination on the basis of gender identity is "*literally*" discrimination on the basis of sex. *Schroer v. Billington*, 577 F. Supp. 2d 293, 306-07 (D.D.C. 2008).[9]

Furthermore, Title IX prohibits sex discrimination based on the perception that an individual has undergone, or is undergoing a gender transition. In *Schroer*, the court offered the

---

[8] In *Johnston v. Univ. of Pittsburgh*, No. 13-213, 2015 WL 1497753 (W.D. Pa. Mar. 31, 2015), *appeal docketed* No. 15-2022 (3d Cir. Apr. 22, 2015), the district court adopted a "narrow view of the meaning of the statutory term 'sex'" in concluding that Title IX does not prohibit discrimination based on gender identity or transgender status. *Id.* at *14. Under that narrow view, the court interpreted the term to mean "nothing more than male or female, under the traditional binary conception of sex consistent with one's birth or biological sex." *Id.* at *13. The district court's reasoning in that case was faulty and should not be followed. As several courts have recognized, the decades-old Title VII case law the court cited for this sex-gender distinction has been "eviscerated" by the Supreme Court's decision in *Price Waterhouse*. *See Smith*, 378 F.3d at 573; *see also Schwenk*, 204 F.3d at 1202 (noting that the judge-made distinction between sex and gender "has been overruled by the logic and language of *Price Waterhouse*"). Ultimately, the district court in *Johnston* attempted to discern the state of mind of the legislators when Congress prohibited sex discrimination in 1972, but that was not the proper inquiry. *See Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 79 (1998) (explaining that "[s]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."); *accord Macy*, 2012 WL 1435995, at *9-10 and n.10.

[9] This is so even though the words gender identity or transgender are not explicitly used in Title IX. The statute's literal language "demonstrates breadth" and may not be judicially narrowed even if it results in the statute being "applied in situations not expressly anticipated by Congress." *PA Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985)).

following analogy to help explain how discrimination against an individual because he or she has undertaken, or is undertaking, a gender transition[10] is sex discrimination:

> Imagine that an employee is fired because she converts from Christianity to Judaism. Imagine too that her employer testifies that he harbors no bias toward either Christians or Jews but only "converts." That would be a clear case of discrimination "because of religion." No court would take seriously the notion that "converts" are not covered by the statute. Discrimination "because of religion" easily encompasses discrimination because of a *change* of religion.

577 F. Supp. 2d at 306 (emphasis in original). Denying Title IX's protections to a student because he has changed or is changing his sex would be "blind . . . to the statutory language itself." *Id.* at 307; *see also Lusardi v. McHugh*, Appeal No. 0120133395, 2015 WL 1607756, at *7-8 (EEOC Apr. 1, 2015) (concluding that federal agency violated Title VII where the complainant's "transgender status was *the* motivation" for the agency to bar her from using the common women's restrooms); *Macy*, 2012 WL 1435995, at *11 (concluding that "intentional discrimination against a transgender individual because that person is transgender is, by definition, discrimination 'based on . . . sex,' and such discrimination therefore violates Title VII").

This conclusion is reinforced, for purposes of Title IX, by the enforcing agencies' interpretation of that statute and its regulations, which is controlling unless it is "plainly erroneous or inconsistent with the regulation." *D.L. ex rel K.L. v. Balt. Bd. of Sch. Comm'rs*, 706 F.3d 256, 259 (4th Cir. 2013) (deferring to agency opinion letter) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (deferring to federal government amicus brief)); *see, e.g., Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 647-48 (1999) (applying OCR's Title IX guidance when

---

[10] A gender transition is the process in which transgender individuals assert the sex that corresponds to their gender identity instead of their sex assigned at birth. A gender transition includes a "social transition," during which an individual begins to live and identify as the sex consistent with the individual's gender identity.

evaluating Title IX's application to student-on-student harassment); *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 97 (2d Cir. 2012) (holding that OCR's guidance is entitled to "substantial deference" in interpreting Title IX). The United States Department of Education ("ED") through its Office for Civil Rights ("OCR") has issued guidance recognizing that Title IX protects transgender students against discrimination based on their gender identity. *See* OCR, Questions and Answers on Title IX and Sexual Violence (April 29, 2014), available at http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf, at 5 (clarifying that Title IX's sex discrimination prohibition extends to claims of discrimination based on gender identity).

ED has also explained, in other guidance, how its interpretation of Title IX applies when a school is permitted by Title IX to offer sex-segregated programs. Specifically, in the context of single-sex classes, "[u]nder Title IX, a [school district] generally must treat transgender students consistent with their gender identity in all aspects of the planning, implementation, enrollment, operation, and evaluation." OCR, Questions and Answers on Title IX and Single-Sex Elementary and Secondary Classes and Extracurricular Activities (Dec. 1, 2014), available at http://www.ed.gov/ocr/docs/faqs-title-ix-single-sex-201412.pdf ("OCR Single-Sex Classes and Activities Q&A"), at 25. And, in the context of Title IX's application to gender identity discrimination in sex-segregated facilities such as restrooms, OCR issued a letter in response to an inquiry specifically about a school district's restroom policies.[11] In its response, OCR clarified: "The Department's Title IX regulations permit schools to provide sex-segregated restrooms . . . under certain circumstances. When a school elects to separate or treat students differently on the basis of sex in those situations, a school generally must treat transgender

---

[11] Although the Department did not publicly issue its response, the inquiry letter and the Department's response are attached respectively as Exhibit A and Exhibit B.

students consistent with their gender identity." Letter from James A. Ferg-Cadima, Acting

Deputy Assistant Secretary of Policy, Office for Civil Rights, U.S. Department of Education,

January 7, 2015 (attached as Exhibit B).[12]

Thus, the expansive construction of "sex" as spelled out in *Price Waterhouse* and its

progeny; and the consistent interpretation of that term by the relevant enforcing federal agencies,

which is entitled to substantial deference, both confirm that Title IX and its regulations protect

G.G. from discrimination on the basis of gender identity, including transgender status.

### 2. Discrimination Based on a Transgender Individual's Nonconformity to Sex Stereotypes is Discrimination Based on Sex.

G.G. is also likely to succeed on the merits of his Title IX claim under an alternative sex

stereotyping theory. The Supreme Court made clear in *Price Waterhouse* that discrimination

based on an employee's nonconformity to sex stereotypes is a form of sex discrimination. 490

U.S. at 239-40, 250-51; *see also Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 151-

52 (N.D.N.Y. 2011) (denying defendant's motion to dismiss because harassment based on

nonconformity to sex stereotypes is a legally cognizable claim under Title IX and the Equal

Protection Clause). These protections have also been applied to students in the school context

under Title IX.[13]

---

[12] *See also Kastl* v. *Maricopa Cnty. Cmty. Coll.*, 2004 WL 200895, at *3 (D. Ariz. June 3, 2004) (the fact that Title VII permits employers to "create restrooms for each sex" does not mean they can "require a woman to use the men's restroom if she fails to conform to the employer's expectations regarding a woman's anatomy"); *cf. Doe* v. *Reg'l Sch. Unit 26*, 86 A.3d 600, 605 (Me. 2014) (holding that school district could not defend its decision to exclude a transgender girl from the girls' restrooms based on a state statute requiring sex-separated bathrooms in public schools because that statute "does not purport to establish guidelines for the *use* of school bathrooms" nor "address how schools should monitor which students use which bathroom, and it certainly offers no guidance concerning how gender identity relates to the use of sex-separated facilities").

[13] Federal courts have consistently held that plaintiffs alleging discrimination based on

Federal courts have recognized that discrimination based on stereotypes about how individuals express their gender identity, including generalizations about the relationship between one's gender identity and anatomy, is an actionable form of sex discrimination under federal law.[14] The district court in *Kastl v. Maricopa Cnty. Cmty. Coll. Dist.* denied a school's motion to dismiss Title VII and Title IX sex discrimination claims by a transgender plaintiff who was denied access to restrooms consistent with his gender identity. No. Civ.02–1531PHX–SRB, 2004 WL 2008954 (D. Ariz. June 3, 2004). The court found that the nature of the discrimination prohibited by *Price Waterhouse* included differential treatment based stereotypes about an individual's "behavior, appearance, or anatomical features."[15] *Id.* at *3. The *Kastl* court made

---

nonconformity to sex stereotypes may state an actionable claim of sex discrimination under Title IX. *See Doe v. Brimfield Grade Sch.*, 552 F. Supp. 2d 816, 823 (C.D. Ill. 2008); *Theno v. Tonganoxie Unified Sch. Dist.*, 377 F. Supp. 2d 952, 964-65 (D. Kan. 2005); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1090-93 (D. Minn. 2000).

[14] *See, e.g., EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 454 (5th Cir. 2013) (finding that sex stereotyping evidence may be used to establish a sex discrimination claim where there is a perception that a plaintiff does not "conform to traditional gender stereotypes"); *Barnes v. City of Cincinnati*, 401 F.3d 729, 735-39 (6th Cir. 2005) (transgender plaintiff stated claim for sex discrimination under Title VII and Equal Protection Clause based on failure to conform to sex stereotypes); *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) ("discrimination against a plaintiff who is a transsexual – and therefore fails to act and/or identify with his or her gender – is no different from the discrimination directed against Ann Hopkins in *Price Waterhouse*"); *Glenn*, 663 F.3d at 1320-21 (finding "ample direct evidence" that plaintiff, a transgender woman, had been discriminated against because of sex where defendant testified that his decision to fire her was based "on his perception of [plaintiff] as 'a man dressed as a woman and made up as a woman'"); *Finkle v. Howard Cnty.*, 12 F. Supp. 3d 780, 788 (D. Md. 2014) (holding that plaintiff's claim that she was discriminated against "because of her obvious transgendered status" is a cognizable claim of sex discrimination under Title VII).

[15] Some courts have limited the ability of transgender people to rely on the sex stereotyping theory when their claims of discrimination involve access to gender identity-appropriate restrooms. *See, e.g., Michaels v. Akal Sec., Inc.*, No. 09-cv-01300-ZLW-CBS, 2010 WL 2573988 (D. Colo. June 24, 2010) ("*Etsitty* [*v. Utah Transit Auth.*, 502 F.3d 1215 (10th Cir. 2007)] precludes such a claim [*i.e.*, gender stereotyping under *Price Waterhouse*] based solely upon restrictions on Plaintiff's usage of certain bathrooms.") (emphasis added). But the *Johnston* court's recent assertion that sex stereotyping claims can only be "based on behaviors, mannerisms, and appearances" and cannot be based on gender-nonconforming anatomy has no support in law or logic. *Johnston*, 2015 WL 1497753, at *16; see also *Etsitty v. Utah Transit*

clear that neither a "woman with male genitalia nor a man with stereotypically female anatomy" may be discriminated against "by reason of that nonconforming trait." *Id.* at *2.[16] ED has also issued guidance stating that Title IX prohibits discrimination based on sex stereotypes, including when that discrimination is directed at transgender individuals. OCR Sexual Violence Q&A at 5-6 ("Title IX's sex discrimination prohibition extends to claims of discrimination based on

---

*Auth.*, 502 F.3d 1215 (10th Cir. 2007). Both cases are grounded in a flawed premise: namely, that the "sex" of the transgender plaintiff, for Title VII purposes, is the sex he was assigned at birth, not the gender with which he identifies. It is true that sex stereotyping claims brought by transgender plaintiffs often involve claims that the defendant discriminated against the plaintiff because the plaintiff's gender presentation did not conform to the defendant's belief about how a person of the plaintiff's assigned birth sex should look, speak, or behave. However, nothing in *Price Waterhouse* or its progeny purported to limit the availability of the theory to only those forms of sex stereotyping. Indeed, sex-based stereotyping regarding anatomy (*e.g.*, that women have breasts or that men have two testicles), is also prohibited discrimination based on sex.

[16] On a subsequent summary judgment motion, the district court ruled that the Plaintiff failed to meet her burden of establishing a *prima facie* case of discrimination because she "failed to properly present evidence supporting her theory that there are other determinants of biological sex or which, if any, of those determinants applies to Plaintiff." *Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 2006 WL 2460636, at *6 (D. Ariz. Aug. 22, 2006). In an unpublished decision, the Ninth Circuit affirmed the district court's grant of summary judgment to the college on the ground that the transgender female plaintiff failed to show that the college's asserted reason for barring her from the women's restroom – namely, safety – was pretextual. *Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 325 Fed. Appx. 492, 494 (9th Cir. 2009). Apart from the fact that there is no indication of a safety concern here – Gloucester school officials had readily allowed G.G. to use the boys' restrooms for nearly two months without incident – the Ninth Circuit's reliance on plaintiff's failure to meet the standards under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) was misplaced. "[A]n employee need not use the *McDonnell Douglas* framework when there is direct evidence that an adverse employment action has been taken on the basis of a sex-based consideration such as an employee's transgender status." *Lusardi*, EEOC Decision No. 0120133395 at n.6. For purposes of G.G.'s allegations, the critical point is that even the Ninth Circuit upheld the district court's conclusion that the *Kastl* plaintiff alleged a valid *prima facie* sex stereotyping claim based on her nonconformity with the college's stereotypes about what anatomy one must have to be female. *See Kastl*, 325 Fed. Appx. at 493.

gender identity or failure to conform to stereotypical notions of masculinity or femininity and OCR accepts such complaints for investigation.").[17]

Here, the District adopted a policy to prevent G.G., who presents and identifies as male, from using male restroom facilities, despite the fact that he had been using those facilities without incident for seven weeks. That policy, and its application to G.G., is based on impermissible sex stereotypes about what it means to be a boy. For that reason, G.G. is likely to succeed on the merits of his Title IX claim under a sex stereotyping theory as well.

### C. Granting a Preliminary Injunction is in the Public Interest.

Finally, granting the injunctive relief G.G. seeks would serve the public interest. Requiring public schools to comply with their Title IX obligation not to discriminate on the basis of sex serves the public interest. *See Cohen v. Brown Univ.*, 991 F. 2d 888, 906 (1st Cir. 1993) (affirming district court's conclusion "that the overriding public interest lay in the firm enforcement of Title IX").

In the education context in particular, the public interest favors eliminating policies that single out a minority of public school students for different treatment on the basis of sex. When a State makes free public education available to the children in its jurisdiction (and, in fact, adopts compulsory attendance laws that presumptively require attendance), educational opportunity must "be made available to all on equal terms." *Brown v. Bd. of Educ.*, 347 U.S. 483, 494 (1954). In the Gloucester Public School District, however, G.G. and any other transgender students like him are being singled out and denied access to restrooms consistent with their gender identity solely on that basis – a basic right that all other students enjoy. That

---

[17] *See also* OCR Single-Sex Classes and Activities Q&A, at 25; OCR, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties (2001), available at http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf, at v.

singling out results in isolation and exclusion and perpetuates a sense that the student is not "worthy of equal treatment and respect." *Lusardi*, EEOC Decision No. 0120133395 at 13; *see also Brown*, 374 U.S. at 494 ("A sense of inferiority affects the motivation of a child to learn." (quoting state court)). Granting transgender students access to restrooms consistent with their gender identity will serve the public interest by ensuring that the District treats all students within its bounds with respect and dignity.

Singling out transgender students and subjecting them to differential treatment can also make them more vulnerable to bullying and harassment, a problem that transgender students already face. For example, during the 2008-2009 school year, "more than 90 percent of [lesbian, gay, bisexual, and transgender] students in grades 6 through 12 reported being verbally harassed – and almost half reported being physically harassed." Dear Colleague Letter from Sec'y Duncan (June 14, 2011), available at http://www2.ed.gov/policy/elsec/guid/secletter/110607.html. Allowing transgender students to use the restrooms consistent with their gender identity will help prevent stigma that results in bullying and harassment and will ensure that the District fosters a safe and supportive learning environment for all students, a result that is unquestionably in the public interest.[18]

---

[18] It is well-established that academic excellence and student success depend on the school environment being both safe and supportive. *See* "Guiding Principles: A Resource Guide for Improving School Climate and Discipline," ED (Jan. 2014), at 5; *see also* "School Climate," ED, American Institute for Research, Safe Supportive Learning, available at http://safesupportivelearning.ed.gov/school-climate. By contrast, students who are bullied suffer from negative physical, social, and mental health issues. The White House and various Federal agencies, including the Departments of Justice and Education, have worked, and continue to work, to prevent bullying and educate the public about the negative effects of bullying. *See, e.g.*, www.stopbullying.gov (providing information from various government agencies on what bullying is, what cyberbullying is, who is at risk, and how one can prevent and respond to bullying); "Background on White House Conference on Bullying Prevention," White House Press Release (Mar. 10, 2011), available at https://www.whitehouse.gov/the-press-office/2011/03/10/background-white-house-conference-bullying-prevention.

Numerous jurisdictions around the country allow transgender students to use facilities corresponding to their gender identity.[19]  Likewise, the federal government has recognized the importance of establishing policies in the workplace that allow transgender employees to use facilities corresponding to their gender identity, *see* U.S. Office of Personnel Management ("OPM"), "Gender Identity Guidance" (stating that federal agencies "should allow access to restrooms and (if provided to other employees) locker room facilities consistent with [a transgender employee's] gender identity"); *see* U.S. Dept. of Labor, Occupational Safety and Health Administration, "A Guide to Restroom Access for Transgender Workers" (stating that, for employees of companies regulated by OSHA, "all employees should be permitted to use the facilities that correspond with their gender identity").[20]  Such policies protect against the adverse impact brought on by discriminatory policies, discussed *supra*, and the public interest would be well served by providing the same protections to students in school as are provided to adults in the workplace.

Although certain parents and community members may object to students sharing a common use restroom with transgender students, any recognition of this discomfort as a basis for

---

[19] Cal. Ed. Code § 221.5(f) (permitting students to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with the student's gender identity, irrespective of the gender listed on the student's records); § 81.11, 3 Colo. Code Regs. (Dec. 2014) (allowing individuals the use of gender-segregated facilities consistent with their gender identity); Mass. Dep't of Elem. & Sec. Educ., *Guidance for Massachusetts Public Schools Creating a Safe and Supportive School Environment: Nondiscrimination on the Basis of Gender Identity* 9-10 (2013); Conn. Safe Schools Coalition, *Guidelines for Connecticut Schools to Comply with Gender Identity and Expression Non-Discrimination Laws* 12-13 (2012).

[20] The federal government has also established similar policies for participants in other federally funded education programs. *See* U.S. Dept. of Labor, Office of Job Corps, at 3-4, "Directive: Job Corps Program Instruction Notice No. 14-31" (stating that the overriding factor in assigning students to sex-specific facilities should be the student's gender identity).

discriminating would undermine the public interest.[21] It is axiomatic that a school district cannot justify sex discrimination by asserting that it acted upon a "desire to accommodate other people's prejudices or discomfort." *Macy*, 2012 WL 1435995, at *10 and n.15. As the EEOC stated in *Lusardi*, "[a]llowing the preferences of [others] to determine whether sex discrimination is valid reinforces the very stereotypes and prejudices" the law prohibits. *Lusardi*, EEOC Decision No. 0120133395 at 10; *see also* "Directive: Job Corps Program Instruction Notice No. 14-31," Dept. of Labor Job Corps at 4 ("[M]ost courts have concluded that an entity's desire to cater to the perceived biases of its customers, employees, or other third parties is not a defense for unlawful discrimination. The same principle applies to discrimination against transgender persons."); *cf. Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("The Constitution cannot control such prejudices but neither can it tolerate them. Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."); *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985) ("mere negative attitudes, or fear . . . are not permissible bases for" government action).

For all these reasons, it is the view of the United States that it is in the public interest to allow G.G., whose gender identity is male and who presents as male in all aspects of his life, to use the male restrooms at Gloucester High School.

---

[21] Moreover, courts have rejected similar claims brought by individuals who have objected to sharing facilities with a transgender person. *See, e.g., Cruzan v. Special Sch. Dist. No. 1*, 294 F.3d 981, 983-984 (8th Cir. 2002) (rejecting argument that being required to share restroom facilities with a transgender coworker constituted an "adverse employment action" under Title VII); *Crosby v. Reynolds*, 763 F. Supp. 666, 670 (D. Me. 1991) (rejecting claim that placing a transgender person in a jail cell with someone who was not transgender violated clearly established right to privacy).

## CONCLUSION

The United States respectfully requests that this Court find that Plaintiff's Motion for a Preliminary Injunction has established a likelihood of success on the merits under Title IX, and that there is a strong public interest in requiring the District to treat G.G., a transgender male student, like all other male students, including allowing him to use the male restrooms at Gloucester High School.

17

Respectfully submitted,

EVE HILL
Deputy Assistant Attorney General

JAMES COLE, JR.
General Counsel
U.S. Department of Education

VANESSA SANTOS
MICHELLE TUCKER
Attorneys
U.S. Department of Education

ANURIMA BHARGAVA
WHITNEY PELLEGRINO
VICTORIA LILL
DWAYNE J. BENSING
Educational Opportunities Section
Civil Rights Division
U.S. Department of Justice

DANA J. BOENTE
United States Attorney

CLARE P. WUERKER
Virginia Bar No. 79236
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone: 757-441-6331
Facsimile: 757-441-6689
Email: Clare.Wuerker@usdoj.gov

18

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2015, I caused true and correct copies of the foregoing

Statement of Interest to be served by first class mail, postage paid, on all attorneys of record in

this matter and Defendant:

Gail Marie Deady
McCandlish Holton PC
1111 E Main St Po Box 796 Suite 1500
Richmond, VA 23218-0796

Rebecca Kim Glenberg
ACLU of Virginia
701 E. Franklin Street Suite 1412
Richmond, VA 23219

Joshua Abraham Block
Leslie Jill Cooper
American Civil Liberties Union
125 Broad St 18th Floor
New York, NY 10004
Attorneys for Plaintiff

Dr. Walter R. Clemons
Division Superintendent
Gloucester County School Board
8659 Broad Marsh Ln.
Gloucester, VA 23072

CLARE P. WUERKER
Virginia Bar No. 79236
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone: 757-441-6331
Facsimile: 757-441-6689
Email: Clare.Wuerker@usdoj.gov

Dated: June 29, 2015