IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

G.G.,

  Plaintiff,

v.                                              Case No. 4:15-cv-00054-RGD-TEM

GLOUCESTER COUNTY SCHOOL
BOARD,

  Defendant.

## BRIEF IN OPPOSITION TO MOTION
## FOR PRELIMINARY INJUNCTION

### I.    INTRODUCTION

The plaintiff ("Plaintiff") is a 16 year old high school student at Gloucester High School in Gloucester County, Virginia. (Complaint ¶¶1, 9). Plaintiff was born a girl and has female genitals. (GG Dec. ¶6). Plaintiff enrolled in high school as a girl and started ninth grade as a girl. (GG Dec. ¶8-9; Complaint ¶20; Anderson Dec. ¶3 (Exhibit 1)). At the beginning of Plaintiff's sophomore year, Plaintiff informed the school that Plaintiff was transgender and identified as a boy. A psychologist has diagnosed Plaintiff with Gender Dysphoria. (Ettner Dec. ¶29). Plaintiff, however, is still biologically and anatomically a female. (GG Dec. ¶31; Ettner Dec. ¶18). Plaintiff has not provided medical evidence or medical testimony that Plaintiff is a boy or that he has male chromosomes.

Since Plaintiff informed the school that Plaintiff is transgender and identifies as a boy, school officials have supported Plaintiff. School officials have changed Plaintiff's name in official school records and refer to the Plaintiff with male pronouns. At Plaintiff's request, school officials have also permitted Plaintiff to continue with the home-bound program for the

1

school's physical education requirements. (GG Dec. ¶¶15-18). Indeed, Plaintiff has not alleged that school officials have in anyway harassed or discriminated against Plaintiff in Plaintiff's educational opportunities, or engaged in any form of discriminatory treatment with respect to Plaintiff's transgender identification. Plaintiff's only complaint is that Plaintiff cannot use the boys' restroom and locker room.[1]

Before Plaintiff told school officials that Plaintiff was transgender, the school's restrooms and locker rooms were separated based on the students' sex – that is, the school had boys' restroom and locker room facilities and girls' restroom and locker room facilities. (Anderson Dec. ¶3). The Gloucester County School Board ("School Board") maintained this practice after Plaintiff told school officials that Plaintiff was transgender. (Anderson Dec. ¶¶4-6).

In an effort to accommodate Plaintiff, as well as consider other students' safety and privacy interests, the School Board constructed three unisex, single-stall restrooms in the high school. (Anderson Dec. ¶7). Any student, including Plaintiff, is permitted to use the single-stall restrooms. (Complaint ¶47; Anderson Dec. ¶7). Plaintiff is permitted to use the girls' restroom under the School Board's policy, but will not do so. (Complaint ¶46; Anderson Dec. ¶¶3-6). Plaintiff is permitted to use the unisex, single-stall restrooms, but refuses to do so. (Complaint ¶48; Anderson Dec. ¶7).

Plaintiff is seeking a preliminary injunction asking that this Court enter an Order requiring the School Board to allow Plaintiff to use the boys' restroom, even though Plaintiff has female genitals, and has equal access to the girls' restroom, three unisex single-stall bathrooms, and a bathroom in the nurse's office. (Anderson Dec. ¶¶3-7). An injunction is not warranted. Separating students by sex based on biological and anatomical characteristics for restroom and

---

[1] Plaintiff volunteers not to use the boys' locker room. (GG Dec. ¶18 ).

locker room use does not violate the Equal Protection Clause or Title IX. Plaintiff's motion should be denied.

## II. LAW AND ARGUMENT

### A. Plaintiff Is Seeking A "Mandatory" Preliminary Injunction.

A preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 811 (4th Cir. 1992) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)). It is "never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365 (2008). Instead, **a preliminary injunction is a "drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites."** *American Civil Liberties Union of Florida, Inc. v. Miami–Dade County School Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citations omitted).

In deciding whether to grant a preliminary injunction, Plaintiff must demonstrate that (1) Plaintiff is likely to succeed on the merits, (2) Plaintiff is likely to suffer irreparable harm, (3) the balance of hardships tips in Plaintiff's favor, and (4) the injunction is in the public interest. *Winter,* 555 U.S. at 20. Each preliminary injunction factor must be "satisfied as articulated" for this Court to grant a preliminary injunction. *The Real Truth About Obama, Inc. v. Federal Election Com'n,* 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds, Citizens United v. Federal Election Com'n,* 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), *aff'd, The Real Truth About Obama, Inc. v. F.E.C.,* 607 F.3d 355 (4th Cir. 2010) (per curiam); *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). Moreover, when Plaintiff is seeking to change the status quo, the injunction is characterized as mandatory, which requires a heightened standard of

review. *Pashby*, 709 F.3d at 320; *Tiffany v. Forbes Custom Boats, Inc.*, 959 F.2d 232 (4th Cir. 1992) (Plaintiff must make a strong showing of entitlement). This type of injunction is disfavored "in any circumstance." *Taylor v. Freeman,* 34 F.3d 266, 270 n. 2 (4th Cir. 1994).

Plaintiff argues that the injunction is prohibitory, because Plaintiff seeks a return to the status quo. This argument misinterprets the School Board's policy. Here, the "status quo" was the long-standing practice that restrooms and locker rooms are separated based on the students' biological sex. (Anderson Dec. ¶3). The School Board kept this practice in place after Plaintiff informed the school of Plaintiff's transgender status.[2] (Anderson Dec. ¶¶3-7). The School Board then tried to accommodate Plaintiff, and other students, by providing three unisex single-stall bathrooms, because Plaintiff did not want to use the girls' bathroom. (Anderson Dec. ¶7). This accommodation did not, however, change the underlying restroom policy or "status quo." (Anderson Dec. ¶6). Plaintiff seeks to change this status quo and have the Court enter an Order requiring the School Board to permit Plaintiff to use the boys' restroom. Such an injunction is mandatory, and subject to increased scrutiny.

B. **Plaintiff Is Not Likely To Succeed On the Merits**.

    1. **The School Board Has Not Violated The Equal Protection Clause**.

Plaintiff has not shown a likelihood of success on the merits. The School Board has filed a Motion to Dismiss Plaintiff's Complaint, and Brief in Support, which establishes that Plaintiff has not stated a claim upon which relief can be granted. For purposes of brevity and judicial

---

[2] The School Board acknowledges that school administrators made the decision to allow Plaintiff to use the boys' restroom, and that Plaintiff did so for approximately seven weeks. However, this decision was not a School Board policy, and did not change the "status quo."

4

economy, the School Board incorporates the Motion to Dismiss and Brief in Support as if fully set forth herein.[3]

The School Board did not develop the restroom and locker room policy because of a perception that Plaintiff does not conform to gender norms, or in an attempt to stigmatize, embarrass or otherwise reject Plaintiff. The long-standing practice of separating girls and boys based on their biological sex in separate restrooms and locker rooms has always existed in the Gloucester County schools. (Anderson Dec. ¶3). Instead, in an effort to accommodate Plaintiff, and also to take into account the legitimate safety and privacy interests of Plaintiff and all the other Gloucester County Schools' students, the School Board also constructed three unisex single-stall bathrooms. (Anderson Dec. ¶¶5-7). Any student can use these single-stall bathrooms, regardless of their biological sex, if they are uncomfortable using a communal bathroom, or for any other private, personal reason. (Anderson Dec. ¶7).

It is well accepted that schools can provide separate restroom and locker room facilities based on sex. *See e.g.*, 34 C.F.R. §106.33. The School Board's restroom and locker room policy does not discriminate against any one class of individuals. Instead, the policy, including providing three unisex restrooms, treats all students and situations the same. Under this policy, all students, including female to male transgender and male to female transgender students, are treated the same. Accordingly, Plaintiff is not able to demonstrate an Equal Protection violation, and the motion for preliminary injunction should be denied.

---

[3] Even if the Court were to deny the Motion to Dismiss (which of course requires the Court to accept Plaintiff's facts in the Complaint and resolve all inferences in Plaintiff's favor), an injunction is not warranted for the reasons stated herein.

### 2. Transgender Status Is Not a Suspect Classification.

In an effort to overcome this obvious conclusion, Plaintiff argues that transgender status alone should be treated as a suspect classification. Plaintiff attempts to convince this Court that transgender status should be treated as a suspect classification, relying on a *Price Waterhouse* theory of "gender-non-conformity." *See Price Waterhouse v. Hopkins,* 490 U.S. 288 (1989). Plaintiff argues that "discrimination against a person simply because that person is transgender or undergoing gender transition is – by definition – discrimination based on that person's gender nonconformity." (Pl. Brief, p. 20). This logic misinterprets *Price Waterhouse*, is not supported by the cases cited by Plaintiff, and would create a new subset of sex classification not currently protected under the Constitution.

**The United States Supreme Court and the Fourth Circuit Court of Appeals have not recognized transgender as a suspect classification under the Equal Protection Clause. In fact, no Circuit Court has recognized transgender status, in and of itself, as a suspect classification under the Equal Protection Clause.** Courts have also rejected the notion in other settings that transgender status itself, or other subset classifications of sex, is a suspect classification *See, e.g.*, *Etsitty v. Utah Transit Authority,* 502 F.3d 1215, 1222 (10th Cir. 2007) (holding transsexuals are not a protected class under Title VII); *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996) (Title VII does not afford a cause of action for discrimination based upon sexual orientation); *Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69, 70 (8th Cir. 1989) ("Title VII does not prohibit discrimination against homosexuals."), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158 (1990).

There is only one United States District Court that has considered whether a public school can require a student to use a bathroom or locker room that is associated with that

student's biological sex. In *Johnston v. University of Pittsburgh of Com. System of Higher Educ.,* 2015 WL 1497753 (W.D. Pa. Mar. 31, 2015), the plaintiff was born a biological female, entered college as a female, but later identified as a male. The plaintiff, however, remained anatomically a female. Thereafter, the plaintiff was told he could not use the men's restrooms or locker rooms. The plaintiff filed suit against the University alleging the school's policy violated the Equal Protection Clause of the Fourteenth Amendment, and violated Title IX. The District Court, in a detailed analysis and opinion, rejected these claims. (Exhibit 1).

With facts remarkably similar to the allegations in Plaintiff's Complaint, *Johnston* found that transgender status is not a suspect classification. *Johnston*, 2015 WL 1497753, at *8 (W.D. Pa. Mar. 31, 2015). Plaintiff tries to distinguish *Johnston* by arguing that Johnston's reliance on *Etsitty v. Utah Transit Authority,* 502 F.3d 1215, 1222 (10th Cir. 2007) is misplaced, because *Etsitty* is an "outlier." (Pl. Brief, p. 28 n. 22). Contrary to Plaintiff's assertion, *Etsitty* is not an "outlier" and, unlike the cases cited by Plaintiff, squarely addresses the issue of whether transgender status, in and of itself, is entitled to protected status. Furthermore, Plaintiff ignores that the Tenth Circuit just reaffirmed the holding it *Etsitty* this year, and recognized that a transsexual plaintiff is not a member of a protected suspect class for purposes of Equal Protection claims. *See Druley v. Patton*, 601 Fed. Appx. 632, 635 (10th Cir. 2015).

Plaintiff asserts that every federal circuit that has ruled on the issue has held that "statutory and constitutional prohibitions" on sex discrimination also protect transgender people from discrimination based on their "gender-nonconformity." These cases however, do not stand for the proposition that transgender status alone amounts to a suspect classification.[4]

---

[4] Plaintiff cites *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000), where a prison guard attempted to rape the plaintiff, "a pre-operative male-to-female transsexual." The plaintiff filed suit alleging violations of the Eighth Amendment and the Gender Motivated Violence Act

7

For example, in *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), the plaintiff intended to take steps to transition to a female, and to wear women's clothing to work. The plaintiff's supervisor told the plaintiff that her appearance was not "appropriate", and found her appearance "unnatural" and "unsettling." *Id.* The central part of *Glenn's* holding was the conclusion that the basis for discrimination against transgender plaintiffs is because they fail to act according to socially prescribed gender roles. That is, the plaintiff's claims could proceed because of evidence of sex stereotyping – acts "which presume that men and women's appearance and behavior will be determined by their sex ..." *Id.* at 1317, 1320 ("All persons, whether transgender or not, are protected from discrimination on the basis of gender stereotype.").

Similarly, *Smith v. City of Salem*, *Ohio,* 378 F.3d 566 (6th Cir. 2004), is a classic sex stereotyping case where the Sixth Circuit concluded that the plaintiff had stated a cause of action by alleging the defendant's discrimination was motivated by his appearance and mannerisms, and belief that this behavior was "inappropriate for his perceived sex." The same is true with *Barnes v. City of Cincinnati*, 401 F.3d 729, 738 (6th Cir. 2005), where the plaintiff grounded his allegations in discrimination based upon his mannerisms and the way he behaved. There, supervisors told the plaintiff he was not sufficiently masculine, and numerous supervisors and peers criticized him for lacking a quality known as "command presence." *See also*, *Rosa v. Park West Bank & Trust Co.,* 214 F.3d 213, 215 (1st Cir. 2000) (reasonable to infer that the plaintiff

---

("GMVA"). Detailing the prison guard's pattern of outrageous conduct, the Ninth Circuit denied qualified immunity on the Eighth Amendment claim, because it was clearly established "when prison officials maliciously and sadistically use force to cause harm contemporary standards of decency always are violated." On the GMVA claim, the Court concluded that the legislative history made clear that Congress specifically intended to include men within the statute's protection, and that the attack was motivated by the inmate's appearance and demeanor. This case does not support the proposition for which it is cited.

8

was told to go home and change because supervisor thought that the plaintiff's attire did not accord with his male gender.)

The cases cited by Plaintiff only stand for the proposition that plaintiffs can proceed with a discrimination claim if subjected to discriminatory conduct based on sexual stereotypes on how they should behave or appear. They do not establish a suspect classification for transgender individuals under the Equal Protection Clause. Plaintiff acknowledges that the Fourth Circuit has not held that transgender status alone is a suspect classification, but tries to imply that district courts in the Circuit have made this holding using post-*Price Waterhouse* sex stereotyping precedent. This is simply inaccurate.[5]

In short, sex stereotyping cases are all grounded in allegations that the transgender plaintiff was discriminated against based upon their behaviors, mannerisms or appearance.[6] These cases do not hold that a transgender plaintiff is in a suspect class based on his or her transgender status alone. Instead, they reflect the unremarkable proposition that a plaintiff can assert a claim for discrimination based on behavior motivated by sexual stereotypes. Here,

---

[5] In *Muir v. Applied Integrated Technologies, Inc.*, 2013 WL 6200178, at *1 (D. Md. 2013), the issue of whether discrimination on the basis of sex can encompass transgender individuals was not specifically before the court and was not specifically addressed by the court. In *Hart v. Lew*, 973 F. Supp. 2d 561, 579 (D. Md. 2013), the court noted that the defendant did not seriously contest that the plaintiff had stated a claim for sex discrimination at the pleading stage. As such, the court did not actually analyze or provide a basis for transgender based discrimination. Similarly, *Lewis v. High Point Regional Health System*, 2015 WL 221615, at *2 n. 2 (E.D.N.C. 2015) did not analyze whether the plaintiff's complaint fit within a gender-stereotyping framework, because the issue was not raised in the defendant's motion to dismiss.

[6] In *Finkle v. Howard County, Md.*, 12 F. Supp. 3d 780 (D. Md. 2014), the plaintiff alleged that she was denied a position with the Howard County Police Department due to her "obvious transgendered status." The Court, in holding that the plaintiff could pursue a Title VII claim, simply recognized that "sex stereotyping based on a person's gender nonconforming **behavior** is impermissible discrimination." *Id.,* at 787 (emphasis added) citing *Smith v. City of Salem, Ohio,* 378 F.3d 566, 574–75 (6th Cir. 2004).

Plaintiff's behavior, mannerisms and appearance are not at issue, and none of these cases support Plaintiff's claim. They certainly do not establish transgender as a suspect classification.[7]

### 3. There Is A Substantial Interest In The Restroom Policy.

Because transgender status alone is not a suspect classification, Plaintiff's Equal Protection claim, assuming Plaintiff has one, should be reviewed under the rational basis standard. The School Board's policy should be upheld, because it has a "rational relation to some legitimate end." Even if a heightened standard of review were to apply, the School Board's policy, like the policy in *Johnston*, still does not violate Plaintiff's equal protection rights. In fact, the School Board's interests are even more compelling than in *Johnston*, because the School Board is responsible for the care and education of minor children, from kindergarten through twelfth grade, not adults in college like *Johnston*.

Again, the only court to address the specific issues in this case held that providing separate restroom and locker room facilities for college students based on their biological sex did not violate the Equal Protection Clause. *Johnston*, 2015 WL 1497753, at *9-10 (W.D. Pa. Mar. 31, 2015). As that court noted, the issue presents "two important but competing interests." Plaintiff's interest is performing "life's most basic and routine functions" in the schools restroom in an environment consistent with Plaintiff's gender identity. On the other hand, the School

---

[7] Plaintiff's argument that the School Board's restroom policy triggers heightened scrutiny, because it classifies students based on "biological gender" is merely one of semantics, because Plaintiff then circles the argument back to seek protection based on Plaintiff's transgender status alone. Plaintiff's suggestion that from a "medical perspective" there "is no distinction between an individual's gender identity and his or her 'biological' sex or gender" is unsupported by any proffered medical evidence or testimony. In fact, even the American Psychological Association distinguishes the definition of sex – referring to a person's "biological status" including "sex chromosomes, gonads, internal reproductive organs, and external genitalia" – from gender and gender identity – "when one's gender identity and biological sex are not congruent." (Exhibit 2.) Plaintiff's argument is even more dubious considering Plaintiff recognizes that separate facilities for men and women are permissible. *United States v. Virginia*, 518 U.S. 515, 533 (1996).

10

Board has an interest in "providing its students with a safe and comfortable environment for performing these same life functions consistent with society's long-held tradition of performing such functions in sex-segregated spaces based on biological or birth sex." *Johnston*, 2015 WL 1497753 at *7. In analyzing these issues, *Johnston* held that segregating "bathroom and locker room facilities on the basis of birth sex is substantially related to a sufficiently important governmental interest." *Id.* *8.

Plaintiff cannot support the assertion that the School Board's policy is not substantially serving a governmental interest for several reasons. First, Plaintiff's entire equal protection argument is premised on the notion that Plaintiff is protected under the Equal Protection Clause because of transgender status alone.[8] As noted above, the law does not support this proposition. Stripped of this assumption, Plaintiff's contention that the School Board's policy does not protect the privacy interests of its students crumbles.

Second, Plaintiff improperly discounts the legitimate privacy interests of other students.[9] Parents have an interest in the safety of their children. Children have a strong privacy interest of their own that is protected by the Constitution. The School Board has a responsibility to its students to ensure their privacy while engaging in personal bathroom functions, disrobing, dressing, and showering outside of the presence of members of the opposite sex. This is particularly true in an environment where children are still developing, both emotionally and

---

[8] Plaintiff improperly tries to frame the issue of whether an interest in privacy is substantially furthered by a new policy that limits access to communal restrooms based solely on "biological gender" and relegates students with "gender identity issues" to separate single-stall facilities. (Pl. Brief 32.) Tellingly, Plaintiff does not argue that the School Board's policy of providing separate restrooms and locker rooms based on biological sex is unconstitutional for all purposes. That is, Plaintiff is not asking this Court to invalidate the policy and order the School Board to provide only unisex restrooms for all students.

[9] Contrary to Plaintiff's assertion that he used the boys' restroom without complaints, within a day of Plaintiff's use of the boys' restroom there were concerns about the issue that were brought to the School Board's attention. (Andersen Dec. ¶4).

physically. As *Johnston* recognized, the context of this dispute is important. Here, the School Board is balancing the needs, interests and rights of children in kindergarten through twelfth grade. The right to privacy for students strongly supports maintaining sex-segregated bathrooms and locker rooms. *See Johnston*, 2015 WL 1497753, at *7 (finding "controlling the unique contours under which this case arises." Namely a [public school] which is "tasked with providing safe and appropriate facilities for all of its students.")[10]

Plaintiff attempts to disparage the School Board's classification of sex based on biological factors – i.e., a student's anatomy. Yet, Plaintiff has not presented any medical evidence that Plaintiff is biologically a male. The Board is not unsympathetic to Plaintiff's recent identification as a male, but Plaintiff's identification does not alter the anatomical differences between Plaintiff and fellow male students. Plaintiff recognizes that there is a privacy interest in separation of the sexes based on their anatomy. Plaintiff has chosen not to participate in physical education requirements at school, and is not using the locker room to change or shower, presumably because of the anatomical differences between Plaintiff and male students. Plaintiff cannot reconcile these facts with Plaintiff's position that the School Board does not have a legitimate interest in protecting other students' privacy.[11]

Importantly, the School Board's interest in protecting students' safety and privacy rights based on their biological sex has been recognized by the Department of Education. The

---

[10] Plaintiff attempts to distinguish *Johnston*, by incorrectly interpreting the court's reasoning, which is directly on point. Plaintiff contents that "*Johnston* assumed that separate restrooms for men and women based on privacy concerns had been upheld under heightened scrutiny, but none of the cases cited by Johnston court actually supports that proposition." (Pl. Brief, p. 28). This is not *Johnston's* holding. Instead, *Johnston* cited to those cases as an example to support its reasoning that the need to ensure the privacy of its students outside the presence of members of the opposite sex is a justification that has been upheld by courts. *Id*., *8.

[11] Plaintiff's citation to the Virginia Department of Education guidelines for the construction of school locker room facilities only confirms that there are legitimate privacy interests for students when using restrooms and locker rooms.

regulations implementing Title IX specifically allow schools to provide "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 633. To suggest that the School Board does not have a substantial interest in providing separate restroom and locker room facilities based on biological sex is unconvincing at best.

The School Board has taken both Plaintiff's interests and the interests of its other students into consideration and developed a policy that attempts to satisfy the best interests of all of its students. Accordingly, there is not only a rational basis, but a substantially related basis for the School Board to require students to use the restroom and locker room associated with their biological sex. *Johnston*, 2015 WL 1497753, at *8; *United States v. Biocic*, 928 F.2d 112, 115-16 (4th Cir. 1991) (recognizing anatomical differences between men and women for purposes of equal protection analysis.)

Finally, even though the law allows the School Board to do so, the School Board did not limit its restroom policy to requiring students to use only a bathroom that corresponds to their biological sex. Instead, the School Board has also provided three unisex single stall restrooms for any student, including Plaintiff, to use if they desire more privacy. (Anderson Dec. ¶7).[12] It is evident that Plaintiff's equal protection rights have not been violated. Because Plaintiff cannot establish that he will likely succeed on the merits, Plaintiff's Motion for Preliminary Injunction should be denied.

---

[12] Plaintiff alleges that the School Board violated his rights by requiring him to use a separate restroom. That is not accurate. Under the policy, Plaintiff can use the girls' restrooms. Plaintiff has chosen not to do so. Nevertheless, Plaintiff can use one of three unisex bathrooms for privacy just as any other student.

**4. The School Board's Policy Does Not Violate Title IX.**

The School Board's policy does not violate Title IX. Title IX prohibits discrimination "on the basis of sex" in educational programs. 20 U.S.C. § 1681(a); see also, 34 C.F.R. §106.1. The federal regulations specifically permit the School Board to provide "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. §106.33.[13] Plaintiff cannot escape these provisions.

Instead, Plaintiff attempts to characterize this regulation as a "narrow exception" to Title IX that does not apply to transgender students. Yet, the United States Supreme Court and the Fourth Circuit have never held that this regulation does not apply to transgender students.[14] Nevertheless, Plaintiff asserts that the Department of Education's Office of Civil Rights "made clear" that the regulations require schools to allow transgender students access to sex-segregated facilities and programs that are consistent with their gender identity. (Pl. Brief, p. 38). The citation for this proposition, however, is to the Questions and Answers section dealing with the offering of single-sex classes, not access to bathrooms. Plaintiff's suggestion that this guidance requires the School Board to permit Plaintiff to use the boys' restroom is not persuasive.

First, not only has the Department of Education not offered guidance on the use of restrooms by transgender students, but the School Board is not discriminating against Plaintiff in his educational opportunities. The School Board is treating Plaintiff as a boy in his education classes. This guidance has no practical effect on the claims in this case. Moreover, as *Johnston*

---

[13] The regulations further provide that educational institutions can provide separate housing and consider sex in employment for a locker room or toilet facility used only by members of one sex. 34 C.F.R. §106.32; 34 C.F.R. §106.61.

[14] The Fourth Circuit recently declined an opportunity to expressly rule on whether a "failure to conform to gender stereotypes" could constitute a Title IX violation. *M.D. v. School Bd. of City of Richmond,* 560 F. App'x 199, 202 (4th Cir.2014).

noted, it is a "stretch to conclude that a restroom, in and of itself, is educational in nature and thus an educational program." *Johnston*, 2015 WL 1497753, at *18. Accordingly, the Plaintiff's suggestion that the Department of Education's "interpretation" of its own regulations is "controlling" is simply inapplicable to the School Board's restroom and locker room policy.[15]

Furthermore, the sweeping language in the government's Statement of Interest fares no better, because it is without authoritative support. (SOI, p. 6 "the term 'sex' as it is used in Title IX is broad and encompasses gender identity, including transgender status.") Instead, the government, like Plaintiff above, improperly conflates sex-stereotyping discrimination claims with a claim for transgender status alone under the *Price Waterhouse* analysis.

Contrary to the suggestion made by Plaintiff and the government, the Department of Education has not offered official guidance on the regulations permitting separate bathrooms and locker rooms based on sex relating to transgender individuals. Instead, the government offers an unpublished letter from the Office of Civil Rights concerning its opinion about sex-segregated restrooms. This unpublished letter is not entitled to deference, and is contrary to established law. *See Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655, 1657 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant

---

[15] The Government makes this same unpersuasive argument in its Statement of Interest. (SOI, p. 9). Additionally, the Government's cite to an "unpublished" letter concerning school district restroom policies relating to transgender students is also unpersuasive. First, the letter was in response to this specific case, and was not offered as "guidance." Second, the letter does not take a position on whether Title IX's regulations require a school district to allow transgender students to use a restroom consistent with their gender identity, but instead addresses transgender issues generally and specifically refrains from offering an opinion on the issue. **In fact, the letter "encourages schools to offer the use of gender-neutral, individual-user facilities to any student".** The School Board has done that. Similarly, the Government's citation to other state legislation or regulations involving adults in the work force do not support Plaintiff's Title IX claim. Further, federal regulations make clear that guidance offered by executive agencies is "non-binding" on this court. 72 Fed. Reg. 2432 (2007).

15

Chevron-style deference. They are 'entitled to respect,' but only to the extent that they are persuasive, *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124, (1944) which is not the case here.")

As noted above, courts have not permitted discrimination claims to proceed based upon transgender status in and of itself. Instead, all of the cases have been premised on some form of discrimination based on the plaintiff's behaviors, mannerisms or appearance – i.e. sexual stereotypes. *Johnston* addressed this precise issue as well, and held that being transgender itself is not a protected characteristic under Title IX. *Johnston,* 2015 WL 1497753, at *12-13.[16]

This reasoning is consistent with the plain language of the statute and the legislative history of the Title IX. Title IX was enacted in order to open up educational opportunities for girls and women in education, and address discrimination toward women. *See, e.g.*, 117 Cong. Rec. 30,155- 30,158 (August 5, 1971); 117 Cong. Rec. 39,248 – 39,261 (November 4, 1971); *Johnston,* 2015 WL 1497753, at *12-13. The legislative history, statutory language and implementing regulations do not refer to gender identity or transgender individuals in the enforcement scheme.

> *Johnston's* analysis of the transgender plaintiff's claims is particularly compelling here:
>
> The gravamen of plaintiff's case is [his] desire to [use] a specific [restroom or locker room] based on its particular appeal to [him]. [He] believes that the choice should not be denied [him] because of an educational policy with which [he] does not agree.
>
> We are not unsympathetic with [his] desire to have an expanded freedom of choice, but its cost should not be overlooked. If [he] were to prevail, then all [sex-segregated restrooms and locker rooms] would have to be abolished. The absence of [sex-segregated spaces] would stifle the ability of the [University] to continue with a respected educational methodology. It follows too that those students and

---

[16] The Court noted that the exclusion of gender identity from the language of Title IX is not an issue for the court to remedy, but one within the province of Congress to identify the classifications which are statutorily prohibited. *Id*, at *15.

16

parents who prefer an education [with sex segregated restrooms and locker rooms] would be denied their freedom of choice....

It is not for us to pass upon the wisdom of segregating boys and girls in [their use of restrooms and locker rooms]. We are concerned not with the desirability of the practice but only its constitutionality. Once that threshold has been passed, it is the [University's] responsibility to determine the best methods of accomplishing its mission.

Accordingly, Plaintiff cannot state a cause of action under Title IX as a result of transgender status. The School Board's policy of providing separate bathrooms and locker rooms on the basis of birth sex is permissible under Title IX.

Similarly, and as stated in the Motion to Dismiss, Plaintiff has not stated a sex stereotyping discrimination claim under Title IX. Plaintiff does not allege that the School Board harassed or discriminated against him because of the way he behaved, dressed, looked or acted. To the contrary, school officials have supported Plaintiff. The School Board is providing Plaintiff with the ability to participate fully in an education free from discrimination based upon gender stereotypes. Simply stated, Plaintiff has not alleged facts showing that the School Board unlawfully discriminated against him on the basis of sex in violation of Title IX. *Johnston,* 2015 WL 1497753, at *17. As a result, the Motion for Preliminary Injunction should be denied.

C.     **Plaintiff Is Not Likely To Suffer Irreparable Harm.**

Plaintiff is not likely to suffer irreparable harm if the Court denies the Motion for Preliminary Injunction. Simply put, the School Board, and school officials, have recognized and accepted Plaintiff as a transgendered individual. They are supporting Plaintiff, changed his official school records, refer to Plaintiff with male pronouns, and are allowing him to participate in his school educational opportunities as a transgender male. This will continue into the 2015-2016 school year and until Plaintiff graduates. The School Board has also provided three single-stall bathrooms for Plaintiff and any other student to use. Plaintiff can also use the bathroom in

the nurse's office. Moreover, Plaintiff has voluntarily agreed not to use the locker room at the high school, which is evidence that Plaintiff's recognizes that there are current differences between Plaintiff and fellow male students. All of this discounts the notion that Plaintiff will suffer irreparable harm if a preliminary injunction is not granted.

**D.     The Balance Of Hardships Does Not Tip In Plaintiff's Favor.**

As set out above, the School Board is balancing the safety and privacy interests of all of its students, from kindergarten through twelfth grade, against the interest of Plaintiff in using the boys' bathroom at the high school. The restroom practice that Plaintiff complains about existed before Plaintiff identified as a transgender individual. In an effort to accommodate Plaintiff, the School Board provided three unisex single-stall bathrooms that any student could use. The hardship to Plaintiff is that he will be limited to the girls' restroom, the three single-stall restrooms, or the restroom in the nurse's office. The hardship to the remaining students in the school system is that safety and privacy interests of male Gloucester High School students go unprotected until the issue is resolved on the merits.[17]

Denying Plaintiff's motion to require the School Board to permit Plaintiff to use the boys' restroom does not create a more burdensome hardship on Plaintiff, compared with the interests of the school and its other students.

**E.     An Injunction Is Not In The Public Interest.**

An injunction is not in the public interest, because the School Board's policy does not violate the Equal Protection Clause or Title IX, and the School Board is not discriminating against Plaintiff by maintaining separate sex-segregated bathrooms.

---

[17] Contrary to Plaintiff's assertion, the bathrooms, and specifically the urinals, are not completely private, and the modifications made to the restrooms do not eliminate student privacy concerns.

18

Currently, there is a bill in Congress that addresses this specific issue. It is in the public interest for this debate to play out in Congress and with the citizens, and not to be decided by through a motion for preliminary injunction in the courts. *See*, H.R.846, 114th Cong., 1st Sess. (2015); S.439 114th Cong., 1st Sess. (2015).

### IV.  CONCLUSION

For all of the foregoing reasons, the Gloucester County School Board respectfully requests that the Court deny the Plaintiff's Motion for a Preliminary Injunction.

**GLOUCESTER COUNTY SCHOOL BOARD**

By Counsel

/s/
David P. Corrigan
VSB 26341
Jeremy D. Capps
VSB No. 43909
M. Scott Fisher, Jr.
VSB 78485
Attorney for Gloucester County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com

### **C E R T I F I C A T E**

I hereby certify that on the _____ day of July, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Rebecca K. Glenberg, Esq.
> American Civil Liberties Union of Virginia Foundation, Inc.
> 701 E. Franklin Street
> Suite 1412

Richmond, VA 23219
804-644-8080 - Phone
804-649-2733 - Fax
rglenberg@acluva.org


Gail Deady, Esq.
ACLU
701 E. Franklin Street
Suite 1412
Richmond, VA 23219
804-644-8080 - Phone
804-649-2733 - Fax
gdeady@acluva.org

Joshua A. Block, American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004
212-549-2500 - Phone
212-549-2650 - Fax

Leslie Cooper, American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-549-2500 - Phone
212-549-2650 - Fax


/s/
David P. Corrigan
VSB No. 26341
Attorney for Gloucester County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com

20