IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

G.G.,

  Plaintiff,

v.                                        Case No. 4:15-cv-00054-RGD-TEM

GLOUCESTER COUNTY SCHOOL
BOARD,

  Defendant.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

This lawsuit arises out of a transgender student's assertion that his high school has violated the Equal Protection Clause of the Fourteenth Amendment and Title IX, because he is not permitted to use the boys' restrooms. The student was born a female, but identifies as a male. The student's constitutional rights have not been violated, nor has he been subject to unlawful discrimination based on his transgender identification.

Separating students by sex based on biological and anatomical characteristics for restroom and locker room use does not violate the Equal Protection Clause or Title IX. In fact, the Code of Federal Regulations expressly permits schools to provide separate restroom and locker room facilities based on the students' sex. Moreover, the only Court to have considered claims factually similar to the Plaintiff's claims has held that a policy similar to the Gloucester County School Board's policy does not violate the Equal Protection Clause or Title IX. Accordingly, Plaintiff's Complaint should be dismissed.

1

## II. FACTUAL ALLEGATIONS

The student ("Plaintiff")[1] is a 16 year old transgender student at Gloucester High School in Gloucester County, Virginia ("School Board"). (Complaint ¶¶1, 9). Plaintiff was born a female, but now identifies as a male. (Complaint ¶¶1, 14). Plaintiff enrolled in high school as a girl, and started ninth grade as a girl. (Complaint ¶20).

Based on his psychologist's recommendation, Plaintiff is receiving hormone treatments, and legally changed his name. (Complaint ¶¶25, 26). At the beginning of Plaintiff's sophomore year in August of 2014, Plaintiff informed the school that he is transgender, and that he legally changed his name. The high school changed Plaintiff's name in the official school records. (Complaint ¶27). For the last year, Plaintiff has been living as a boy in all aspects of his life. (Complaint ¶2).[2] Plaintiff, however, is still biologically and anatomically a female. (*See e.g.*, Complaint ¶¶1, 14).

When Plaintiff informed school officials that he was transgender, the school officials immediately expressed support. (Complaint ¶¶2, 28) School officials agreed to refer to Plaintiff using his new name and by using male pronouns. (Complaint ¶28). At Plaintiff's request, school officials have also permitted Plaintiff to continue with the home-bound program for the school's physical education requirements. (Complaint ¶29). After Plaintiff informed the School Board that he was transgender, he voluntarily agreed to use a separate restroom in the nurse's office, because he was unsure how other students would react to his transition. (Complaint ¶3, 30).

---

[1] This suit is brought on behalf of the student by his next friend and mother. For purposes of this brief, the student will be referred to as "Plaintiff."

[2] At the end of Plaintiff's freshman year, Plaintiff began to undergo treatment for Gender Dysphoria. He has completed his sophomore year, and will begin his junior year of high school in September. (Complaint ¶¶2, 3, 21, 25).

2

In October of 2014, Plaintiff asked and was permitted to use the boys' restroom. On November 11, 2014, a School Board meeting was held, and a public discussion about the use of restrooms and locker rooms by transgender students ensued. Several citizens expressed concerns. (Complaint ¶¶34-38). The issue was again discussed at a School Board meeting on December 9, 2014. (Complaint ¶42). At this meeting, the School Board adopted a resolution concerning the use of restrooms and locker rooms ("policy") that provided:

> Whereas the GCPS recognizes that some students question their gender identities, and
>
> Whereas the GCPS encourages such students to seek support, advice, and guidance from parents, professionals and other trusted adults, and
>
> Whereas the GCPS seeks to provide a safe learning environment for all students and to protect the privacy of all students, therefore
>
> It shall be the practice of the GCPS to provide male and female restroom and locker room facilities in its schools, and the use of said facilities shall be limited to the corresponding biological genders, and students with gender identity issues shall be provided an alternative appropriate private facility. (Complaint ¶43).

Plaintiff used the boys' restroom for approximately seven weeks before the policy was enacted. (Complaint ¶¶3, 32). Plaintiff states that he does not intend to use the locker room at the school. (Complaint ¶41). In adopting the policy, the school board issued a news release that stated:

> One positive outcome of all the discussion is that the District is planning to increase the privacy options for all students using school restrooms … Plans include adding or expanding partitions between urinals in male restrooms, and adding privacy strips to the doors of stalls in all restrooms. The District also plans to designate single-stall, unisex restrooms, similar to what's in many other public spaces, to give all students the option for even greater privacy. (Complaint ¶41).

Plaintiff has been told he cannot use the boys' restrooms. (Complaint ¶45). Plaintiff will not use the girls' restroom, although he is permitted to do so under the School Board's policy. (Complaint ¶46). The school constructed three unisex, single-stall restrooms after the policy was

3

adopted. Any student, including Plaintiff, is permitted to use these single-stall restrooms. (Complaint ¶47). Plaintiff refuses to use the single-stall restrooms. (Complaint ¶48). If Plaintiff has to use the bathroom, he uses the nurse's restroom. (Complaint ¶49).

### III.  LAW AND ARGUMENT

**A.    Standard of Review.**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-244 (4th Cir. 1999). While the Court must accept as true all factual allegations contained in the complaint, it is not bound to accept as true the complaints' legal conclusions. *See Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id. (quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). It is not sufficient that a complaint provide "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor is it sufficient that a complaint tenders naked assertions devoid of further factual enhancement. *Id.* at 557. Instead, a plaintiff has an obligation to provide the "grounds of his entitlement to relief." *Id.* at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations omitted).

When deciding a motion to dismiss, "a court may consider public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *see also, Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### B. The School Board Has Not Violated The Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. Amend. XIV, §1*. The equal protection requirement "does not take from the States all power of classification," *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 271, 99 S.Ct. 2282 (1979), but "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326 (1992).

Thus, "[t]he [Equal Protection] Clause requires that similarly-situated individuals be treated alike." *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). In order to make out a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently from others similarly situated and that the unequal treatment was the result of intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 652 (4th Cir. 2001); *Brown v. Wilson*, No. 3:13CV599, 2015 WL 3885984, at *6 (E.D. Va. 2015); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

#### 1. Plaintiff is not subject to intentional discrimination.

The School Board did not develop the restroom and locker room policy in an attempt to stigmatize, embarrass or otherwise reject Plaintiff. Indeed, when Plaintiff informed school officials that he was transgender, school officials immediately expressed support. (Complaint

5

¶¶2, 28). School officials changed Plaintiff's name in the official school records, refer to Plaintiff using his new name, and refer to Plaintiff using male pronouns. (Complaint ¶27). Plaintiff has not alleged that school officials have in anyway harassed or discriminated against Plaintiff in his educational opportunities, or engaged in any form of discriminatory treatment with respect to Plaintiff's transgender identification. Plaintiff's only complaint is that Plaintiff cannot use the boys' restroom.[3]

The policy, however, does not discriminate against any one class of individuals. Instead, the policy was developed to treat all students and situations the same. To respect the safety and privacy of all students, the School Board has had a long-standing practice of limiting the use of the restroom and locker room facilities to the corresponding biological sex of the students.[4] Accordingly, biological boys are permitted to use the boys' restrooms and locker rooms, and biological girls are permitted to use the girls' restrooms and locker rooms.[5] After Plaintiff told the school that he was transgender, the School Board developed a policy that it believes is in the best interests of all students.

The School Board has provided three single-stall bathrooms for use by any student, including Plaintiff, regardless of their biological sex. Under this policy, Plaintiff is treated the same as his fellow students. All students, including female to male transgender and male to female transgender students, are treated the same. Any student, including Plaintiff, is permitted to use the single-stall restrooms. (Complaint ¶47). Plaintiff is permitted to use the girls'

---

[3] Plaintiff volunteers not to use the boys' locker room.

[4] As set out below, the Code of Federal Regulations expressly permits the School Board to provide sex-segregated restrooms and locker rooms. 34 C.F.R. § 106.33.

[5] Plaintiff has not alleged that the boys and girls restrooms and locker rooms are not functionally equivalent.

restroom under the School Board's policy, but will not do so. (Complaint ¶46). Plaintiff is permitted to use the single-stall restrooms, but refuses to do so. (Complaint ¶48). Accordingly, Plaintiff is not able to demonstrate that he has been treated differently from others similarly situated, or that he was subject to intentional discrimination. As such, Count I should be dismissed on this basis alone.

### 2. Transgender individuals are not a suspect classification.

Even though the School Board policy is neutral and nondiscriminatory on its face, Plaintiff contends that he should be afforded protection under the Fourteenth Amendment based on his gender identity. Plaintiff wants to expand the protection of the Constitution to include protection not only based on "the biological differences between men and women", but also to his gender identity. (Complaint ¶53).

Plaintiff argues that Plaintiff's transgender status allows him to demonstrate that he has been treated differently from others similarly situated. **The United States Supreme Court and the Fourth Circuit Court of Appeals have not recognized transgender as a suspect classification under the Equal Protection Clause. In fact, no Circuit Court has recognized transgender status, in and of itself, as a suspect classification under the Equal Protection Clause.** Courts have also rejected the notion that transgender status itself, or other subset classifications of sex, is a suspect classification. *See e.g.*, *Etsitty v. Utah Transit Authority,* 502 F.3d 1215, 1222 (10th Cir.2007) (holding transsexuals are not a protected class under Title VII)[6]; *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996) (Title VII does not afford a cause of action for discrimination based upon sexual orientation); *Veney v. Wyche*, 293 F.3d 726,

---

[6] The Tenth Circuit just reaffirmed the holding in *Etsitty* this year, and recognized that a transsexual plaintiff is not a member of a protected suspect class for purposes of Equal Protection claims. *See Druley v. Patton*, 601 Fed. Appx. 632, 635 (10th Cir. 2015).

7

731-32 (4th Cir. 2002) (recognizing that a homosexual's claim that his equal protection rights were violated on the basis of his sexual preference and gender are subject to rational basis review); *Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69, 70 (8th Cir.1989) ("Title VII does not prohibit discrimination against homosexuals."), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158 (1990).

There is only one United States District Court that has considered whether a public school can prohibit a transgender student from using a bathroom or locker room that is not associated with that student's biological sex. In *Johnston v. University of Pittsburgh of Com. System of Higher Educ.,* 2015 WL 1497753 (W.D. Pa. Mar. 31, 2015), the plaintiff was born a biological female.[7] The plaintiff entered college as a female, but later identified as a male. The plaintiff was diagnosed with Gender Identity Disorder, legally changed his name, and began living as a male. Plaintiff used the men's restrooms and locker rooms on campus. The plaintiff, however, remained anatomically a female. Thereafter, the plaintiff was told he could not use the men's restrooms or locker rooms. When the plaintiff refused to comply with this policy, he was expelled from the University. The plaintiff filed suit against the University alleging the school's policy violated the Equal Protection Clause of the Fourteenth Amendment, and violated Title IX. The District Court, in a detailed analysis and opinion, rejected these claims.

With facts remarkably similar to the allegations in Plaintiff's Complaint, *Johnston* found that transgender status is not a suspect classification, and that providing separate restroom and locker room facilities for college students based on their biological sex did not violate the Equal Protection Clause. *Johnston*, 2015 WL 1497753, at *8-10 (W.D. Pa. Mar. 31, 2015). As the Court noted, this finding is consistent with the holding of numerous other courts that have

---

[7] This case is attached as Exhibit 1.

considered allegations of discrimination by transgender individuals, whether under the Fourteenth Amendment or Title VII. *See, e.g.*, *Johnston*, 2015 WL 1497753, at *8 (W.D. Pa. Mar. 31, 2015); *Frontiero v. Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1221-22 (10th Cir. 2007); *Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081, 1084 (7th Cir. 1984); *Sommers v. Budget Mktg., Inc.,* 667 F.2d 748, 750 (8th Cir. 1982).[8]  The same result should be reached here.

Accordingly, Plaintiff's equal protection claim, to the extent Plaintiff has one, should be reviewed under the rational basis standard.  The School Board's policy should be upheld, because it has a "rational relation to some legitimate end."  Even if a heightened standard of review were to apply, the School Board's policy, like the policy in *Johnston*, still does not violate Plaintiff's equal protection rights.  In fact, the School Board's interests are even more compelling than in *Johnston*, because the School Board is responsible for the care and education of minor children, from kindergarten to twelfth grade, not adults in college like *Johnston*.

At a public school, students are compelled to attend by law.  The School Board is entrusted to provide those students with a safe and healthy learning environment.  *See, e.g., Burns v. Gagnon*, 283 Va. 657, 671, 727 S.E.2d 634, 643 (2012); Va. Code § 22.1-254.  Parents have an interest in the safety and privacy of their children.  Children also have both strong safety and privacy interests of their own that are protected by the Constitution.  The School Board has a responsibility to its students to ensure their privacy while engaging in personal bathroom

---

[8] Some Courts have recognized a *Price Waterhouse* theory under Title VII that protects transgendered individuals who can demonstrate that they were subject to discrimination, because their appearance and conduct does not conform to traditional male or female stereotypes. *See Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989). These cases do not, however, recognize a theory of liability simply because the plaintiff is transgendered. *See, e.g., Etsitty,* 502 F.3d at 1222 n. 2.  Plaintiff's allegations do not support a *Price Waterhouse* stereotype claim of discrimination in this case.

functions, disrobing, dressing, and showering outside of the presence of members of the opposite sex.

This is particularly true in an environment where children are still developing, both emotionally and physically. As *Johnston* recognized, the context of this dispute is important. Here, the School Board is balancing the needs, interests and rights of children in kindergarten through twelfth grade. The right to privacy for students strongly supports maintaining sex-segregated bathrooms and locker rooms. *See Johnston*, 2015 WL 1497753, at *7 (finding "controlling the unique contours under which this case arises." Namely a [public school] which is "tasked with providing safe and appropriate facilities for all of its students."

While Plaintiff wants to use the boys' restroom, and the possibility exists that a male to female transgender student might want to use the girls' restroom in the future, the School Board must balance these requests with "providing its students with a safe and comfortable environment for performing these same life functions [using the bathroom and locker room] consistent with society's long-held tradition of performing such functions in sex-segregated spaces based on biological or birth sex." *Johnston*, 2015 WL 1497753, at *7.

Importantly, the School Board's interest in protecting students' safety and privacy rights based on their biological sex has been recognized by the Department of Education. The regulations implementing Title IX specifically allow schools to provide "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 633. Ultimately, even Plaintiff recognizes this privacy justification. The Complaint alleges Plaintiff has chosen not to participate in physical education requirements at school, and is not using the locker room to change or shower, presumably for this very reason.

10

The School Board has taken both Plaintiff's interests and the interests of its other students into consideration and developed a policy that attempts to satisfy the best interests of all of its students. The School Board did not develop the restroom and locker room policy because of a perception that Plaintiff does not conform to gender norms, or in an attempt to stigmatize, embarrass or otherwise reject Plaintiff. The long-standing practice of separating girls and boys based on their biological sex in separate restrooms and locker rooms has always existed in the Gloucester County schools. Even though the law allows the School Board to do so, the School Board did not limit its restroom policy to requiring students to use only a bathroom that corresponds to their biological sex.[9] Instead, in an effort to accommodate Plaintiff, and also to take into account the legitimate safety and privacy interests of Plaintiff and the Gloucester County School's other students, the School Board also constructed three unisex single-stall bathrooms. Accordingly, there is not only a rational basis, but a substantially related basis for the School Board to require students to use the restroom and locker room associated with their biological sex. *Johnston*, 2015 WL 1497753, at *8; *United States v. Biocic*, 928 F.2d 112, 115-16 (4th Cir. 1991) (recognizing anatomical differences between men and women for purposes of analyzing equal protection challenge.)[10]

---

[9] Plaintiff alleges that the School Board violated his rights by requiring him to use a separate restroom. That is not accurate. Under the policy, Plaintiff can use the girls' restrooms. Plaintiff has chosen not to do so. Nevertheless, Plaintiff can use one of three single-stall bathrooms for privacy just as any other student.

[10] Quoting Justice Stewart:

[W]e have recognized that in certain narrow circumstances men and women are not similarly situated; in these circumstances a gender classification based on clear differences between the sexes is not invidious, and a legislative classification realistically based upon those differences is not unconstitutional. *Michael M. v. Sonoma County Superior Court,* 450 U.S. 464, 478, 101 S.Ct. 1200, 1209, 67 L.Ed.2d 437 (1981) (Stewart, J., concurring).

While Plaintiff asserts that his gender identification is a boy, the Complaint establishes that he was born a female, and he is anatomically and biologically a female. "Separating students by sex based on biological considerations – which involves the physical differences between men and women – for restroom and locker room use simply does not violate the Equal Protection Clause." *Johnston*, 2015 WL 1497753, at *8-9 (W.D. Pa. Mar. 31, 2015). It is evident that Plaintiff's equal protection rights have not been violated, and Count I should be dismissed.

### C. The School Board's Policy Does Not Violate Title IX.

#### 1. Plaintiff does not have a cause of action based on his transgender status.

Plaintiff alleges the School Board violated Title IX, because it is requiring him to use separate restrooms because of his gender identity issues, and because it excludes him from using the boys' restrooms. (Complaint ¶¶64-65). The School Board's policy does not violate Title IX.

Title IX prohibits sex discrimination in educational programs and provides:

> No person in the United States shall, *on the basis of sex,* be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a) (emphasis added); see also, 34 C.F.R. §106.1. Again, the United States Supreme Court and the Fourth Circuit have not addressed whether a transgender plaintiff is protected under Title IX based on their transgender status alone. However, as the court in *Johnston* pointed out, nearly every case that has considered the question in the Title VII context that has found that transgendered individuals, and other subset classifications of sex, are not a protected class under Title VII. *Johnston,* 2015 WL 1497753, at *12-13, and cases cited therein; *Wrightson v. Pizza Hut of America, Inc.,* 99 F.3d 138, 143 (4th Cir. 1996) ("Title VII does not

afford a cause of action for discrimination based on sexual orientation."); *Etsitty v. Utah Transit Authority,* 502 F.3d 1215, 1222 (10th Cir. 2007) (holding transsexuals are not a protected class under Title VII)**.**

*Johnston* addressed this precise issue, and held that being transgender itself is not a protected characteristic under Title IX. *Johnston,* 2015 WL 1497753, at *12-13. Specifically, *Johnston* reasoned that "on a plain reading of the statute, the term 'on the basis of sex' in Title IX means nothing more than male and female, under the traditional binary conception of sex consistent with one's birth or biological sex." *Id.*, *13.[11]

This reasoning is consistent with the plain language of the statute and the legislative history of Title IX. Title IX was enacted in order to open up educational opportunities for girls and women in education, and address discrimination toward women. *See, e.g.*, 117 Cong. Rec. 30,155- 30,158 (August 5, 1971); 117 Cong. Rec. 39,248 – 39,261 (November 4, 1971); *Johnston,* 2015 WL 1497753, at *12-13. The legislative history, statutory language and implementing regulations do not refer to gender identity or transgender individuals in the enforcement scheme. Instead, the regulations implementing Title IX actually support the School Board's restroom and locker room policy. These regulations specifically permit the School Board to provide "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R.§106.33.[12] As *Johnston* recognized, "Title IX and its implementing regulations clearly permit schools to provide students with certain sex-segregated spaces, including bathroom and

---

[11] The Court noted that the exclusion of gender identity from the language of Title IX is not an issue for the court to remedy, but one within the province of Congress to identify the classifications which are statutorily prohibited. *Id,* at *15.

[12] The regulations further provide that educational institutions can provide separate housing and consider sex in employment for in a locker room or toilet facility used only by members of one sex. 34 C.F.R. §106.32; 34 C.F.R. §106.61.

locker room facilities, to perform certain private activities and bodily functions consistent with an individual's birth sex." *Johnston,* 2015 WL 1497753, at *15.

Johnston's analysis of the transgender plaintiff's claims is particularly compelling here:

The gravamen of plaintiff's case is [his] desire to [use] a specific [restroom or locker room] based on its particular appeal to [him]. [He] believes that the choice should not be denied [him] because of an educational policy with which [he] does not agree.

We are not unsympathetic with [his] desire to have an expanded freedom of choice, but its cost should not be overlooked. If [he] were to prevail, then all [sex-segregated restrooms and locker rooms] would have to be abolished. The absence of [sex-segregated spaces] would stifle the ability of the [University] to continue with a respected educational methodology. It follows too that those students and parents who prefer an education [with sex segregated restrooms and locker rooms] would be denied their freedom of choice....

It is not for us to pass upon the wisdom of segregating boys and girls in [their use of restrooms and locker rooms]. We are concerned not with the desirability of the practice but only its constitutionality. Once that threshold has been passed, it is the [University's] responsibility to determine the best methods of accomplishing its mission.

Accordingly, Plaintiff cannot state a cause of action under Title IX as a result of his transgender status. The School Board's policy of providing separate bathrooms and locker rooms on the basis of birth sex is permissible under Title IX, and Count II should be dismissed.

### 2. **Plaintiff has not stated a Transgender "stereotype" claim.**

Plaintiff asserts that he is protected under Title IX from discrimination based on "gender nonconformity" and alleges that the School Board discriminated against him, because it does not "deem him to be biologically male." (Complaint, ¶62 and ¶65). Presumably, Plaintiff is attempting to assert a *Price Waterhouse* theory of liability. These conclusory allegations, however, do not support a cause of action against the School Board.

Some courts have recognized a transgender claim for discrimination under Title VII based on *Price Waterhouse* and allegations of failing to conform to gender stereotypes. *See, e.g.*,

14

*Finkle v. Howard County, Md.*, 12 F.Supp.3d 780 (D. MD. 2014); *Glenn v. Brumby,* 663 F.3d 1312, 1318 (11th Cir. 2011) (All persons, whether transgender or not, are protected from discrimination on the basis of gender stereotype.) The Fourth Circuit, however, has not extended such a claim to Title IX. Nevertheless, even assuming that such a claim could be made under Title IX, Plaintiff's factual allegations in the Complaint do not establish this claim.

Sex stereotyping claims are grounded in allegations that the transgender plaintiff was discriminated against based upon their behaviors, mannerisms or appearance. Here, Plaintiff does not allege that the School Board harassed or discriminated against him because of the way he behaved, dressed, looked or acted. To the contrary, the Complaint alleges that school officials supported Plaintiff after he announced he was transgender. The school changed his name in school records, refers to him by male gender pronouns, and permits Plaintiff to attend school in conformance with his male gender identity. The Complaint establishes that the School Board is not discriminating against Plaintiff because of gender stereotypes, or his failure to conform to gender stereotypes. Instead, the School Board is providing Plaintiff with the ability to participate fully in an education free from discrimination based upon gender stereotypes.

The Complaint alleges only one exception to the School Board's support of Plaintiff's gender identity -- that the School Board's restroom and locker room policy does not allow him to use the boy's restroom consistent with his gender identity.[13] As *Johnston* held, this allegation is insufficient to state a claim for discrimination under a sex stereotyping theory. *Id.*, *17. As noted above, the School Board's restroom and locker room policy is applicable to all students, and treats them the same based upon their biological sex. Contrary to Plaintiff's conclusory

---

[13] While the Complaint complains that the School Board does not deem him to be "biologically male", the allegations in that Complaint confirm that Plaintiff was born biologically female, and remains biologically and anatomically female.

allegations, the policy does not require Plaintiff to use his own separate bathroom. The policy permits all students to use one of three single-stall bathrooms, and also allows students to use a bathroom that corresponds to their biological birth sex.

Simply stated, Plaintiff has not alleged facts showing that the School Board unlawfully discriminated against him on the basis of sex in violation of Title IX. *Johnston,* 2015 WL 1497753, at *17.

## IV. CONCLUSION

For all of the foregoing reasons, the Gloucester County School Board respectfully requests that the Court grant the Motion to Dismiss, and dismiss Plaintiff's Complaint in its entirety and with prejudice.

**GLOUCESTER COUNTY SCHOOL BOARD**

By Counsel

/s/
David P. Corrigan
VSB 26341
Jeremy D. Capps
VSB No. 43909
M. Scott Fisher, Jr.
VSB 78485
Attorney for Gloucester County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com

# **C E R T I F I C A T E**

      I hereby certify that on the 7th day of July, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Rebecca K. Glenberg, Esq.
    American Civil Liberties Union of Virginia Foundation, Inc.
    701 E. Franklin Street
    Suite 1412
    Richmond, VA 23219
    804-644-8080 - Phone
    804-649-2733 - Fax
    rglenberg@acluva.org

    Gail Deady, Esq.
    ACLU
    701 E. Franklin Street
    Suite 1412
    Richmond, VA 23219
    804-644-8080 - Phone
    804-649-2733 - Fax
    gdeady@acluva.org

    Joshua A. Block, American Civil Liberties Union
    125 Broad Street, 18th Floor
    New York, NY 10004
    212-549-2500 - Phone
    212-549-2650 - Fax

    Leslie Cooper, American Civil Liberties Union Foundation
    125 Broad Street, 18th Floor
    New York, NY 10004
    212-549-2500 - Phone
    212-549-2650 - Fax

    /s/
    David P. Corrigan
    VSB No. 26341
    Attorney for Gloucester County School Board
    Harman, Claytor, Corrigan & Wellman
    P.O. Box 70280
    Richmond, Virginia 23255
    804-747-5200 - Phone
    804-747-6085 - Fax
    dcorrigan@hccw.com