IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

G.G.,

  Plaintiff,

v.                                     Case No. 4:15-cv-00054-RGD-TEM

GLOUCESTER COUNTY SCHOOL
BOARD,

  Defendant.

## GLOUCESTER COUNTY SCHOOL BOARD'S
## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff opposes Defendant's Motion to Dismiss by asserting that the allegations in the Complaint have created a factual issue with respect to the motive of the Gloucester County School Board ("School Board") in enacting the restroom policy.[1] Yet, Plaintiff has not alleged that the School Board has in any way harassed or discriminated against Plaintiff in Plaintiff's educational opportunities as a result of Plaintiff's transgender identification as a boy. Instead, **the only complaint is that Plaintiff cannot use the boys' restroom**, despite the School Board making three single-stall restrooms available for any student, including Plaintiff, to use.

Simply put, the Equal Protection Clause and Title IX are not violated by separating restrooms based on a student's biological and anatomical sex, particularly where single-stall

---

[1] Plaintiff has incorporated the Brief in Support and Reply Memorandum in Support of Plaintiff's Motion for Preliminary Injunction (ECF Docs. 18 and 41) in opposition to the Motion to Dismiss. Accordingly, the School Board **incorporates the legal arguments and analysis** in its Brief in Opposition to the Motion for Preliminary Injunction (ECF Doc. 30) as if fully set forth herein. **The School Board does not**, however, incorporate the declarations in the briefs in support and opposition to the Motion for Preliminary Injunction or in any way **intend to convert the Motion to Dismiss to a Motion for Summary Judgment.**

1

restrooms are provided for all students to use. Accordingly, Plaintiff's Complaint does not state a cause of action under the Fourteenth Amendment or Title IX, and there is not a factual issue that needs to be resolved on summary judgment or at trial.

## II. LAW AND ARGUMENT

### A. The Plaintiff Has Not Stated A Cause Of Action.

Contrary to Plaintiff's suggestion, the School Board does not concede that Plaintiff has stated a cause of action for "gender nonconformity", nor does it concede that the restroom policy constitutes sex discrimination in violation of the Fourteenth Amendment or Title IX. While some courts have recognized a Title VII claim brought by transgender employees based on a *Price Waterhouse* sex "stereotype" theory, the United States Supreme Court and the Fourth Circuit Court of Appeals have not recognized transgender status as a suspect classification under the Equal Protection Clause or as a class protected by Title IX. Furthermore, **there is not one court that has held that a transgender student has the constitutional right, or the right under Title IX, to use a bathroom that is inconsistent with that student's biological sex.**

Instead, there is only one United States District Court that has considered whether a public school can prohibit a student from using a bathroom or locker room that is inconsistent with that student's biological sex. In *Johnston v. University of Pittsburgh of Com. System of Higher Educ.,* 2015 WL 1497753 (W.D. Pa. Mar. 31, 2015), **the Court held that the University did not violate the Equal Protection Clause or Title IX by maintaining a policy of sex segregated bathrooms and locker rooms, or by requiring the transgender plaintiff to use the bathroom and locker room that correlated with his biological sex.** The same result is dictated here.

Like *Johnston*, the School Board has had a long-standing practice of limiting the use of the restroom and locker room facilities to the corresponding biological sex of its students.[2] Unlike *Johnston*, however, the School Board is not requiring Plaintiff to use the girls' bathroom. Instead, the School Board took the additional step of providing three single-stall bathrooms that any student, including Plaintiff, can use regardless of their biological sex. (Complaint ¶47). Under this policy, Plaintiff is treated the same as the other students at Gloucester High School.[3] For the reasons set out in *Johnston*, Plaintiff has not been subjected to unconstitutional discrimination, nor has Plaintiff been subjected to unequal access to educational programs in violation of Title IX.

**B.  Plaintiff Has Not Alleged A Viable Sex "Stereotype" Claim.**

The overwhelming amount of authority provides that transgender status is not a suspect class for purposes of the Equal Protection Clause.[4]  *See e.g.*, *Starr v. Bova*, 2015 WL 4138761, at *2 (N.D. Ohio July 8, 2015) (An equal protection claim brought by a transgender plaintiff is governed by rational basis review); *Jamison v. Davue,* 2012 WL 996383, at *3 (E.D.Cal. Mar. 23, 2012) ("transgender individuals do not constitute a 'suspect' class, so allegations that defendants discriminated against him based on his transgender status are subject to a mere

---

[2] This policy is consistent with the Code of Federal Regulations which expressly permits the School Board to provide sex-segregated restrooms and locker rooms. 34 C.F.R. § 106.33.

[3] Plaintiff contends that public comments made during a School Board meeting discussing the restroom policy create a fact issue concerning the intent of the School Board in enacting that policy.  The inference Plaintiff is seeking, however, does not negate the allegations in the Complaint or the basis for the School Board's Motion to Dismiss.  Furthermore, the cases that Plaintiff cites in support of this argument involved zoning ordinances, and thus are inapposite to the facts in this case.  See, *A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356 (4th Cir. 2008); *City of Cleburne, TX v. Cleburne Living Center*, 473 U.S. 432 (1985).

[4] The same is true in the Title IX / Title VII context.

3

rational basis review"); *Kaeo–Tomaselli v. Butts,* 2013 WL 399184, at *5 (D. Haw. Jan. 31, 2013) (noting the plaintiff's status as a transgender female did not qualify her as a member of a protected class and explaining the court could find no "cases in which transgendered individuals constitute a 'suspect' class"); *Druley v. Patton*, 601 Fed. Appx. 632, 635 (10th Cir. 2015) (reaffirming *Etsitty v. Utah Transit Authority,* 502 F.3d 1215, 1222 (10th Cir. 2007) and holding that a transsexual plaintiff is not a member of a protected suspect class for purposes of Equal Protection claims).

Recognizing this, Plaintiff now contends that he is not asking this Court to recognize transgender status as a suspect classification entitled to protection under the Equal Protection clause. (ECF Doc. 41, p. 6). Instead, Plaintiff tries to create protected status under a theory of gender "nonconformity." (ECF Doc. 44, p. 3; ECF Doc. 41, pp. 6-7).[5] Yet, in examining Plaintiff's arguments, Plaintiff's claims are indeed based on Plaintiff's transgender status, in and of itself.

This position becomes evident in Plaintiff's assertion that "discrimination against a transgender person inherently involves impermissible discrimination based on the person's gender nonconformity." (ECF Doc. 41, p. 8). This argument and Plaintiff's citations in support misapply *Price Waterhouse*. Plaintiff engages in circular reasoning to claim that his transgender status means "nonconformity", and nonconformity is protected from gender stereotyping, which means transgender individuals are entitled to protected status. Plaintiff makes this argument, however, without factual allegations to support the claim that the restroom policy was implemented based on an impermissible stereotype.

---

[5] Plaintiff also proceeds under this theory for the Title IX claim.

**The underlying rationale for a *Price Waterhouse* claim is that discrimination based on behavior that is inconsistent with a sex stereotype is prohibited. A policy based on biological and anatomical characteristics, however, is not "sex stereotyping" under *Price Waterhouse*.**

Plaintiff's use of employment cases to support a sex stereotype theory in the school restroom context is unavailing. In the employment context, plaintiffs typically allege that they are discriminated against in the benefits of employment, because the employer believes the employee is not behaving consistently with the employee's biological sex. For example, in *Smith v. City of Salem, Ohio,* 378 F.3d 566 (6th Cir. 2004), the plaintiff, a man transitioning to a woman, alleged that he was entitled to protection because he experienced discrimination based on his failure to conform to male sex stereotypes by expressing less masculine and more feminine mannerisms and appearance. As such, he was seeking protection based on his male biological sex. Similarly, in *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005), plaintiff's claims were that he was a man transitioning to a woman, and that he was discriminated against because he did not behave like his employer thought a biological man should behave.

Here, Plaintiff does not seek protection based on Plaintiff's biological and anatomical sex. Instead, the opposite is true. Plaintiff complains that the School Board does not deem Plaintiff to be "biologically male."[6] Yet, Plaintiff's Complaint alleges that while Plaintiff now

---

[6] To the extent Plaintiff suggests that he is entitled to protection because using the boys' restroom is "nonconforming" with Plaintiff's biological sex, female, this theory would also entitle any girl who chooses to use the boys' restroom, or any boy who chooses to use the girls' restroom, to bring a viable cause of action under the Equal Protection Clause or Title IX because of their "nonconforming" behavior. Certainly, this was not the intent of *Price Waterhouse* or Title IX.

5

identifies as a boy, Plaintiff was born biologically and anatomically female, enrolled in school as a female, and remains biologically and anatomically female. The Complaint does not allege the School Board acted on an impermissible stereotype. Accordingly, it is apparent that Plaintiff is seeking protection based on Plaintiff's transgender status alone, not stereotypes about Plaintiff's biological sex.[7]

Again, context and the allegations made by Plaintiff are important. This case is not a Title VII case, does not involve adults trying to earn a living, and is not concerned with discrimination in the work place. Instead, it involves the public education of local children, kindergarten through twelfth grade.

Plaintiff is a 16 year old student (Complaint ¶¶1, 9). Plaintiff was born a female, enrolled in high school as a girl, and started ninth grade as a girl. (Complaint ¶¶1, 14, 20). Plaintiff is still biologically and anatomically a female. (Complaint ¶¶1, 14). Plaintiff informed school officials at the beginning of Plaintiff's sophomore year in August of 2014, that he is transgender. School officials expressed immediate support for Plaintiff, including changing his name in school records, referring to Plaintiff by his new name and male pronouns, permitting Plaintiff to continue with the home-bound program for the school's physical education requirements, and

---

[7] It is for this reason that Plaintiff's reliance on Title VII *Price Waterhouse* cases, including *Tudor v. Southeastern Oklahoma State University*, No. 15-324 (W.D. Okla. July 15, 2010) and *Kastl v. Maricopa County Community College Dist.*, 2004 WL 2008954 (D. Ariz. 2004), do not support his position. Despite Plaintiff's assertion, *Kastl* does not support denying the School Board's Motion to Dismiss. Even assuming a *Price Waterhouse* theory could be applied in this case, the School Board contends that *Kastl* misapplied the *Price Waterhouse* theory based on transgender status alone, and notes that the allegations in *Kastl* are not the same as in this case. Furthermore, on appeal, the Ninth Circuit affirmed summary judgment in favor of the employer confirming that it is gender behavior (stereotypes), not transgender status, which is protected from discrimination. *Kastl v. Maricopa County Community College Dist.*, 325 Fed.Appx. 492, 493 (9th Cir. 2009) (noting it is unlawful to discriminate against "a transgender (or any other) person because he or she does not **behave** in accordance with an employer's expectations for men or women" and holding Plaintiff did not proffer evidence that the decision to ban the plaintiff from the restroom was based on plaintiff's gender.) (emphasis added).

allowing Plaintiff to begin the school year using a separate bathroom at his suggestion. (Complaint ¶¶2, 27, 28, 29, 30). Indeed, Plaintiff has not alleged that school officials have in anyway harassed or discriminated against Plaintiff based on "gender nonconformity" in Plaintiff's educational opportunities, or as a result of Plaintiff's transgender identification.

Even though the law allows the School Board to do so, the School Board did not limit its restroom policy to requiring students to use only a bathroom that corresponds to their biological and anatomical sex. Instead, the School Board addressed in a uniform, nondiscriminatory manner, the possibility that students, including Plaintiff, may not be comfortable using the restroom that corresponds with their biological and anatomical sex for whatever reason. In an effort to protect the safety and privacy of all of its students, the School Board not only maintains sex segregated bathrooms, it provides three single-stall restrooms. Any student, including Plaintiff, can use these single-stall bathrooms, regardless of their biological sex, if they are uncomfortable using a communal bathroom, or for any other private or personal reason. (Complaint ¶47).

The School Board's restroom policy does not discriminate against any one class of individuals. The policy treats all students and situations the same. Under this policy, all students, including female to male transgender and male to female transgender students, are treated the same. The School Board did not develop the restroom and locker room policy because of a perception that Plaintiff does not conform to gender norms. Instead, the policy is nondiscriminatory in implementation and substantially related to a legitimate governmental interest. Accordingly, Plaintiff is not able to demonstrate an Equal Protection violation or violation of Title IX.

**C.      The Interpretation of 34 C.F.R. § 106.33 By The U.S. Department of Education's Office of Civil Rights is Not Entitled to *Auer* Deference.**

Under Title IX, federal regulations specifically permit the School Board to provide "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. §106.33. Plaintiff contends this regulation does not apply to transgender students. Yet, the Supreme Court of the United States and the Fourth Circuit have never held that this regulation does not apply to transgender students.

Seeking to overcome the regulation's obvious meaning, Plaintiff instead argues that the interpretation of 34 C.F.R. § 106.33 by the U.S. Department of Education's Office of Civil Rights ("OCR") is entitled to deference pursuant to *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905 (1997). This is simply not so. Deference to an agency's interpretation of its regulation **"is warranted only when the language of the regulation is ambiguous**." *Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655, 1657 (2000). As the Fourth Circuit recently observed, **"When the regulation in question is unambiguous . . . adopting the agency's contrary interpretation would permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation."** *Dickenson-Russell Coal Co., LLC v. Secretary of Labor*, 747 F.3d 251, 256-57 (4th Cir. 2014) (internal quotations and citations omitted). Here, 34 C.F.R. § 106.33 is not ambiguous, and deference should not be given to OCR's attempt to create a completely new regulation.[8]

Plaintiff concedes that Title IX permits sex segregated restrooms. (ECF Doc. 41, p. 14). The only qualification under the federal regulations is that the "facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." *Id.* The

---

[8] The Senate just recently rejected an amendment to the Every Child Achieves Act of 2015 that would have expressly prohibited schools or school boards from discriminating against students based on their gender identity. *See* S. Amdt. 2093 to S. Amdt. 2089.

plain meaning of the regulation is that schools are permitted to (i.e. "may") segregate boys from girls for purposes of restroom use as long as the girls' facilities are comparable to the boys' facilities.[9]  *See Johnston,* 2015 WL 1497753, at *13 (finding that the term "on the basis of sex" under Title IX plainly means "nothing more than male and female, under the traditional binary conception of sex consistent with one's birth or biological sex.").

Neither Title IX nor its implementing regulations address whether sex segregated restroom facilities can, should, or must be open for use on the basis of one's gender identity. Absent any regulation in that regard, no deference should be given to OCR's attempts to "construe" (as Plaintiff puts it) a very straightforward regulation concerning comparable facilities for sex segregated restrooms into one permitting individuals to choose a restroom on the basis of their gender identity. Far from merely interpreting a regulation, OCR improperly attempts to legislate and create a new regulation from the sidelines of litigation. Indeed, OCR's "interpretation" of 34 C.F.R. § 106.33 comes in the form of a Statement of Interest filed for purposes of the present litigation. (Statement of Interest at 9 – ECF Doc. 28, Ex. A and B). The Statement of Interest, in turn, relies on an unpublished opinion letter from OCR written in response to a letter of inquiry concerning this very case.

A close examination of the opinion letter reveals that OCR "refrain[ed] from offering opinions about specific facts, circumstances, or compliance with federal civil rights laws without first conducting an investigation" and merely referenced settlements reached in other cases as "examples of how OCR enforces Title IX." Such voluntary resolutions are in no way binding on the School Board or the Court in this case.

---

[9]  Indeed, the title of 34 C.F.R. 106.33 is "Comparable facilities."

The only other "authority" OCR cites for the proposition that Title IX regulations require schools to "treat transgender students consistent with their gender identity" is a reference to a Question and Answers document prepared by OCR. In that document, OCR merely states that schools "must treat transgender students consistent with their gender identity in all aspects of the planning, implementation, enrollment, operation, and evaluation of **single-sex classes.**" (emphasis added). The School Board, as Plaintiff acknowledges, has complied with this "guidance" inasmuch as school officials have agreed to refer to Plaintiff using his new name and by using male pronouns. (Complaint ¶28). Regardless, conspicuously absent from this OCR "authority" is any reference to restroom policies.

Despite Plaintiff's contentions, OCR has not "authoritatively construed 34 C.F.R. § 106.33" to require schools to treat transgender students consistent with their gender identity within the context of bathroom usage. Even if OCR construed 34 C.F.R. § 106.33 in that manner, its construction is not entitled to *Auer* deference since OCR's interpretation far exceeds the purpose of the regulations and is plainly an attempt to legislate in a new area.[10] Thus, OCR's position in this case should be given little to no consideration.

---

[10] Even if 34 C.F.R. § 106.33 were ambiguous such that *Auer* deference would apply, deference to OCR's interpretation should not be given here since its "interpretation is plainly erroneous or inconsistent with the regulation." *Auer,* 519 U.S. at 461. Indeed, an agency's interpretation of a regulation controls only if it "sensibly conforms to the purpose and wording of the regulations." *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151, 111 S. Ct. 1171, 1176 (1991); *Dickenson-Russell Coal Co.*, 747 F.3d at 256-57 (4th Cir. 2014). On its face, the wording of 34 C.F.R. § 106.33 makes clear that its purpose is to permit schools to create sex segregated restroom facilities as long as the facilities are comparable to one another. Despite OCR's best efforts, 34 C.F.R. § 106.33 cannot be twisted to achieve the result Plaintiff and OCR seek since transgender restroom use has nothing to do with the purpose and wording of the regulation.

In sum, the School Board is not discriminating against Plaintiff in his educational opportunities. Accordingly, Plaintiff cannot state a cause of action under Title IX as a result of his transgender status.

### III. CONCLUSION

For all of the foregoing reasons, and the reasons set forth in ECF Docs. 30 and 32, the Gloucester County School Board respectfully requests that the Court grant the Motion to Dismiss, and dismiss Plaintiff's Complaint in its entirety.

**GLOUCESTER COUNTY SCHOOL BOARD**

By Counsel

/s/
David P. Corrigan
VSB 26341
Jeremy D. Capps
VSB No. 43909
M. Scott Fisher, Jr.
VSB 78485
Attorneys for Gloucester County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com

## **C E R T I F I C A T E**

I hereby certify that on the 22nd day of July, 2015, I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send a Notice of Electronic Filing to all counsel of record.

/s/
David P. Corrigan
VSB 26341
Attorney for Gloucester County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com