**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | |
|---|---|
| G.G., by his next friend and mother, DEIRDRE GRIMM, | |
| Plaintiff, | |
| v. | Civil No. 4:15-cv-00054-RGD-TEM |
| GLOUCESTER COUNTY SCHOOL BOARD, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

Background ..............................................................................................................................1

Argument .................................................................................................................................3

    I.      Defendant is likely to succeed on the merits ................................................................3

    II.     Defendant will suffer irreparable harm absent a stay ....................................................9

    III.    A stay will not substantially injure Plaintiff ...............................................................13

    IV.    The public interest favors a stay .................................................................................14

Conclusion .............................................................................................................................15

Certificate of Service .............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins*,
 519 U.S. 452 (1997) ................................................................................................... passim

*Bd. of Educ. v. Earls*,
 536 U.S. 822 (2002) ............................................................................................................ 10

*Bethel Sch. Dist. v. Fraser*,
 478 U.S. 675 (1986) ............................................................................................................ 10

*Christensen v. Harris Cnty., Tex.*,
 529 U.S. 576 (2000) .............................................................................................................. 7

*Christopher v. Smithkline Beecham Corp.*,
 132 S. Ct. 2156 (2012) .......................................................................................................... 9

*Davis v. Lukhard*,
 106 F.R.D. 317 (E.D. Va. 1984) ........................................................................................... 3

*Decker v. Northwest Environmental Defense Center*,
 133 S. Ct. 1326 (2013) .......................................................................................................... 4

*Doe v. Luzerne Cnty.*,
 660 F.3d 169 (3rd Cir. 2011) .............................................................................................. 12

*Edelman v. Jordan*,
 414 U.S. 1301 (1973) .......................................................................................................... 11

*Frederick v. Morse*,
 551 U.S. 393 (2007) ............................................................................................................ 12

*G.G. v. Gloucester Cnty. Sch. Bd.*,
 2016 U.S. App. LEXIS 7026 (4th Cir. Apr. 19, 2016) ............................................. passim

*Gardebring v. Jenkins*,
 485 U.S. 415 (1988) .............................................................................................................. 7

*Gose v. U.S. Postal Service*,
 451 F.3d 831 (Fed. Cir. 2006) .............................................................................................. 7

*Houchins v. KQED, Inc.*,
 429 U.S. 1341 (1977) .......................................................................................................... 11

*Long v Robinson*,
 432 F.3d 977 (4th Cir. 1970) ................................................................................................ 3

*Maryland v. King*,
    133 S. Ct. 1 (2012) .................................................................................................... 10-11

*Maryland Undercoating Co. v. Payne,*
    603 F.2d 477 (4th Cir. 1979) ........................................................................................14

*Mass. Mut. Life v. United States*,
    782 F.3d 1354 (Fed. Cir. 2015) ......................................................................................6

*Meyer v. Nebraska*,
    262 U.S. 390 (1923) .....................................................................................................12

*Microstrategy, Inc. v. Business Objects, S.A.*,
    661 F.Supp.2d 548 (E.D. Va. 2009) ..................................................................... 3, 12-13

*Morrison v. Madison Dearborn Capital Partners III L.P.*,
    463 F.3d 312 (3rd Cir. 2006) .........................................................................................7

*N.J. v. T.L.O.*,
    469 U.S. 325 (1985) .....................................................................................................11

*New Motor Vehicle Bd. of Cal.* v. *Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ...................................................................................................11

*O'Brien v. Appomattox Cnty.*,
    2002 U.S. Dist. LEXIS 22554 (W.D. Va. Nov. 15, 2002) ..............................................14

*Perez v. Mortgage Bankers Ass'n*,
    135 S. Ct. 1199 (2015) ...................................................................................................4

*Pierce v. Soc'y of Sisters*,
    268 U.S. 510 (1925) .....................................................................................................12

*Schleifer v. City of Charlottesville*,
    159 F.3d 843 (4th Cir. 1998) ................................................................................. 12-13

*Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund*,
    724 F.3d 129 (1st Cir. 2013) ..........................................................................................6

*State of Texas, et al. v. United States, et al.*,
    No. 7:16-cv-00054-O (N.D. Tex. May 25, 2016) ...........................................................5

*Talk Am., Inc. v. Mich. Bell. Tel. Co.*,
    131 S. Ct. 2254 (2011) ...................................................................................................4

*Troxel v. Granville*,
    530 U.S. 57 (2000)................................................................................................................12

*United States v. McCrory, et al.*,
    No. 1:16-cv-00425-TDS-JEP (M.D.N.C. May 9, 2016).......................................................5

*United Student Aid Funds, Inc. v. Bible*,
    136 S. Ct. 1607 (2016)..........................................................................................................4

*Vernonia Sch. Dist. 47J v. Acton*,
    515 U.S. 646 (1995)............................................................................................................10

*Vietnam Veterans v. CIA*,
    811 F.3d 1068 (9th Cir. 2015) .............................................................................................6

*Whiteside v. UAW Local 3520*,
    576 F.Supp. 2d 739 (M.D.N.C. 2008) ...............................................................................14

**Statutes**
Title IX of the Education Amendments of 1972,
    20 U.S.C. § 1681 *et seq*.......................................................................................................1

**Rules**
Federal Rule of Appellate Procedure 8................................................................................................3

Federal Rule of Civil Procedure 12 .....................................................................................................1

Federal Rule of Civil Procedure 62 .....................................................................................................3

Supreme Court Rule 13........................................................................................................................2

Supreme Court Rule 22........................................................................................................................3

Supreme Court Rule 23........................................................................................................................3

**Regulations**
34 C.F.R. § 106.33.....................................................................................................................1, 7, 8, 9

**Other Authorities**
U.S. Department of Justice / U.S. Department of Education, "Dear Colleague Letter on
    Transgender Students" (May 13, 2016),
    *available at:* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201605-
    title-ix-transgender.pdf.........................................................................................................5

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR STAY PENDING APPEAL

Defendant Gloucester County School Board ("Defendant") submits this Memorandum of Law in support of its motion for a stay of the preliminary injunction entered against Defendant on June 23, 2016 [ECF No. 69], pending disposition of Defendant's appeal of that injunction [ECF No. 70] or, in the alternative, pending disposition of Defendant's forthcoming application to recall and stay the Fourth Circuit's mandate in *G.G. v. Gloucester County School Board*, No. 15-2056 (4th Cir. June 17, 2016), which will be addressed to the Chief Justice of the United States.

## BACKGROUND

This case concerns the validity under Title IX, 20 U.S.C. § 1681 *et seq.*, of Defendant's policy requiring students either to use the multiple-occupancy restrooms and locker rooms designated for their biological sex, regardless of gender identity, or to use one of the three single-user restrooms available to all students. This Court correctly dismissed Plaintiff's Title IX claim under Federal Rule of Civil Procedure 12(b)(6) because the claim is precluded by a 1980 Title IX regulation, 34 C.F.R. § 106.33, which expressly permits schools to provide restrooms and locker rooms separated on the basis of sex. ECF No. 57, at 1, 12-13. This Court also correctly declined to give deference under *Auer v. Robbins*, 519 U.S. 452 (1997), to a 2015 letter from the Department of Education's Office of Civil Rights ("OCR") that interprets 34 C.F.R. § 106.33 to require schools to permit students to use restrooms and other facilities in accordance with their gender identity. ECF No. 57, at 14-15.

However, on April 19, 2016, a split panel of the Fourth Circuit reversed and remanded, ruling that the 2015 OCR letter is entitled to deference under *Auer*. *G.G. v. Gloucester Cnty. Sch. Bd.*, 2016 U.S. App. LEXIS 7026 (4th Cir. Apr. 19, 2016). Judge Niemeyer dissented. *Id.*

at *48-76. The panel subsequently denied *en banc* rehearing on May 31, 2016. Judge Niemeyer again dissented, urging Defendant to seek review in the United States Supreme Court because "the momentous nature of the issue deserves an open road to the Supreme Court to seek the Court's controlling construction of Title IX for national application." *G.G. v. Gloucester Cnty. Sch. Bd.*, ECF No. 90, at 4 (May 31, 2016) (Niemeyer, J., dissenting from denial of rehearing). That is exactly what Defendant intends to do.

On June 9, 2016, the Fourth Circuit panel denied Defendant's motion to stay issuance of the mandate pending Defendant's certiorari petition, again over Judge Niemeyer's dissent. The Fourth Circuit's mandate issued on June 17, 2016. Then, on June 23, 2016, this Court entered a preliminary injunction ordering Defendant to allow G.G. to use the boys' restroom, finding that the Fourth Circuit's decision essentially left it no choice. ECF No. 69. Defendant has subsequently appealed the preliminary injunction to the Fourth Circuit. ECF No. 70.

Defendant intends to file a certiorari petition seeking review of the Fourth Circuit's *G.G.* decision on or before the due date of August 29, 2016. Sup. Ct. R. 13.1. Defendant also intends to file within the next ten days an application to recall and stay the *G.G.* mandate, and to stay this Court's preliminary injunction, which will be addressed to the Chief Justice of the United States under Supreme Court Rules 22 and 23. Under those Rules, Defendant must seek a stay of the injunction pending appeal before seeking that relief from the Chief Justice. *See* Sup. Ct. R. 23.3 (requiring stay application to "set out with particularity why the relief sought is not available from any other court or judge").

**ARGUMENT**

Federal Rule of Civil Procedure 62(c) permits the Court to stay a preliminary injunction pending appeal upon considering the following factors: "(1) whether the stay applicant has made

a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." *Microstrategy, Inc. v. Business Objects, S.A.*, 661 F.Supp.2d 548, 558 (E.D. Va. 2009); *see also, e.g., Davis v. Lukhard*, 106 F.R.D. 317, 318 (E.D. Va. 1984) (citing *Long v Robinson*, 432 F.3d 977, 979 (4th Cir. 1970)) (reciting same factors).[1] These factors strongly weigh in favor of granting Defendant a stay of the preliminary injunction pending appeal or, in the alternative, a stay pending disposition of Defendant's forthcoming application to the Chief Justice of the United States for a recall and stay of the *G.G.* mandate.

## I. Defendant is likely to succeed on the merits.

Because the preliminary injunction depends entirely on the *G.G.* decision, Defendant's likelihood of success in this appeal is intertwined with its likelihood of obtaining Supreme Court review of, and reversal of, *G.G.* The Supreme Court is likely to review and reverse *G.G.* for several reasons.

First, over the past five years Supreme Court Justices have increasingly called for reconsideration of *Auer* deference (also known as "*Seminole Rock* deference"), which is the sole support for *G.G. See, e.g., Talk Am., Inc. v. Mich. Bell. Tel. Co.*, 131 S. Ct. 2254, 2266 (2011) (Scalia, J., concurring) (noting that he has become "increasingly doubtful of [*Auer*'s] validity"); *Decker v. Northwest Environmental Defense Center*, 133 S. Ct. 1326, 1338-39 (2013) (Roberts, C.J., concurring, joined by Alito, J.) (observing that it "may be appropriate to reconsider that principle [of *Auer* deference] in an appropriate case" where "the issue is properly raised and

---

[1] Additionally, the Federal Rules of Appellate Procedure require a party to "ordinarily move first in the district court … for a stay of the judgment or order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A).

3

argued"); *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1217 (2015) (Thomas, J., concurring in the judgment) (urging that *Auer* deference violates the Constitution because "[i]t represents a transfer of judicial authority to the Executive branch, and it amounts to an erosion of the judicial obligation to serve as a 'check' on the political branches"); *id.* at 1210-11 (Alito, J., concurring in part and concurring in the judgment) (stating that "the opinions of Justice Scalia and Justice Thomas offer substantial reasons why the *Seminole Rock* doctrine may be incorrect" and that consequently he "await[s] a case in which the validity of *Seminole Rock* may be explored through full briefing and argument"); *United Student Aid Funds, Inc. v. Bible*, 136 S. Ct. 1607, 1608 (2016) (Thomas, J., dissenting from denial of certiorari) ("Any reader of this Court's opinions should think that the [*Auer*] doctrine is on its last gasp."). As Defendant will explain in its certiorari petition and in its forthcoming stay application to the Chief Justice, this case presents an ideal vehicle for reconsidering *Auer* deference.

 Second, the application of *Auer* deference to the specific issue in this case has taken on national importance, providing an additional justification for Supreme Court review. Less than a month after the *G.G.* decision, the United States Justice Department sued the State of North Carolina, its officials, and its university system, alleging that a North Carolina privacy statute (known as "HB2") violates Title IX for precisely the same reasons as expressed in the 2015 OCR letter which is the subject of *G.G.* *See United States v. McCrory, et al.*, No. 1:16-cv-00425-TDS-JEP (M.D.N.C. May 9, 2016). Four days later, the Department of Education and DOJ jointly issued a nationally applicable "Dear Colleague Letter" reaffirming and amplifying the Title IX interpretation contained in the 2015 OCR letter and purporting to give "significant guidance" regarding compliance with Title IX. *See* U.S. Department of Justice / U.S. Department of Education, "Dear Colleague Letter on Transgender Students" (May 13, 2016),

*available at:* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201605-title-ix-transgender.pdf.[2] The Fourth Circuit's *G.G.* opinion obviously impacts both of those recent developments, because it grants *Auer* deference to the same interpretation of Title IX as is involved in the DOJ enforcement action and in the Dear Colleague Letter. The Supreme Court is therefore likely to grant review in *G.G.* to address these issues of rapidly increasing national importance.

Third, the Fourth Circuit's application of *Auer* deference in *G.G.* implicates at least three separate circuit splits, further increasing the likelihood of Supreme Court review. For instance, the Fourth Circuit's decision conflicts with other circuits which have declined to give *Auer* deference to agency interpretations that appear in a format that lacks binding legal force, such as the opinion letter at issue in *G.G. See, e.g., Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund*, 724 F.3d 129, 139-40 & n.13 (1st Cir. 2013) (declining to give *Auer* deference to an unpublished agency letter because "[t]he letter was not the result of public notice and comment" and holding that agency "interpretations contained in formats such as opinion letters" are entitled only to *Skidmore* deference). Additionally, the Fourth Circuit's decision conflicts with other circuits which have declined to give *Auer* deference to agency interpretations developed for the first time in the pending litigation at issue. *See, e.g., Mass. Mut. Life v. United States*, 782 F.3d 1354, 1369-70 (Fed. Cir. 2015) (declining to give *Auer* deference to IRS interpretation of Treasury Regulation that was "advanced for the first time in this litigation" and therefore did not "'reflect[ ] the agency's fair and considered judgment on the matter in question'") (quoting *Auer*, 519 U.S. at 462); *Vietnam Veterans v. CIA*,

---

[2] The Dear Colleague Letter cites *G.G.* as justification for its Title IX "guidance." *Id.* at 2 n.5. Twelve States are now challenging the constitutionality of the Dear Colleague Letter in federal litigation. *See State of Texas, et al. v. United States, et al.*, No. 7:16-cv-00054-O (N.D. Tex. May 25, 2016).

811 F.3d 1068, 1078 (9th Cir. 2015) (declining to give *Auer* deference to agency interpretation where agency admittedly "developed [its] interpretation only in the context of this litigation"). Finally, the Fourth Circuit's decision conflicts with other circuits which have declined to give *Auer* deference to novel agency interpretations that conflict with the original understanding of the regulation when promulgated. *See, e.g., Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 315 (3rd Cir. 2006) (placing "[p]articular weight" in the *Auer* analysis on "the agency's interpretations made at the time the regulations are promulgated" (citing *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)); *Gose v. U.S. Postal Service*, 451 F.3d 831, 838 (Fed. Cir. 2006) (explaining that a factor counting against *Auer* deference is "evidence that the proffered interpretation runs contrary to the intent of the agency at the time of enactment of the regulation").

Fourth, even if the Supreme Court proves unwilling at present to abandon *Auer* wholesale, a majority of the Court is likely to overturn the Fourth Circuit's application of *Auer* here for numerous reasons, including those highlighted by this Court in its earlier opinion. For instance, the basic premise for applying *Auer* is lacking because the Title IX regulation at issue is unambiguous. *See* ECF No. 57, at 14 ("To begin with, Section 106.33 is not ambiguous."); *see also, e.g., Christensen v. Harris Cnty., Tex.*, 529 U.S. 576, 588 (2000) (explaining that "*Auer* deference is warranted only when the language of the regulation is ambiguous"). The regulation plainly allows public restrooms to be separated by "sex," which even the Fourth Circuit admitted was "understood at the time the regulation was adopted to connote male and female." *G.G.*, 2016 U.S. App. LEXIS 7026, at *25; *but cf. id.* at *25 (while conceding regulation "may refer unambiguously to males and females," nonetheless concluding regulation is "ambiguous as applied to transgender individuals").

6

Furthermore, even assuming the regulation is ambiguous, the kind of non-binding opinion letter at issue—an opinion moreover developed in the context of *this* litigation—should not receive *Auer* deference. *See* ECF No. 57, at 14 (concluding agency interpretation "cannot supplant Section 106.33" because opinion letters "'do not warrant *Chevron*-style deference' with regard to statutes") (quoting *Christensen*, 529 U.S. at 587); ECF No. 57, at 15 (concluding agency "will not be permitted to disinterpret its own regulations for purposes of litigation"); *but cf. G.G.*, 2016 U.S. App. LEXIS at *26-27 (concluding unpublished opinion letter is not merely a "convenient litigating position" and therefore warrants *Auer* deference).

Moreover, *Auer* deference should not apply to what even the Fourth Circuit conceded was a "novel" agency interpretation unsupported by the original understanding of the regulation. *G.G.*, 2016 U.S. App. LEXIS at *27 (conceding "Department's interpretation is novel because there was no interpretation as to how § 106.33 applied to transgender individuals before January 2015"). As this Court reasoned in its previous opinion, "[t]o defer to the Department of Education's newfound interpretation would be nothing less than to allow the Department of Education to 'create *de facto* a new regulation' through the use of a mere letter and guidance document." ECF No. 57, at 15 (quoting *Christensen*, 529 U.S. at 588); *but cf. G.G.*, 2016 U.S. App. LEXIS at *26-27 (according *Auer* deference to Department's interpretation—although "novel" and "perhaps not intuitive"—because the issue in this case "did not arise until recently").

Finally, the agency interpretation reflected in the 2015 OCR letter is both plainly erroneous and inconsistent with the regulation itself, and so is not entitled to *Auer* deference for that reason alone. *See* ECF No. 57, at 14-15 (concluding that "the Department of Education's interpretation of Section 106.33 is plainly erroneous and inconsistent with the regulation"); *G.G.*, 2016 U.S. App. LEXIS at *58-74, *65 (Niemeyer, J., dissenting) (demonstrating that agency's

7

interpretation is inconsistent with text and context of regulation and would cause regulation to "function nonsensically"); *see also, e.g., Christopher v. Smithkline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (*Auer* deference is "undoubtedly inappropriate" when agency's interpretation is "'plainly erroneous or inconsistent with the regulation'") (quoting *Auer*, 519 U.S. at 461); *but cf. G.G.*, 2016 U.S. App. LEXIS at *25-26 (concluding agency's interpretation of regulation is "not plainly erroneous or inconsistent with the text of the regulation" because it is "permitted by the varying physical, psychological, and social aspects … included in the term 'sex'").

## II.     Defendant will suffer irreparable harm absent a stay.

Although the Fourth Circuit's *G.G.* opinion might make this Court reluctant to rule in Defendant's favor on the likelihood of success element of the stay inquiry, the other elements of that inquiry—irreparable injury and the other stay factors—are another matter.  Absent a stay pending appeal, Defendant, including parents and children in the school district, will suffer irreparable harm for several reasons.

First, enjoining Defendant from enforcing its restroom policy for the upcoming school year essentially strips the school district of its most basic authority to enact policies that accommodate the need for privacy and safety of *all* students. *See, e.g., Bd. of Educ. v. Earls*, 536 U.S. 822, 829 (2002) (noting public schools' "'custodial and tutelary responsibility for children'") (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995)); *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 684 (1986) (recognizing "the obvious concern on the part of parents, and school authorities acting *in loco parentis*, to protect children").  This is a particularly devastating blow to Defendant's authority, given that Defendant has made every effort to accommodate G.G.'s requests from the moment that G.G. approached school officials, including providing access to a separate restroom in the nurse's office and subsequently installing three

single-occupancy unisex restrooms for the use of *any* student, including G.G., who may not feel comfortable using multiple-occupancy restrooms corresponding to their biological sex. ECF No. 57, at 5-6.

Notwithstanding all this, Defendant now faces an order—based entirely on the *G.G.* decision—to abandon its policy before the upcoming school year begins in September, giving Defendant scant time to enact any further changes to school district facilities or develop new policies to safeguard the privacy and safety rights of its students, kindergarten through twelfth grade. Putting Defendant in this untenable position *alone* constitutes irreparable harm justifying a stay of the preliminary injunction pending appeal or, at a minimum, pending disposition of Defendant's forthcoming application to recall and stay the Fourth Circuit's *G.G.* mandate. *Cf., e.g.*, *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (observing that "'any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury'") (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *Houchins v. KQED, Inc.*, 429 U.S. 1341, 1346 (1977) (Rehnquist, J., in chambers) (granting stay pending certiorari in First Amendment access case because "preservation of th[e] status quo … is preferable to forcing the applicant to develop new procedures which might be required only for a short period of time") (citing *Edelman v. Jordan*, 414 U.S. 1301, 1303 (1973) (Rehnquist, J., in chambers)).

Second, compliance with the preliminary injunction will likely cause severe disruption to the school as the upcoming school year approaches in September. When the school previously attempted to allow G.G. to use the boys' restroom, outcry from parents and students was immediate and forceful, leading to two rounds of public hearings and ultimately to the issuance of the policy at issue. *See* ECF No. 57, at 4-5; *see also* Troy Anderson Decl. at ¶ 4 (stating that

9

immediately after G.G. was allowed to use boys' restroom, "the School Board began receiving numerous complaints from parents and students"). There is every reason to expect the same reaction if Defendant is now forced to abandon its policy. This also constitutes irreparable harm. *See, e.g., N.J. v. T.L.O.*, 469 U.S. 325, 341 (1985) (noting "the substantial need of teachers and administrators for freedom to maintain order in the schools").

Third, compliance with the preliminary injunction will also put parents' constitutional rights in jeopardy. Depriving parents of any say over whether their children should be exposed to members of the opposite sex in intimate settings deprives parents of their right to direct the education and upbringing of their children. *See generally Troxel v. Granville*, 530 U.S. 57, 66 (2000) (observing that, "[i]n light of … extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children") (and collecting cases); *see also, e.g., Meyer v. Nebraska*, 262 U.S. 390, 401 (1923) (recognizing that the liberty interest protected by due process includes the right of parents "to control the education of their own"). Indeed, parents may decide to remove their children from the school system after reaching the understandable conclusion that the school has been stripped by the *G.G.* decision of its authority to protect their children's constitutionally guaranteed rights of bodily privacy. *See, e.g.*, *Doe v. Luzerne Cnty.*, 660 F.3d 169, 176, 177 (3rd Cir. 2011) (concluding that a person has a constitutionally protected privacy interest in "his or her partially clothed body" and "particularly while in the presence of members of the opposite sex") (and collecting authorities). The resulting dilemma—to the school district and to parents alike—constitutes irreparable harm. *See, e.g., Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35 (1925) (noting the constitutionally protected "liberty of parents and guardians to direct the upbringing and education of children

10

under their control"); *Frederick v. Morse*, 551 U.S. 393, 409 (2007) ("School principals have a difficult job, and a vitally important one."); *see also, e.g., Schleifer v. City of Charlottesville*, 159 F.3d 843, 848 (4th Cir. 1998) (observing that government has a "significant interest" in "strengthening parental responsibility" and that "[s]tate authority complements parental supervision"). All of this threatened harm would be prevented in the interim if the preliminary injunction were stayed pending appeal or, at a minimum, pending disposition of Defendant's forthcoming application to the Chief Justice to recall and stay the Fourth Circuit's *G.G.* mandate.

### III. A stay will not substantially injure Plaintiff.

By contrast to Defendant, G.G. will not be substantially injured by staying the preliminary injunction. *See, e.g., Microstrategy*, 661 F.Supp.2d at 558 (considering "whether issuance of a stay will substantially injure other parties interested in the proceeding").

When the new school year begins in September, G.G., like all students at Gloucester High School, will have access to three single-user restrooms, or, if G.G. prefers, to the restroom in the nurse's office. The latter option is significant because G.G. had previously *agreed* to use the separate restroom in the nurse's office after having explained his gender identity issues to school officials. *See* ECF No. 57, at 3-4 (noting that, "[b]eing unsure how students would react to his transition, G.G. initially agreed to use a separate bathroom in the nurse's office"). Only later did G.G. decide that this arrangement was "stigmatizing" and refuse to use the facility. *Id.* at 4. It is not plausible that G.G. would suffer substantial harm—justifying maintenance of a preliminary injunction—based on a subjective change in preference about whether to use the nurse's restroom.

Moreover, now G.G. need not even suffer the subjective discomfort of the nurse's restroom, because the school has now made generic single-user facilities available to *all*

11

students. *Id.* at 5-6. Nor can G.G. credibly claim that having to use those facilities rises to the level of constitutional harm. After all, the Department of Education expressly *encourages* such accommodations for gender dysphoric students. *See G.G.*, 2016 U.S. App. LEXIS at *51-52 (Niemeyer, J., dissenting) (observing that 2015 OCR letter states that "to accommodate transgender students, schools are encouraged 'to offer the use of gender-neutral, individual-user facilities to any student who does not want to use shared sex-segregated facilities [as permitted by Title IX's regulations]"); ECF No. 57, at 5-6 (noting that Gloucester High School "has installed three unisex single-stall restrooms").

### IV.     The public interest favors a stay.

Finally, "[t]he public interest is best served by preserving the *status quo ante litem* until the merits are considered." *O'Brien v. Appomattox Cnty.*, 2002 U.S. Dist. LEXIS 22554, at *4-5 (W.D. Va. Nov. 15, 2002) (citing *Maryland Undercoating Co. v. Payne,* 603 F.2d 477 (4th Cir. 1979)); *see also, e.g., Whiteside v. UAW Local 3520*, 576 F.Supp. 2d 739, 743 (M.D.N.C. 2008) (explaining that "the court should consider wherein lies the public interest, sometimes described as preserving the [s]tatus quo ante litem until the merits of a serious controversy can be fully considered by a trial court") (citing *Maryland Undercoating*, *supra*).

In this case, preserving the *status quo ante* means preserving the school district's authority to establish a restroom policy that balances the competing interests presented here, while protecting the legitimate and longstanding expectations of bodily privacy shared by the vast majority of students and their parents. This is precisely what Defendant did, by crafting the sensible and commonsense policy that G.G. subsequently challenged. And that previously established policy did not fail to account for students who might not wish to use multiple-

12

occupancy restrooms designated for one's biological sex. To the contrary, Defendant's policy included installing single-user unisex restrooms for use by any student. ECF No. 57, at 5-6.

The public interest also favors preserving Defendant's ability to continue that policy as the upcoming school year approaches, in order to minimize disruption to the school environment and to the expectations that parents and students have already expressed at public meetings that took place well before this litigation ever began. *See* ECF No. 57, at 4-5 (discussing public meetings held in November and December 2014 to determine restroom and locker room policy). At a minimum, the public interest favors preserving Defendant's authority while it applies to the Chief Justice to recall and stay the Fourth Circuit's *G.G.* mandate, which will occur well before the school year begins next September.

## CONCLUSION

For the foregoing reasons, Defendant respectfully asks the Court to stay the preliminary injunction entered against Defendant pending disposition of its appeal or, in the alternative, pending disposition of its forthcoming application to the Chief Justice to recall and stay the Fourth Circuit's *G.G.* mandate.

Respectfully submitted,

/s/
David P. Corrigan
VSB 26341
Jeremy D. Capps
VSB 43909
M. Scott Fisher, Jr.
VSB 78485
HARMAN, CLAYTOR, CORRIGAN & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 – Phone
804-747-6085 – Fax
dcorrigan@hccw.com
*Attorneys for Gloucester County School Board*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June, 2016, I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send a Notice of Electronic Filing to all counsel of record.

                                        /s/
                                        David P. Corrigan
                                        VSB 26341
                                        HARMAN, CLAYTOR, CORRIGAN & WELLMAN
                                        P.O. Box 70280
                                        Richmond, Virginia 23255
                                        804-747-5200 – Phone
                                        804-747-6085 – Fax
                                        dcorrigan@hccw.com
                                        *Attorney for Gloucester County School Board*