IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| GAVIN GRIMM,<br><br>            Plaintiff,<br><br>v.<br><br>GLOUCESTER COUNTY SCHOOL BOARD,<br><br>            Defendant. | Civil Case No. 4:15-cv-54 |

## SECOND AMENDED COMPLAINT

1. Gavin Grimm ("Gavin") is a 19-year-old young man who is transgender. When Gavin was 15, he came out to his family as a boy and, with the help of his medical providers, transitioned to living in accordance with his male identity as part of medically necessary treatment for gender dysphoria.

2. By the time Gavin began his sophomore year at Gloucester High School, he had legally changed his name to Gavin and begun using male pronouns. Gavin wore his clothing and hairstyles in a manner typical of other boys and used the men's restrooms in public venues, including restaurants, libraries, and shopping centers, without encountering any problems. Gavin's medical providers also gave him a "treatment documentation letter," which confirmed that Gavin was receiving treatment for gender dysphoria and stated that he should be treated as a boy in all respects, including when using the restroom.

3. With the support of the school principal and superintendent, Gavin used the boys' restrooms at Gloucester High School for approximately seven weeks without incident.

4. But in response to complaints from some adults in the community, the Gloucester County School Board (the "Board") overruled its own administrators and enacted a new policy prohibiting boys and girls "with gender identity issues" from using the same restrooms as other boys and girls. The new policy directed students who are transgender to an "alternative appropriate private facility."

5. The Board continued to exclude Gavin from using the same restrooms as other boys, even after he began receiving hormone therapy, obtained a Virginia state I.D. card listing his sex as male, underwent chest reconstruction surgery, obtained a court order legally changing his sex to male under Virginia law, and received a new Virginia birth certificate reflecting that his sex is male.

6. Throughout the rest of high school, Gavin was forced to use separate restrooms that no other student was required to use. That degrading and stigmatizing policy singled Gavin out as unfit to use the same restrooms that are available to every other student.

7. The Board's policy conflicts with the views of every major medical and mental health organization and school counselors', teachers', and administrators' organizations across the country.

8. In every part of the country, including Virginia, boys and girls who are transgender are already using sex-separated restroom and locker room facilities at school, participating in interscholastic athletic teams in both high school and college, and joining girl-scout and boy-scout troops.

9. Ignoring these realities, the Gloucester County School Board has adhered to its categorical ban, which prohibits the Board's own school administrators from ever allowing any

student who is transgender to use the common facilities that are available to every other boy and girl.

10. Gavin is recognized by his family, his medical providers, the Virginia Department of Health, and the world at large as a boy. Allowing him to use the same restrooms as other boys is the only way to provide him access to sex-separated restrooms without discrimination.

11. By segregating Gavin from his peers, excluding him from using the same restrooms that every other boy is allowed to use, and relegating him to separate restroom facilities, the Board discriminated against Gavin, in violation of the Equal Protection Clause of the Fourteenth Amendment and Title IX of the Education Amendments of 1972.

12. The Board also continues to discriminate against Gavin by refusing to update his official school transcript to match the male sex on his birth certificate, despite Gavin's repeated requests. As a result, every time Gavin is required to provide a high school transcript to a college or potential employer, he must provide a transcript that—unlike all his other identification documents—declares that his sex is "female." The Board thus continues to stigmatize and humiliate Gavin by treating Gavin differently from every other graduating student with a male birth certificate, in violation of Title IX and the Fourteenth Amendment.

13. Gavin seeks redress from this Court.

## JURISDICTION AND VENUE

14. This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, the Constitution of the United States, and 42 U.S.C. § 1983. This Court has jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. § 1331. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

15. Venue lies with this Court pursuant to 28 U.S.C. §§ 1391(b)(1)-(2), because the defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

16. Plaintiff Gavin Grimm ("Gavin") is nineteen years old. From September 2013 to June 2017, he attended Gloucester High School, a public high school in Gloucester County, Virginia.

17. The Gloucester County School Board (the "School Board" or "Board") is an elected body responsible for the operation of the Gloucester County Public Schools ("GCPS"), including the promulgation of policies. At all times relevant, the School Board has acted and continues to act under color of state law.

## FACTUAL ALLEGATIONS

<u>Transgender youth and gender dysphoria</u>

18. Gavin was born in Gloucester County and has lived in Gloucester County his entire life. Gavin is a typical teenager who is articulate and intelligent, reads broadly, loves his dog and cats, and enjoys hanging out with his friends.

19. When Gavin was born, the hospital staff identified him as female, but from a young age, Gavin knew that he was a boy. Although the sex assigned to Gavin at birth was female, Gavin has a male gender identity.

20. Everyone has a gender identity. It is an established medical concept, referring to a person's deeply felt, inherent sense of one's gender. Most people have a gender identity that matches the sex they are identified as at birth. But people who are transgender have a gender identity that differs from the sex they are assigned at birth.

21. Like many students who are transgender, Gavin succeeded at school until the onset of puberty, when he began to suffer debilitating levels of distress from gender dysphoria, a condition in which individuals who are transgender experience persistent and clinically significant distress caused by the incongruence between their gender identity and the sex assigned to them at birth. Although gender dysphoria is a serious medical condition recognized by the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders (5th ed. 2013), being transgender is not a mental disorder and "implies no impairment in judgment, stability, reliability, or general social or vocational capabilities." Am. Psychiatric Ass'n, *Position Statement on Discrimination Against Transgender & Gender Variant Individuals* (2012).

22. There is a medical and scientific consensus that the treatment for gender dysphoria is for boys who are transgender to live as boys and for girls who are transgender to live as girls. When medically appropriate, treatment also includes hormone therapy and surgery. This medical consensus is embraced by the American Medical Association, the American Academy of Pediatrics, the American Psychiatric Association, the American Psychological Association, the National Endocrine Society, and every other major medical and mental health organization in the United States.

23. The ability of individuals who are transgender to live consistently with their identity is critical to their health and well-being. That includes using names and pronouns consistent with their identity, grooming and dressing in a manner typically associated with that gender, and using restrooms and other sex-separated facilities that match their gender identity. Preventing students who are transgender from living in a manner that is consistent with their gender identity puts them at increased risk of debilitating depression and suicide. By contrast,

when gender dysphoria is properly treated, individuals who are transgender experience profound relief and can go on to lead healthy, happy, and successful lives.

24. Boys and girls who are transgender are people who consistently, persistently, and insistently do not identify with the sex assigned to them at birth, and who can experience the debilitating distress of gender dysphoria when they are not able to live as the boys and girls that they are. The gender identity of these adolescents is stable and fixed.

25. Boys and girls who are transgender are attending schools across the country. While students who are transgender have long been part of school communities, it is only in the last couple decades that there has been more widespread access to the medical and psychological support that they need. Beginning in the early 2000s, as a result of advances in medical and psychological treatment, students who are transgender finally began to receive the treatment necessary to alleviate the devastating pain of gender dysphoria and live their lives in accordance with who they really are.

26. Many students who are transgender attend school without classmates and peers knowing they are transgender. For example, many students have already transitioned before beginning school and many others transfer to a new school after transitioning.

27. With hormone therapy, students who are transgender develop physical sex characteristics typical of their gender identity—not the sex they were identified as at birth. Hormone therapy affects bone and muscle structure, alters the appearance of a person's genitals, and produces secondary sex characteristics such as facial and body hair in boys and breasts in girls.

28. In addition, children who are transgender who receive puberty blockers never go through puberty as their birth-designated sex. They will be exposed to the same levels of

testosterone or estrogen as other boys and girls during puberty, and those hormones will affect every major body system.

29. Under widely accepted standards of care developed by the World Professional Association of Transgender Health ("WPATH"), genital surgery is not recommended for minors, but boys who are transgender may undergo medically necessary chest-reconstruction surgery after they turn 16.

30. According to every major medical and mental health organization, including the American Medical Association, the American Academy of Pediatrics, the American Psychiatric Association, and the American Psychological Association, excluding boys and girls who are transgender from using the same restrooms as other boys and girls is harmful to their health and wellbeing. When excluded from the common restrooms, students who are transgender often avoid using the restroom entirely, either because the separate restrooms are too stigmatizing or too difficult to access. They suffer infections and other negative health consequences as a result of avoiding restroom use. The exclusion also increases their risk of depression and self-harm.

31. Educators and school administrators across the country also recognize that excluding boys and girls who are transgender from using the common restrooms interferes with their ability to learn and thrive at school. It impairs their ability to develop a healthy sense of self, peer relationships, and the cognitive skills necessary to succeed in adult life. In light of these harms, the National Association of School Psychologists, National Association of Secondary School Principals, National Association of Elementary School Principals, and the American School Counselor Association have all called upon schools to allow boys and girls who are transgender to use the same restrooms as other boys and girls.

32. According to the American Academy of Pediatrics and other major medical and mental health organizations, there is no evidence that allowing boys and girls who are transgender to use the same restrooms as other boys and girls causes any harm to the physical or mental health of students who are not transgender.

33. Schools can provide accommodations for all students—whether transgender or not—to enhance their own privacy without discriminating against students who are transgender by excluding them from common spaces.

34. In schools across the country, including Virginia, boys and girls who are transgender already use the same restrooms and locker rooms as other boys and girls.

35. In high school athletic associations across the country, including Virginia, boys and girls who are transgender already play on the same sports teams as other boys and girls.

36. Institutions ranging from the Girl Scouts and Boy Scouts to the Seven Sisters colleges to the National Collegiate Athletic Association already recognize boys who are transgender as boys and recognize girls who are transgender as girls.

37. Treating boys who are transgender as boys, and treating girls who are transgender as girls, is the only way they can equally participate in school, work, or society at large.

Gavin's experience at Gloucester High School

38. In 2014, near the end of his first year of high school, the distress caused by Gavin's untreated gender dysphoria became so great that he was unable to attend class. At that point, Gavin came out to his parents as a boy and, at his request, began seeing a psychologist with experience counseling youth who are transgender.

39. With the help of his medical providers, Gavin transitioned to living in accordance with his male identity as part of medically necessary treatment for gender dysphoria.

40. Gavin legally changed his name to Gavin and began using male pronouns. Gavin wore his clothing and hairstyles in a manner typical of other boys and began using the men's restrooms in public venues, including restaurants, libraries, and shopping centers, without encountering any problems. His medical providers also referred Gavin to an endocrinologist to begin hormone therapy.

41. Gavin and his mother met with the school guidance counselor in August 2014, before the beginning of his sophomore year, to explain that Gavin is a boy who is transgender and would be attending school as a boy.

42. Gavin and his mother gave the guidance counselor a "treatment documentation letter" from his psychologist, which confirmed that Gavin was receiving treatment for gender dysphoria and stated that he should be treated as a boy in all respects, including when using the restroom.

43. At the time Gavin and his mother met with the guidance counselor, the School Board did not have policies addressing which restrooms students who are transgender should use.

44. Gavin initially agreed to use the restroom in the nurse's office, but he soon felt stigmatized and isolated using a different restroom from everyone else. The restroom in the nurse's office was also located far away from many of his school classes, and Gavin was often unable to use the restroom without being late for class.

45. After a few weeks of using the restroom in the nurse's office, Gavin sought permission to use the boys' restrooms.

46. On October 20, 2014, with the school principal's support, Gavin began using the boys' restrooms, and did so for seven weeks without incident.

47. Gavin also requested permission to complete his physical-education requirements through a home-bound program. As a result, he never needed to use the locker rooms at school.

48. The principal of Gloucester High School and the superintendent of Gloucester County Public Schools informed the Board that they had authorized Gavin to use the same restrooms as other boys, but otherwise kept the matter confidential.

49. Although the principal and superintendent treated the matter as confidential, some adults in the community learned that a boy who is transgender was using the boys' restrooms at Gloucester High School. They contacted the Board to demand that the transgender student (who was not publicly identified as Gavin until later) be barred from the boys' restrooms.

50. On information and belief, at least some of the complaints came from a Gloucester High School employee who runs the school Bible club and is a pastor at a local church. That employee told the Washington Post that he spoke out against Gavin's use of the boys' restroom because "God puts us on this Earth as who we are."

51. The Board considered the matter at a private meeting and took no action for several weeks.

52. Unsatisfied with the results of the private meeting, one member of the Board alerted the broader community by proposing the following policy for public debate at the Board's meeting on November 11, 2014:

> Whereas the GCPS recognizes that some students question their gender identities, and
>
> Whereas the GCPS encourages such students to seek support, advice, and guidance from parents, professionals and other trusted adults, and
>
> Whereas the GCPS seeks to provide a safe learning environment for all students and to protect the privacy of all students, therefore
>
> It shall be the practice of the GCPS to provide male and female restroom and locker room facilities in its schools, and the use of said facilities shall be limited to the corresponding

biological genders, and students with gender identity issues shall be provided an alternative appropriate private facility.

53. The policy categorically prohibits administrators from allowing any boy who is transgender to use any boys' restroom (or allowing any girl who is transgender to use any girls' restroom) in any school within the Gloucester County School District, regardless of the student's individual circumstances.

54. The policy does not define "biological gender," and the term has no common or accepted meaning. There are many biological components of sex, including chromosomal, anatomical, hormonal, and reproductive elements, some of which could be ambiguous or in conflict within an individual, either because that individual has intersex traits or because that individual has undergone medical care for gender dysphoria.

55. After learning about the meeting through social media, Gavin and his parents decided to speak against the proposed policy. In order to speak against the policy, Gavin was forced to reveal himself to the entire community and the local media as the boy whose restroom use was at issue.

56. Gavin told the Board:

> I use the public restroom, the men's public restroom, in every public space in Gloucester County and others. I have never once had any sort of confrontation of any kind.
> …
> All I want to do is be a normal child and use the restroom in peace, and I have had no problems from students to do that—only from adults.
> …
> I did not ask to be this way, and it's one of the most difficult things anyone can face.
> …
> I am just a human. I am just a boy.

A recording of his remarks can be viewed online at https://goo.gl/CYh4gd

57. By a vote of 4-3, the School Board voted to defer a vote on the policy until its meeting on December 9, 2014.

58. Before its next meeting, the Board issued a press release announcing plans for "adding or expanding partitions between urinals in male restrooms, and adding privacy strips to the doors of stalls in all restrooms." In addition, the press release announced "plans to designate single stall, unisex restrooms … to give all students the option for even greater privacy."

59. Speakers at the December 9, 2014 Board meeting nonetheless demanded that Gavin be excluded from the boys' restrooms immediately, and many threatened to vote Board members out of office if they refused to pass the new policy.

60. With Gavin in attendance, several speakers pointedly referred to him as a "young lady." One speaker called Gavin a "freak" and compared him to a person who thinks he is a "dog" and wants to urinate on fire hydrants. "Put him in a separate bathroom if that's what it's going to take," said another.

61. The Board meeting made Gavin feel that he had been turned into a public spectacle in front of the entire community.

62. The Board passed the policy on December 9, 2014, by a 6-1 vote.

63. The following day, the principal told Gavin he could no longer use the same restrooms as other boys.

64. The Board's new policy did not affect the restroom usage of any other student at Gloucester High School. Every other student was allowed to continue using the same restrooms they had been using before the new policy was adopted. The only person who had to use a different restroom was Gavin.

65. The Board subsequently installed three single-user restrooms. One of the restrooms had previously been designated as a restroom for teachers and staff. The other two restrooms were converted from old utility closets.

66. None of the single-user restrooms was located near Gavin's classes.

67. Although any student was allowed to use the single-user restrooms, no one else did so. Everyone knew they were created for Gavin as part of the policy prohibiting him from using the same restrooms as other boys.

68. Being relegated to the separate restrooms was demeaning and shameful for Gavin. It signaled to Gavin and the entire school community that he is different, and it sent a public message to all his peers that he is not fit to be treated like everyone else.

69. Gavin did everything he could to avoid using the restroom at school. As a result, he developed painful urinary tract infections and was often distracted and uncomfortable in class.

70. When Gavin absolutely had to use the restroom, he used the nurse's restroom, but he still felt ashamed doing so. Every time he had to walk to the other side of school to use the nurse's restroom, Gavin felt like he was taking a "walk of shame." It was a constant reminder to Gavin—and to anyone who saw him—that Gavin is transgender and had been barred from using the same restrooms as other boys.

71. Being excluded from the common boys' restroom and forced to use separate restroom facilities also physically isolated Gavin from the rest of his peers by requiring him to travel to a separate part of the school if he had to use the restroom between classes.

72. When Gavin attended school football games, there was no restroom for him to use at all. The Gloucester High School building was locked after school, and there are no single-user

restroom facilities in the stadium. When he had to use the restroom, Gavin's only option was to call his mother to pick him up and take him home early.

Enforcement of the policy

73. The Board continued to exclude Gavin from the same restrooms as other boys throughout the remainder of his sophomore, junior, and senior years of high school.

74. In December 2014, Gavin began hormone therapy, which has altered his bone and muscle structure, deepened his voice, and caused him to grow facial hair.

75. In June 2015, the Virginia Department of Motor Vehicles issued Gavin a state I.D. card identifying him as male.

76. In June 2016, Gavin underwent chest-reconstruction surgery, in accordance with the medical standards of care for treating gender dysphoria.

77. On September 9, 2016, the Gloucester County Circuit Court issued an order changing Gavin's sex under Virginia state law and directing the Virginia Department of Health to issue Gavin a birth certificate listing his sex as male.

78. On October 27, 2016, the Virginia Department of Health issued Gavin a birth listing his sex as male.

79. Despite all of this, the Board disregarded Gavin's medical treatment, his Virginia I.D. card, his new Virginia birth certificate, and the court order changing his sex under Virginia state law. The Board maintained that Gavin's "biological gender" remains female and continued to prohibit its administrators from allowing Gavin to use the boys' restrooms.

Refusal to update gender designation on Gavin's official transcript

80. During his senior year, Gavin received an updated Virginia birth certificate reflecting that his sex is male and provided that birth certificate to school administrators. But

despite Gavin's repeated requests, the Board refused to update his official school transcript to match the male sex on his birth certificate. In doing so, the Board once again singled out Gavin for different treatment from every other student at Gloucester High School with a male birth certificate.

81. Every time Gavin is required to provide a high school transcript to a college or employer, he must provide a transcript that—unlike all his other identification documents—declares that his sex is "female."

82. Gavin graduated high school on June 10, 2017. But by refusing to update Gavin's official school transcript, the Board continues to stigmatize and humiliate Gavin to this day.

## CLAIMS FOR RELIEF

### COUNT I
### Fourteenth Amendment to the United States Constitution

83. The Board is the final policymaker for Gloucester County Public Schools, acting under color of state law.

84. By excluding Gavin from using the same restrooms that every other boy is allowed to use and relegating him to separate restroom facilities, the Board treated Gavin differently from similarly situated students in violation of the Equal Protection Clause of the Fourteenth Amendment.

85. By excluding Gavin from using the same restrooms that every other boy is allowed to use and relegating him to separate restroom facilities, the Board discriminated against Gavin on the basis of gender, which is subject to heightened scrutiny under the Equal Protection Clause.

86. By excluding Gavin from using the same restrooms that every other boy is allowed to use and relegating him to separate restroom facilities, the Board discriminated against

Gavin on the basis of transgender status, which is also subject to heightened scrutiny under the Equal Protection Clause.

    a. People who are transgender as a class have historically been subject to discrimination.

    b. People who are transgender as a class have a defining characteristic that frequently bears no relation to an ability to perform or contribute to society.

    c. People who are transgender as a class exhibit immutable or distinguishing characteristics that define them as a discrete group.

    d. People who are transgender as a class are a minority with relatively little political power.

87. By excluding Gavin from using the same restrooms that every other boy is allowed to use and relegating him to separate restroom facilities, the Board discriminated against Gavin based on invidious stereotypes, moral disapproval, and unfounded fears about people who are different.

88. By refusing to update Gavin's official school transcript to match the male designation on his updated birth certificate, the Board has discriminated—and continues to discriminate—against Gavin.

89. The Board's discrimination against Gavin is not narrowly tailored to advance a compelling government interest.

90. The Board's discrimination against Gavin is not substantially related to any important government interest.

91. The Board's discrimination against Gavin is not rationally related to any legitimate government interest.

92. The Board is liable for its violation of Gavin's Fourteenth Amendment rights under 42 U.S.C. § 1983.

## COUNT II
### Title IX of the Education Amendments of 1972
### 20 U.S.C. § 1681 *et seq*.

93. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

94. Gloucester County Public Schools and Gloucester High School are education programs receiving Federal financial assistance.

95. By prohibiting Gavin from using the same restrooms that every other boy is allowed to use and relegating him to separate restroom facilities, the Board violated his rights under Title IX.

96. By refusing to update Gavin's official school transcript to match the male designation on his updated birth certificate, the Board violated—and continues to violate—his rights under Title IX.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief:

A. A declaration that the Board's policy violated Gavin's rights under the Fourteenth Amendment to the United States Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, on the day the policy was first issued and throughout the remainder of his time as a student at Gloucester High School;

B. A declaration that the Board's refusal to update Gavin's official school transcript to match the "male" designation on his updated birth certificate violated—and continues to violate—Gavin's rights under the Fourteenth Amendment to the United States Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

C. Nominal damages in an amount determined by the Court;

D. A permanent injunction requiring the Board to update Gavin's official school records to match the male designation on his updated birth certificate;

E. Plaintiff's reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

F. Such other relief as the Court deems just and proper.

Dated: February 15, 2019

                  Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.

/s/
Nicole Tortoriello (VSB No. 91129)
Eden B. Heilman*
Jennifer Safstrom**
ACLU of Virginia
701E. Franklin Street, Suite 1412
Richmond, VA 23219
(804) 644-8022 (Phone)
(804) 649-2733 (Fax)
ntortoriello@acluva.org
eheilman@acluva.org
jsafstrom@acluva.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Joshua A. Block*
Leslie Cooper*
Shayna Medley-Warsoff*
125 Broad Street
18th Floor
New York, NY 10004
(212) 549-2627 (Phone)
(212) 549-2650 (Fax)
jblock@aclu.org
lcooper@aclu.org
smedley@aclu.org

* Admitted pro hac vice
**Admission pending, notice of appearance forthcoming

*Counsel for Plaintiff Gavin Grimm*

18

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of February 2019, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the Eastern District of Virginia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nicole Tortoriello
Nicole Tortoriello (VSB No. 91129)
ACLU Foundation of Virginia
701 E. Franklin Street, Suite 1412
Richmond, VA 23219
(804) 644-8022 (Phone)
(804) 649-2733 (Fax)
ntortoriello@acluva.org