IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

GAVIN GRIMM,

    Plaintiff,

v.                                                                                               Civil Action No. 4:15-cv-54

GLOUCESTER COUNTY SCHOOL BOARD,

    Defendant.

**BRIEF OF FAIRFAX COUNTY SCHOOL BOARD AND OTHER
VIRGINIA SCHOOL BOARDS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF**

Stuart A. Raphael
Sona Rewari
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 419-2021
sraphael@HuntonAK.com
srewari@HuntonAK.com

Trevor S. Cox
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-7221
tcox@HuntonAK.com

*Counsel for Fairfax County School Board, Alexandria City School Board,
Arlington School Board, and Falls Church City School Board*

March 26, 2019

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................................ i

INTEREST OF *AMICI* ......................................................................................................... 1

INTRODUCTION ................................................................................................................. 4

ARGUMENT ......................................................................................................................... 5

I. Thousands of transgender students in Virginia public schools need and deserve protection from discrimination. ................................................................................. 5

II. *Amici* and numerous other school boards have exercised their authority under Virginia law to prohibit discrimination based on gender identity. ........................... 7

    A. Virginia law empowers school boards to adopt anti-discrimination policies in furtherance of student safety and wellbeing. .............................................. 7

    B. Numerous Virginia school boards have enacted policies to prohibit gender-identity discrimination. ........................................................................ 8

III. *Amici*'s inclusion of gender identity in their non-discrimination policies has produced positive outcomes, without the negative consequences feared by opponents. .................................................................................................................. 11

    A. The non-discrimination policy has helped transgender students learn in a safe and supportive environment. ............................................................... 11

    B. The negative consequences feared by opponents have not materialized. ............... 12

CERTIFICATE OF SERVICE ............................................................................................ 17

# INTEREST OF *AMICI*

*Amici* school boards have a direct interest in this matter. Like Defendant Gloucester County School Board, *amici* are charged by Virginia law with the operation of public schools by setting general school policy and establishing guidelines that will ensure the proper administration of programs. *Amici* take seriously their mission to inspire and empower students to meet high academic standards, lead healthy, ethical lives, and mature into responsible and conscientious citizens.

To advance that mission and enable all students to accomplish their goals, *amici* have established policies to promote student health and well-being. In addition to policies prohibiting bullying and promoting respect for others, *amici* have adopted policies that expressly prohibit discrimination based on gender identity. In implementing those policies, our administrators have worked with transgender students to ensure that they feel accepted, protected, and included in our school communities. *Amici* know that supportive school environments are critical for transgender students, who are at a higher risk for anxiety, depression, and suicide.

*Amici* submit this brief to share their perspective as school boards that have successfully prohibited gender-identity discrimination in our schools. Although our districts vary in size, *amici*'s experience has been both consistent and consistently positive.

The Fairfax County School Board oversees Fairfax County Public Schools ("FCPS")— the largest public school division in Virginia and among the dozen largest divisions in the country. FCPS educates more than 187,000 students from pre-kindergarten through the twelfth grade, operates nearly two hundred schools, and, with over 24,000 employees, is the third largest employer in Virginia. FCPS's mission is reflected in its three student achievement goals: Pursue Academic Excellence, Develop Essential Life Skills, and Demonstrate Responsibility to the

Community and the World. FCPS has prohibited discrimination on the basis of gender identity since 2015.

The Alexandria City School Board oversees Alexandria City Public Schools ("ACPS"), a system serving more than 15,000 students who hail from more than 114 countries and speak 119 languages. ACPS has 18 schools, including two middle schools, two K-8 schools, one Pre-K school, and the internationally recognized T.C. Williams High School. ACPS is committed to ensuring that each and every student succeeds. ACPS adopted a formal policy prohibiting discrimination on the basis of gender identity and expression in 2014.

The Arlington School Board oversees Arlington Public Schools ("APS"), which educates one of the nation's most diverse and sophisticated student populations. The school division currently serves more than 27,000 students from Pre-K to grade 12, who come from over 115 nations from around the world and speak 100 different languages. Academic standards are high, and students consistently score well above state and national averages on standardized tests. The district is consistently ranked as a top school division by The Washington Post, U.S. News and World Report, and Niche®. APS revised its non-discrimination policy to prohibit gender-identity discrimination in 2015.

The Falls Church City School Board oversees Falls Church City Public Schools ("FCCPS"), a neighboring school division of FCPS and APS. FCCPS has five schools—one preschool, lower and upper elementary schools, one middle school, and one high school. One of seven Pre-K through grade 12 International Baccalaureate public school divisions in the United States, FCCPS is a student-centered, innovative, and inclusive community of lifelong learners. FCCPS serves 2,700 students and strives to create a personalized environment that supports each child's unique needs, and prepares every student to be a responsible, caring, and

internationally-minded citizen.  FCCPS has worked hard to ensure equity for all students; the design for its new high school, for instance, takes into consideration the need for gender-neutral and single-user bathroom spaces.  In October 2018, the Falls Church City School Board adopted a policy revision prohibiting discrimination on the basis of gender identity.

# **INTRODUCTION**

This lawsuit showcases an issue of paramount and perennial importance to *amici* school boards: how can we best support *all* our students and enable them to learn, grow, and thrive under our supervision? *Amici* believe that the answer must embrace the thousands of students in Virginia public schools who, like Plaintiff Gavin Grimm, identify as transgender. Numerous studies have shown that transgender students are frequently harassed and bullied on account of their gender identity, face higher rates of anxiety and suicidal thoughts, and suffer feelings of loneliness and lack of respect, security, and support at school.

To ensure a safe and supportive learning environment for students, *amici* have actively sought to eliminate discrimination in our schools. Exercising their authority under the Constitution of Virginia, a dozen school boards—including *amici*, and including those overseeing the four largest school systems in Virginia—have expressly prohibited discrimination based on gender identity. Our school administrators carry out this general non-discrimination policy on a case-by-case basis, exploring with individual students the use of pronouns and names, providing support to families, and ensuring appropriate access to school facilities, including permitting students to use the restrooms corresponding to their gender identity when requested.

Our decisions to prohibit gender-identity discrimination and to provide responsible and mutually acceptable arrangements for transgender students have led to uniformly positive results in our schools. Transgender students report greater feelings of acceptance, safety, and connection to other students. Families feel more comfortable communicating with teachers and administrators about the unique needs of their children. And our school communities have grown stronger as a result.

Conversely, *amici* have seen none of the negative consequences predicted by opponents of such policies. Male students, teachers, and parents have not used the policy as a ruse to improperly access female restrooms. Sex offenders have not exploited the policy to prey on children. Transgender students have not suffered greater stigma or trauma. And cisgender students have not suffered academic decline. Those fears have proved entirely unfounded. In fact, hundreds of thousands of students across Virginia, and millions across the country, attend public schools where gender-identity discrimination is prohibited, and they have done so without incident.

As the Court evaluates the legality of Defendant's contrary policy—which prohibits transgender students from using the restrooms corresponding to their gender identity—we respectfully submit that our practical experience demonstrates that schools can accommodate transgender students' unique needs while maintaining a safe and supportive environment for all students.

## **ARGUMENT**

### I. Thousands of transgender students in Virginia public schools need and deserve protection from discrimination.

Recent studies have provided school administrators a clearer picture of the situation of transgender students in the United States. CDC researchers reported earlier this year that 1.8% of high school students in the United States identify as transgender. Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students—19 States and Large Urban School Districts, 2017*, 68:3 Morbidity & Mortality Wkly. Rep. 67, 68 (Jan. 25, 2019), https://tinyurl.com/y3rztbpw. Earlier research showed that, of the approximately 150,000 transgender youth (ages 13–17) in the United States, 4,150 live in Virginia. Jody L. Herman et

al., Williams Inst., *Age of Individuals Who Identify as Transgender in the United States* at 4–5 (2017), https://tinyurl.com/y6s3y5oe.

The national statistics reflecting discrimination against transgender students are deeply troubling. Studies have consistently shown that transgender students are subject to harassment, bullying, and discomfort at far greater rates than other students. For instance, surveys of gender-expansive youth have found that:

- 53% were bullied on school property in the previous year, *see* Human Rights Campaign Foundation, *2018 Gender-Expansive Youth Report* at 19, https://tinyurl.com/y44bf8kj;
- 42% have received physical threats due to transgender identity, *id.*; and
- 84% have experienced verbal threats because of their actual or perceived identity, *id.*

Only 22% feel that they can be themselves at school, *id.* at 22, and only 16% always feel safe in the classroom, *id.* at 18. *See also* Joseph G. Kosciw et al., GLSEN, *The 2017 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, & Queer Youth in Our Nation's Schools* at 14 (2018), https://tinyurl.com/y37edugu (44.6% of transgender students feel unsafe at school because of how they express their gender). Most alarming, 34.6% of transgender students have attempted suicide in the past 12 months. Johns et al., *supra*, at 70.

The statistics available about transgender students in Virginia tell a similar story. Fully 80% of Virginia respondents to the 2015 U.S. Transgender Survey, who were either out as transgender or perceived as transgender, reported some form of mistreatment between kindergarten and Grade 12: 51% were verbally harassed, 21% were physically attacked, and 12% were sexually assaulted. S.E. James et al., Nat'l Ctr. for Transgender Equality, *2015 U.S. Transgender Survey: Virginia State Report* at 1 (2017), https://tinyurl.com/y3tm9rrs. In 15% of cases, the mistreatment was so severe that the student left school. *Id.* at 2.

6

It is against that disturbing backdrop that *amici* have taken affirmative steps to protect our transgender students to ensure their participation as equal members of our school communities.

## II. *Amici* and numerous other school boards have exercised their authority under Virginia law to prohibit discrimination based on gender identity.

### A. Virginia law empowers school boards to adopt anti-discrimination policies in furtherance of student safety and wellbeing.

School boards in Virginia have the power to adopt non-discrimination policies as incident to their authority to supervise schools under Article VIII, § 7 of the Constitution of Virginia. That section provides simply that the "supervision of schools in each school division shall be vested in a school board." Va. Const. art. VIII, § 7. That provision confers broad authority on school boards. For instance, "decisions regarding the safety and welfare of students are manifestly a part of the supervisory authority granted the school boards under Article VIII." *Commonwealth v. Doe*, 682 S.E.2d 906, 909 (Va. 2009). Adopting a non-discrimination policy that will govern how transgender students are treated by teachers and other students is plainly a "decision[] regarding the safety and welfare of students," and therefore within the purview of a school board. *See also Sch. Bd. of City of Richmond v. Parham*, 243 S.E.2d 468, 472 (Va. 1978) (under Article VIII, § 7, "application of local policies, rules, and regulations adopted for the day-to-day management of a teaching staff" is a "function . . . vested in the local [school] boards").

To the extent any doubt existed about the application of those legal principles here, that doubt was removed by an official opinion issued by the Attorney General of Virginia four years ago. In March 2015—in response to a request by Senator Adam Ebbin, who represents parts of some *amici*'s school districts—the Attorney General opined that "the Dillon Rule does not prevent school boards from amending their antidiscrimination policies to prohibit discrimination on the basis of sexual orientation and gender identity." 2015 Op. Va. Att'y Gen. 49, 54. The opinion noted that "[r]egulating how a school system, students, and employees interact with and

7

treat one another is a fundamental component of supervising a school system," and that a "policy that allows some students or some employees to be treated differently from others necessarily implicates the welfare of students and supervision of personnel." *Id.* at 51. "These are areas that the Constitution of Virginia unquestionably empowers school boards to regulate." *Id.*

Notably, in the four years since the Attorney General issued the opinion, the General Assembly has not proposed to alter the Constitution to require a different outcome. "The legislature is presumed to have had knowledge of the Attorney General's interpretation . . . and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view." *Richard L. Deal & Assocs. v. Commonwealth*, 299 S.E.2d 346, 348 (Va. 1983).

### B. Numerous Virginia school boards have enacted policies to prohibit gender-identity discrimination.

Although many individual schools were already attempting to accommodate the needs of transgender students, the Attorney General's 2015 opinion spurred multiple school boards to revise their system-wide policies to expressly prohibit discrimination on the basis of gender identity. For instance, the week after the Attorney General's opinion was issued, a member of the Fairfax County School Board proposed that the anti-discrimination policy be amended to expressly include gender identity as a protected category. On May 7, 2015, following public comment, the board voted overwhelmingly to amend the policy, which now provides:

> No student, employee, or applicant for employment in the Fairfax County Public Schools shall, on the basis of age, race, color, sex, sexual orientation, *gender identity*, religion, national origin, marital status, or disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity, as required by law. It is the express intent of the School Board that every policy, practice, and procedure shall conform to all applicable requirements of federal and state law.[1]

---

[1] FCPS Policy 1450.6 (emphasis added), https://tinyurl.com/y6qmb7re.

At least a dozen school boards across Virginia have now chosen to expressly prohibit gender-identity discrimination or harassment. In addition to Fairfax County, school boards in Albemarle County, Alexandria, Arlington County, Charlottesville, Falls Church, Loudoun County, Manassas Park, Norfolk, Prince William County, Richmond, and Virginia Beach have all prohibited such conduct in the last five years.[2] As a result of those decisions, about 550,000 students—43% of Virginia's public-school population—attend schools committed to non-discrimination on the basis of gender identity, as shown in the following table.[3]

| School division [rank in student population among Virginia's 132 public school divisions] | Student population | % of Virginia's student population |
|---|---|---|
| Fairfax County [1] | 187,830 | 14.6% |
| Prince William County [2] | 90,876 | 7.0% |
| Loudoun County [3] | 82,238 | 6.4% |
| Virginia Beach [4] | 68,624 | 5.3% |
| Norfolk [8] | 30,087 | 2.3% |
| Arlington County [11] | 27,434 | 2.1% |
| Richmond [12] | 24,763 | 1.9% |
| Alexandria [16] | 15,968 | 1.2% |
| Albemarle County [19] | 14,013 | 1.1% |
| Charlottesville [52] | 4,561 | 0.4% |
| Manassas Park [68] | 3,724 | 0.3% |
| Falls Church [83] | 2,621 | 0.2% |
| **TOTAL** | **552,739** | **42.8%** |

---

[2] Their policies are available at the following links: Alexandria, https://tinyurl.com/yy36vvw9; Arlington County, https://tinyurl.com/y4tfngtt; Charlottesville, https://tinyurl.com/yxlxdlfb; Falls Church, https://tinyurl.com/y5agkws2; Loudoun County, https://tinyurl.com/y6ohcmo8; Manassas Park, https://tinyurl.com/y4cluua6; Norfolk, https://tinyurl.com/y2qomp68; Prince William County, https://tinyurl.com/y3xs4exx; Richmond, https://tinyurl.com/y5z9ykq2; Virginia Beach, https://tinyurl.com/y46v5cg7. Albemarle County's anti-harassment policy, *see* https://tinyurl.com/yxky4lbo, prohibits harassment on the basis of gender identity.

[3] Data are taken from the Virginia Department of Education's annual Fall Membership report, available at https://tinyurl.com/y3c8fcm9, which indicates that the total number of students enrolled in Virginia public schools on September 30, 2018 was 1,290,513.

*Amici*'s schools have carefully implemented their non-discrimination policies.  For instance, in Fairfax County, administrators have offered guidance to school-based administrators and teachers on the scope of the policy, and training to clinicians such as counselors, psychologists, and social workers on providing mental-health support to transgender students and their families.  Administrators address requests by transgender students on a case-by-case basis.  Decisions are not made in isolation; a team approach is preferred to ensure that students, parents/guardians, and administrators (and, depending on privacy concerns, teachers) understand and are comfortable with any agreed-upon arrangements.  Families are free to bring in outside supports, such as physical or mental-health clinicians or advocates.  And administrators are encouraged to contact the central office for consultation and support.  In this collaborative environment, the unique needs of transgender students can be discussed and strategies developed to meet them.

Our school systems have found that staff training and continued professional learning are critical to ensuring success.  Last year, for example, the staff of ACPS's Department of Student Services, Alternative Programs and Equity ("Student Services")—including psychologists, social workers, counselors, school nurses, and specialists—participated in a training that featured presenters from the City of Alexandria's LGBTQ Task Force and Health Department, area nonprofits, and former students.  This year, Student Services leadership and the chair of Alexandria's LGBTQ Task Force met with all teachers at T.C. Williams High School to discuss LGBTQ+ needs, ACPS's nondiscrimination policy, and equal access for transgender students.  Because of that training and the open communication it fostered, a PE teacher who had not previously taught a transgender student was prepared for that scenario this year.  The teacher

reached out to a supervisor and, in consultation with Student Services, worked with the student to accommodate the student's changing-area preference in a way that maintained his privacy.

As a result of the policies adopted by *amici*, our schools are now better equipped to address requests and offer potential options in areas of concern to transgender students, such as the use of preferred names and pronouns, the clinical support and resources for students and their families, and access to restrooms corresponding to their gender identity.

III. ***Amici*'s inclusion of gender identity in their non-discrimination policies has produced positive outcomes, without the negative consequences feared by opponents.**

    A.    **The non-discrimination policy has helped transgender students learn in a safe and supportive environment.**

*Amici*'s decisions to prohibit gender-identity discrimination have led to uniformly positive outcomes in our schools. Transgender students report that schools are providing a safer and more accepting environment in which to learn. Indeed, we have received favorable feedback from students at all levels. For instance, in Fairfax County, as younger students enter school identifying as transgender, their families report feeling welcome in the registration process and at school because their unique needs, privacy, and identities are respected from the start. Older students who formerly felt unsupported have reported comfort and satisfaction with the policies and support provided. Likewise, students in Arlington and Alexandria schools have reported positive results as a result of their schools' support, including increased confidence, stronger connections with fellow students, and a greater ability to thrive academically. *See* Br. of Transgender Students & Allies as *Amici Curiae* in Supp. of Pl.-Appellant at 9–12, 14–19, *G.G. v. Gloucester Cty. Sch. Bd.*, No. 15-2056 (4th Cir. May 15, 2017), ECF No. 137-1.

Our non-discrimination policies and collaborative approach for implementing them have also fostered more open communication among students, their parents and guardians, and school

11

administrators. Through training of school administrators, counselors, psychologists, and social workers, Fairfax County staff have been able to assist transgender students and their parents and guardians as they work together to gain more understanding and acceptance of each other's viewpoints and to reach agreement on appropriate options. Schools have also been able to find solutions and consensus with students and families when working through complex situations that require balancing the needs of individual students with larger groups (such as lodging during overnight field trips).

The positive results observed by *amici* are not unique to Virginia; they are consistent with the experience of school administrators across the county, who report that schools have supported and benefited from inclusive policies like those we have adopted. *See Amicus Curiae* Br. of School Administrators from 33 States & the Dist. of Columbia in Supp. of Pl.-Appellant, *G.G. v. Gloucester Cty. Sch. Bd.*, No. 15-2056 (4th Cir. May 16, 2017), ECF No. 155. Indeed, the "results have been overwhelmingly successful, not only for transgender students, but for all students, faculty, administrators, and communities as a whole." *Id.* at 10. *See also* Kosciw et al., *supra*, at 79–81 (reporting that transgender students in schools with policies identifying transgender rights missed fewer days of school and were more likely to be engaged in the school community).

**B.    The negative consequences feared by opponents have not materialized.**

While *amici* have observed the positive results described above, we have seen none of the negative outcomes that opponents said would result from the adoption of non-discrimination policies. Opponents predicted a wide array of adverse consequences that simply have not materialized. For instance, at the Fairfax County School Board meeting at which the policy

change was adopted in 2015, the citizen-comment period saw opponents warn of the following specific consequences:

- *Males improperly accessing female bathrooms and locker rooms*.  An opponent feared that "any male who claims to be a female may access female-restricted resources," and that the policy could be abused not only by male students but by male teachers and fathers of students.  Video of FCPS School Board Meeting No. 19 (May 7, 2015) at 33:53–34:15, https://tinyurl.com/yyxoo7dc.

- *An increase in sex crimes against children in school facilities*.  The opponent claimed that, based on a sex-offender rate of 0.26% in the general population, the policy would "open [the] door to about 3,000 sex offenders that will potentially not be stopped immediately when they access female-restricted area[s]."  The opponent urged the FCSB to "[t]hink about the poor girls who would become victim[s] of this policy . . . .  It will increase sex crimes to little children as young as 5 years old."  *Id.* at 34:14–34:46.

- *An increase in the suicide rate among transgender students*.  The opponent worried that adopting the policy would cause the suicide rate among transgender students to rise "higher due to more publicity, controvers[y], or social stigma."  *Id.* at 33:17–33:27.

- *Increased danger to non-transgender students*.  Another opponent said that adopting the policy would amount to embracing the "mental illness of gender identity" rather than "seeking psychiatric help" for transgender students, which would "lead to the endangerment of . . . children around them" and, in fact, "endanger[] the entire school."  *Id.* at 58:17–59:05.

- *Lower test scores for other students, especially minority students*.  The opponent expressed concern that, while "[a]ll children will be affected by

13

> the distraction" of "allow[ing] children to display the transgender mental illness," the effect would be greatest on minority students. "The distraction of a transgender will lower test scores [and] increase the drop-out rate of Hispanics and blacks." As a result, the opponent asserted, the policy change was "racist, anti-Hispanic, anti-black, [and] anti-Christian." *Id.* at 59:06–59:50.

Similar fears were voiced to other Virginia school boards considering adding protections for transgender students. *See, e.g.*, Video of Loudoun County School Board meeting (Feb. 26, 2019) at 57:45 (speculating that male students will abuse policy to access girls' locker room), https://tinyurl.com/y2y4sqvl; *id.* at 59:00 (concern that policy will open schools to predators); *id.* at 1:34:17 ("We need to protect girls from sexual predators in high school."); Video of Prince William County School Board meeting (June 21, 2017) at 24:55 ("What happens when someone says they are what they aren't?"), https://tinyurl.com/y2j45c7w.

None of those ominous predictions has been borne out in any of *amici*'s schools. Sex offenders and other predators have not intruded into school bathrooms and locker rooms. As reported above, transgender students have reported increased, not decreased, comfort in the school environment. And while transgender students can now focus better on learning, the academic performance of other students has not been hindered.

In fact, *amici* are not aware of any jurisdiction, in Virginia or elsewhere, where prohibiting gender-identity discrimination has led to such negative consequences. During the June 2017 meeting at which the Prince William County School Board revised its non-discrimination policy, board member Justin Wilk presented data confirming the absence of such incidents in the country's 26 largest school divisions (including FCPS) that prohibit

discrimination based on gender identity.[4]  Wilk surveyed those school districts by asking representatives:

> As a result of the additional language in your non-discrimination policy, has your district experienced any of the following:
>
> 1) Transgender students attacking or being attacked in school restrooms.
>
> 2) Heterosexual males dressing up as females to enter their restrooms and attack them.
>
> *Id.* at 1:00:32–1:01:02.

Wilk's research showed that in these 26 school districts—representing some *3.6 million* students—there have been *zero* attacks on or by transgender students in school restrooms, and *zero* incidents of males masquerading as females to gain improper access to restrooms.  *Id.* at 1:06:00.

The absence of negative outcomes is consistent with the experience of the several dozen administrators from across the country—including the Arlington School Board—that filed an amicus brief in the Fourth Circuit appeal in this case.  *See Amicus Curiae* Br. of School Administrators from 33 States & the Dist. of Columbia in Supp. of Pl.-Appellant, *G.G. v. Gloucester Cty. Sch. Bd.*, No. 15-2056 (4th Cir. May 16, 2017), ECF No. 155.  They likewise indicated that concerns about restrooms, locker rooms, and students posing as transgender students to gain access to them were "wholly unfounded in practice."  *Id.* at 17.  *See also* Erin Fitzgerald, Media Matters for America, *A Comprehensive Guide to the Debunked 'Bathroom Predator' Myth* (May 5, 2016), https://tinyurl.com/yyfn3l99 (surveying 23 school districts with

---

[4] *See* Video of Prince William County School Board meeting (June 21, 2017), https://tinyurl.com/y2j45c7w.  Wilk contacted the country's 41 largest school districts other than Prince William County:  26 protected both gender identity and sexual orientation, 5 protected only sexual orientation; 10 protected neither.  *Id.* at 58:15–59:45.

policy against transgender discrimination and finding zero allegations of bathroom sexual assault).

## CONCLUSION

*Amici*'s experience teaches that Virginia law not only permits school boards to adopt anti-discrimination policies, but that school systems can and should prohibit gender-identity discrimination and do their best to accommodate transgender students' unique needs. Doing so has not triggered the negative consequences frequently cited by opponents of such policies. Instead, adopting such policies has promoted mutual respect and strengthened our bonds of community.

Respectfully submitted,

**Fairfax County School Board, Alexandria City School Board, Arlington School Board, and Falls Church City School Board**

By: /s/ Trevor S. Cox
Trevor S. Cox
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-7221
tcox@HuntonAK.com

Stuart A. Raphael
Sona Rewari
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 419-2021
sraphael@HuntonAK.com
srewari@HuntonAK.com

# CERTIFICATE OF SERVICE

I certify that on March 26, 2019, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished through the CM/ECF system.

/s/ Trevor S. Cox

Trevor S. Cox
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-7221
tcox@HuntonAK.com

*Counsel for Amici Fairfax County School Board, Alexandria City School Board, Arlington School Board, and Falls Church City School Board*