IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| GAVIN GRIMM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 4:15-cv-54-AWA-DEM |
| | ) | |
| GLOUCESTER COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .........................................................................................................ii

INTRODUCTION .........................................................................................................................1

REPLY STATEMENT OF UNDISPUTED FACTS.....................................................................2

RESPONSE TO DEFENDANT'S ADDITIONAL FACTS........................................................12

ARGUMENT ..............................................................................................................................13

    I.   The Board Has Failed to Create a Triable Question of Fact with Respect to Gavin's Gender Dysphoria Diagnosis or His Endocrine and Surgical Treatments for That Condition. ..................13

    II.  The Board Inadvertently Concedes that Its Policy Singles Out Transgender Students for Different Treatment..........................................................................................................16

    III. Gavin's Feelings of Stigma, Shame, and Humiliation Can Be Proven by Lay-Witness Testimony from Gavin and His Mother, and the Board Has Failed to Create a Triable Question of Fact Disputing Their Testimony. ....................................................................17

    IV. The Board Continues to Provide Contradictory and Illogical Explanations for its Definition of "Biological Gender."......................................................................................................19

    V.  The Board Continues to Provide Contradictory and Illogical Explanations for Its Disregard for Gavin's Legal Documents................................................................................................23

CONCLUSION............................................................................................................................24

CERTIFICATE OF SERVICE ...................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cty., Fla.*,
  318 F. Supp. 3d 1293 (M.D. Fla. 2018) .......................................................... 7, 18

*Bocock v. Specialized Youth Servs. of Va., Inc.*,
  No. 5:14-CV-00050, 2015 WL 6738331 (W.D. Va. Nov. 4, 2015) ..................... 15

*Brown v. Board of Education*, 347 U.S. 483 (1954) ............................................... 3

*Bryant v. Aiken Reg'l Med. Centers Inc.*,
  333 F.3d 536 (4th Cir. 2003) ............................................................................ 18

*Dansey v. Metro. Life Ins. Co.*,
  No. 3:11-CV-00013, 2012 WL 4747249 (W.D. Va. Oct. 4, 2012) ................... 5, 14

*FDIC v. Cashion*, 720 F.3d 169 (4th Cir. 2013) ..................................................... 1

*Foreword Magazine, Inc. v. OverDrive, Inc.*,
  No. 10–1144, 2011 WL 5169384 (W.D. Mich. Oct. 31, 2011) ....................... 4, 14

*G.G. v. Gloucester Cty. Sch. Bd.*,
  853 F.3d 729 (4th Cir.) ................................................................................ 7, 18

*Ginena v. Alaska Airlines, Inc.*,
  No. 2:04-CV-01304-MMD, 2013 WL 211071 (D. Nev. Jan. 17, 2013) .......... 5, 18

*Harris v. Mayor & City Council of Baltimore*,
  429 F. App'x 195 (4th Cir. 2011) ...................................................................... 3

*Hicks ex rel. Hicks v. Mellis*, 275 Va. 213 (2008) ................................................ 24

*Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) .................................................. 3

*Ilozor v. Hampton Univ.*,
  No. CIV A 406CV90, 2007 WL 1310179 (E.D. Va. May 3, 2007), *aff'd*, 286 F. App'x 834 (4th
  Cir. 2008).................................................................................................... 5, 15

*Jones v. W. Tidewater Reg'l Jail*,
  187 F.Supp.3d 648 (E.D. Va. 2016) ............................................................ 4, 14, 15

*Knipe v. SmithKline Beecham*,
  583 F. Supp. 2d 553(E.D. Pa. 2008).................................................................... 3

*Kurland v. ACE Am. Ins. Co.*,
  No. CV JKB-15-2668, 2017 WL 354254 (D. Md. Jan. 23, 2017) ..................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ......................................................................................... 1

*Mulder v. Norton,*
  No. 5:13-CV-574-F, 2016 WL 3566655 (E.D.N.C. June 24, 2016) ................................ 4, 15

*Newton v. Beneficial Fin. I, Inc.,*
  No. 3:16-CV-00058, 2019 WL 1372163 (W.D. Va. Mar. 26, 2019) ............................ 4, 14

*Nnadozie v. Genesis HealthCare Corp.,*
  730 F. App'x 151(4th Cir. 2018) ................................................................................. 3

*Price v. City of Charlotte, N.C.,*
  93 F.3d 124 (4th Cir. 1996) ........................................................................................ 18

*Prime Healthcare Servs.-Garden Grove LLC v. Burwell,*
  No. SACV1700169AGKSX, 2017 WL 6941361 (C.D. Cal. Aug. 28, 2017) ..................... 2

*Ridgell v. Astrue,*
  No. DKC 10–3280, 2012 WL 707008 (D.Md. Mar. 2, 2012) ..................................... 4

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ...................................................... 7, 18

*Roman v. MSL Capital, LLC,*
  No. EDCV 17-2066 JGB (SPx), 2019 WL 1449499 (C.D. Cal. Mar. 29, 2019) .............. 5

*Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987) ................................................... 5

*Torres v. City of Chicago,*
  No. 12 C 7844, 2015 WL 12843889 (N.D. Ill. Oct. 28, 2015) .................................... 18

*U.S. Dep't. of Hous. & Urban Dev. v. Cost Control Mktg.,*
  64 F.3d 920 (4th Cir.) ................................................................................................ 16

*Union First Mkt. Bank v. Bly,*
  No. 3:13-CV-598, 2014 WL 496657 (E.D. Va. Feb. 6, 2014) .................................... 3

*United States v. Stein*, 881 F.3d 853 (11th Cir. 2018) ............................................. 3

**Statutes**

Va. Code § 32.1-270 .................................................................................................... 11

Va. Code § 32.1-272(A) ............................................................................................... 11

**Other Authorities**

Amicus Br. of Am. Acad. of Pediatrics, *et al.*, *G.G. v. Gloucester Cty. Sch. Bd.,*
  No. 15-2056, ECF No. 244 (4th Cir.) ......................................................................... 6

Fed. R. Civ. P. 56 .................................................................................................. 1, 4, 14

Fed. R. Evid. 201 ......................................................................................................... 2

Fed. R. Evid. 801(d)(2) ............................................................................................... 10

Fed. R. Evid. 803(6)..........................................................................................................3, 4, 15

Fed. R. Evid. 902(11).............................................................................................................4, 15

Fed. R. Evid. 701 ......................................................................................................................18

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56, Plaintiff Gavin Grimm ("Gavin") respectfully submits this Reply Memorandum of Law in Support of Summary Judgment.[1]

The Gloucester County School Board (the "Board") asserts that "almost all" of the material facts are disputed. Def.'s Opp. 1, ECF No. 200. To defeat summary judgment, however, the Board "must do more than simply show that there is some metaphysical doubt as to the material facts." *FDIC v. Cashion*, 720 F.3d 169, 180-81 (4th Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). It "must come forward with specific facts showing that there is a *genuine* issue for trial." *Id.* (emphasis added) (internal quotation marks omitted).

The dispositive facts in this case are not subject to any genuine dispute. The Board does not introduce any evidence to dispute that a licensed clinical psychologist diagnosed Gavin with gender dysphoria; that she provided Gavin with a treatment documentation letter; that Gavin has received hormone therapy and chest-reconstruction surgery as treatment for gender dysphoria; that Gavin received a Virginia court order and birth certificate declaring that his sex is male; or that Gavin felt humiliated by the Board's policy. Instead, the Board attempts to raise "some metaphysical doubt" about these uncontroversial and uncontroverted facts. *Matsushita*, 475 U.S. at 586. The Board's objections to the admissibility of Gavin's evidence have no merit, and the Board's stubborn refusal to acknowledge undisputed facts does not create a genuine question for trial.

---

[1] Plaintiff incorporates by reference arguments made in Plaintiff's Memorandum of Law in Opposition to the Board's Motion for Summary Judgment, ECF No. 201.

In addition to asking the Court to ignore Gavin's undisputed evidence, the Board asks the Court to ignore the sworn testimony of the Board's own 30(b)(6) witness. The Board apparently regrets the tactical choices it made at the 30(b)(6) deposition by implausibly claiming that its policy defines students' "biological gender" based on their birth certificates. But the Board cannot use its summary judgment brief to rewrite its sworn testimony. The Board's inability to tell a consistent story about the meaning of the "biological gender" policy further demonstrates the fundamentally arbitrary and ad hoc nature of its actions.

Gavin's evidence is admissible and uncontroverted. He is entitled to judgment as a matter of law.

## REPLY STATEMENT OF UNDISPUTED FACTS

1.      The Board disputes the use of the term "designated" female. It is undisputed that "sex designated at birth" is the term used by the Endocrine Society in *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*. Endocrine Society Guidelines at 3875, ECF No. 192-6.

2.      The Board objects that the statements in the amicus brief filed by the American Academy of Pediatrics and other major medical organizations are not evidence for purposes of summary judgment. The Board may disagree with the views of those medical organizations, but the Board does not—and cannot—dispute that the statements made in the amicus brief represent those organizations' views. The authenticity of the amicus brief filed in the Fourth Circuit "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see Prime Healthcare Servs.-Garden Grove LLC v. Burwell*, No. SACV1700169AGKSX, 2017 WL 6941361, at *1 (C.D. Cal. Aug. 28, 2017) (explaining that "a court might take judicial notice of . . . the *fact* that the United States filed an amicus brief in the

2

landmark case of *Brown v. Board of Education*, 347 U.S. 483 (1954)); *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 573 n.23 (E.D. Pa. 2008) (finding that amicus briefs filed by FDA in another case are "competent evidence of the FDA's position").

3-4.　The Board objects to Gavin's testimony about his life before and during gender transition as "self[-]serving." "There is, however, no rule against self-serving affidavits or declarations." *Union First Mkt. Bank v. Bly*, No. 3:13-CV-598, 2014 WL 496657, at *8 (E.D. Va. Feb. 6, 2014) (citing *Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195,198 n.5 (4th Cir. 2011)). "Nothing in Rule 56 prohibits an otherwise admissible affidavit from being self-serving." *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 160 (4th Cir. 2018) (quoting *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc)). "Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (en banc). "[T]he term 'self[-]serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story." *Id.*

5, 7.　As an exhibit to his declaration, Gavin submitted the treatment documentation letter from the clinical psychologist who diagnosed him with gender dysphoria. *See* Treatment Documentation Letter, ECF No. 186-1. The Board contends that the letter from Gavin's psychologist is inadmissible hearsay, but Federal Rule of Evidence 803(6) allows medical records "of an act, event, condition, opinion, *or diagnosis*" to be admitted as business records. Fed. R. Evid. 803(6) (emphasis added). To respond to the Board's hearsay objection, Gavin has sought permission to file under seal redacted medical records from the clinical psychologist who originally diagnosed him, along with a business-records certification pursuant to Federal Rule of Evidence 902(11). *See* Clinical Psychologist Medical Records (Medley-Warsoff Decl. 4/16/19

Ex. B); *Jones v. W. Tidewater Reg'l Jail*, 187 F.Supp.3d 648, 654 (E.D. Va. 2016) (explaining that because "medical records could be admissible [as business records] if they were accompanied by an affidavit from the custodian of the records to authenticate the records and establish that they were kept in the course of regular business," they may be considered on a motion for summary judgment); *Mulder v. Norton,* No. 5:13-CV-574-F, 2016 WL 3566655, at *2 (E.D.N.C. June 24, 2016) ("While the medical record is not in admissible form, it could be admissible if it was accompanied by an affidavit from the custodian of the record to authenticate it and establish that it was kept in the course of regular business or made for the purpose of a medical diagnosis or treatment.").[2]

The Board also contends that Gavin's testimony that he was diagnosed with gender dysphoria—and that he underwent hormone therapy and chest-reconstruction surgery as treatment for that condition—is inadmissible hearsay. To respond to that objection, Gavin has sought permission to file under seal redacted medical records from his endocrinologist and surgeon, which are also capable of being admitted at trial with a business-records certification pursuant to Federal Rule of Evidence 803(6) and 902(11). *See* Surgeon Medical Records (Medley-Warsoff Decl. 4/16/19 Ex. C); Redacted Endocrinology Medical Records (Medley-

---

[2] Under the 2010 amendments to Federal Rule of Civil Procedure 56, "facts in support of or in opposition to a motion for summary judgment need not *be* in admissible form; the new requirement is that the party identifies facts that *could be* put in admissible form at trial." *Newton v. Beneficial Fin. I, Inc.*, No. 3:16-CV-00058, 2019 WL 1372163, at *2 (W.D. Va. Mar. 26, 2019) (quoting *Jones*, 187 F. Supp. 3d at 654) (internal quotation marks omitted). "Rule 56(c)(2) now prescribes a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method of doing so at trial." *Jones*, 187 F. Supp. 3d at 654 (quoting *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 10–1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011)) (internal quotation marks and brackets omitted). "Notably, the objection now contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Id.* (quoting *Ridgell v. Astrue*, No. DKC 10–3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012) (internal quotation marks and brackets omitted).

Warsoff Decl. 4/16/19 Ex. D); Endocrinology Business Records Certification (Medley-Warsoff Decl. 4/16/19 Ex. E); *Dansey v. Metro. Life Ins. Co*., No. 3:11-CV-00013, 2012 WL 4747249, at *2 (W.D. Va. Oct. 4, 2012) (considering evidence submitted in reply when introduced to respond to "admissibility objections made by Defendants in their opposition to summary judgment"); *Ilozor v. Hampton Univ.*, No. CIV A 406CV90, 2007 WL 1310179, at *14 (E.D. Va. May 3, 2007), *aff'd*, 286 F. App'x 834 (4th Cir. 2008) (same).[3]

The Board also objects to Gavin's testimony about his feelings of dysphoria, anxiety, and depression before he received treatment for gender dysphoria. Although lay witnesses cannot offer expert testimony about medical diagnoses or causation, they "may testify regarding factual matters and opinions within their personal knowledge, including emotional, mental, and physical symptoms they personally suffered." *Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD, 2013 WL 211071, at *3 (D. Nev. Jan. 17, 2013). Similarly, "friends and family members in a position to observe a claimant's symptoms and daily activities routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Such testimony is permissible if it is based on the witness's perception and can help to clarify the effects the alleged harm had on the plaintiff." *Roman v. MSL Capital, LLC*, No. EDCV 17-2066 JGB (SPx), 2019 WL 1449499, at *5 (C.D. Cal. Mar. 29, 2019).

8.    The paragraph accurately reflects the standard of care for treating gender dysphoria recognized by the World Professional Association for Transgender Health ("WPATH"), the Endocrine Society, the American Academy of Pediatrics ("AAP"), the

---

[3] The redacted copies of Gavin's medical records from Gavin's surgeon, Medley-Warsoff Decl. 4/16/19 Ex. C, are accompanied by a business-records certification pursuant to Rule 902(11). The records custodian for Gavin's endocrinologist provided a business-records certification for unredacted copies of Gavin's medical records. *See* Medley-Warsoff Dec. 4/16/19 Ex. D and E.

American Psychiatric Association, the American College of Physicians, the American Medical Association, the American Academy of Child and Adolescent Psychiatry, the American Academy of Family Physicians, and the other signatories of the AAP Amicus Brief. The AAP Amicus Brief also specifically mentions the importance of using restroom facilities as part of social transition. Amicus Br. of Am. Acad. of Pediatrics, *et al.*, *G.G. v. Gloucester Cty. Sch. Bd.*, No. 15-2056, ECF No. 244 (4th Cir.) at 14. The Board may disagree with the views of those medical organizations, but the Board does not—and cannot—dispute that the statements made in the amicus brief represent those organizations' views. *See supra* at ¶ 2.

The Board contends that the medical organizations referenced by Dr. Penn and the AAP Amicus Brief do not reflect the views of "every major medical organization" because the American College of Pediatricians disagrees with those organizations. The American College of Pediatricians is "a small, fringe organization with policy positions and medical recommendations that contradict the recommendations of the American Academy of Pediatrics and other mainstream medical organizations." Penn Expert Rebuttal Rep. & Decl. ¶ 6, ECF No. 192-8. Even if there is a triable question of fact with respect to whether the American College of Pediatricians qualifies as a "major medical organization," the Board's expert does not dispute that the recommendations of the American Academy of Pediatrics and the Endocrine Society are widely followed by hospitals throughout the country. Van Meter Dep. at 108:13-110:2, ECF No. 192-4.

The Board asserts that Dr. Penn is not qualified to testify about the standards of care for treating gender dysphoria because she is not a mental health professional. But Dr. Penn is testifying an as expert in the standards of care for a pediatric endocrinologist treating gender dysphoria, and in that capacity, she is familiar with the recommendations of the leading medical

organizations for treating that condition. Penn Expert Rep. & Decl. ¶¶ 3, 7, 11-13, ECF No. 192-3.

10.     The Board objects to Gavin's testimony about his treatment documentation letter as inadmissible hearsay. Those objections are addressed *supra* at ¶¶ 5, 7.

11.     The Board objects to the testimony as "self-serving." Those objections are addressed *supra* at ¶¶ 3-4.

12.     There is no conflict between the cited portions of Ms. Durr's deposition and Gavin's declaration. Ms. Durr testified that, in the August 2014 meeting with Gavin and his mother, "Gavin stated that he, in addition to wanting everybody to identify him by his new name – or the name change, that he also, of course, wanted to be identified by male pronouns" and that she would "honor his wishes." Durr Dep. 15:17-16:4, ECF No. 192-11. The Board's objections to the admissibility of Gavin's treatment documentation letter are addressed *supra* at ¶¶ 5, 7.

15.     The Board objects to Gavin's testimony about his own feelings of shame, stigma, and humiliation. But Gavin's legal claims are not based on the medical necessity of using the restroom or on the Board's exacerbation of his gender dysphoria. His claims are based on the physical pain and discomfort of being unable to use the restroom and "the deprivation of personal dignity that surely accompanies denials of equal access to public establishments." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984) (internal quotation marks omitted). No expert testimony is necessary to establish that "it is humiliating to be segregated from the general population." *G.G. v. Gloucester Cty. Sch. Bd.*, 853 F.3d 729, 730 (4th Cir.) (Davis, J., concurring, joined by Floyd, J.); *see Adams by & through Kasper v. Sch. Bd. of St. Johns Cty., Fla.*, 318 F. Supp. 3d 1293, 1326-27 (M.D. Fla. 2018) (awarding transgender student damages for emotional distress without expert testimony).

17.     Plaintiff modifies his Statement of Undisputed Facts ("SUMF") ¶ 17 in light of the Board's objections. The cited portion of Ms. Durr's deposition reflects that Ms. Durr believed that allowing Gavin to use the same restrooms as other boys would be in his best interest. But Plaintiff withdraws the contention that Ms. Durr provided that recommendation to Principal Collins.

18.     The Board objects to Plaintiff's contention that Mr. Lord recommended to Principal Collins that allowing Gavin to use the same restrooms as other boys would be "in his best interest." In addition to the portion of Principal Collins' deposition cited in SUMF ¶ 18 (Collins Dep. 47:1-4), Principal Collins specifically testified a few questions later, as follows:

> Q. Okay. And did he say anything indicating that he thought as a school counselor that using the male restrooms would be in Gavin's best interest?

> A. Yes, he did express that.

Collins Dep. 48:2-6.

19.     The cited amicus briefs were filed on behalf of the American School Counselor Association, National Association of School Psychologists, American Academy of Pediatrics, American Medical Association, American Psychiatric Association, and American Psychological Association. The Board may disagree with the views of those medical organizations, but the Board does not—and cannot—dispute that the statements made in the amicus brief represent those organizations' views. *See supra* ¶ 2.

22.     The citation for the first sentence of SUMF ¶ 22 was inadvertently omitted. Principal Collins testified as follows:

> A. I ultimately decided after this consultation process and after meeting with Gavin directly that Gavin should be allowed to use male restrooms at Gloucester High School.

> Q. Why?

A. I felt it was in his best interest, and it seemed to be in line with the guidance I had received.

Q. So even if the law didn't require that you let Gavin use the boys restroom, you still thought it was in his best interest?

A. Yes.

Collins Dep. 51:2-13.

23.     The cited position statements were all issued or endorsed by the National Association of School Psychologists, National Association of Secondary School Principals, National Association of Elementary School Principals, and American School Counselor Association. The Board may disagree with the views of these organizations, but the Board does not—and cannot—dispute that the materials represent those organizations' views. *See supra* ¶ 2.

24.     The educators who submitted declarations and amicus briefs do not purport to be speaking as mental health providers. They are speaking as educators and school administrators.

25.     The cited document speaks for itself.

27.     The paragraph accurately states that Gavin used the restroom for seven weeks without incident. None of the complaints identified by the Board concerned an incident in which a student was in the restroom at the same time as Gavin. Def's Supplemental Answer to Interrogatory No. 1, ECF No. 192-2. The Board's reference to an "altercation" was not an altercation and was not an incident in which Gavin was using the restroom. It was a time in class when another student loudly called Gavin "freaky" and "disgusting." *See* Pl.'s Response to Def.'s SUMF ¶ 8, ECF No. 201.

28.     The Board states that it disputes paragraph 28, but the Board does not explain its reasoning for the dispute.

34.     The emails from Board member Carla Hook are not hearsay. They are admissible statements by a party opponent. *See* Fed. R. Evid. 801(d)(2). The text of the emails speaks for itself.

35.     The text of the emails speaks for itself.

40.     The fact that Gavin had already revealed that he is transgender to "friends, classmates and the school" does not negate the fact that "[i]n order to speak, Gavin was forced to reveal himself to the entire community and the local media."

41.     The Board's objections to the phrase "without incident" are addressed *supra* ¶ 27.

43-44.  The video transcript and quoted excerpts speak for themselves. Paragraph 44 accurately represents Gavin's and his mother's reaction to the Board meeting.

47.     Although the Board purports to dispute paragraph 47, its response does not contradict any statement in the paragraph.

49.     The Board's assertions do not conflict with the facts in paragraph 49.

52.     The Board's assertions do not conflict with the facts in paragraph 52.

55-56.  The testimony from Gavin and his mother about Gavin's feelings of humiliation, shame, and stigma as a result of discrimination are proper subjects for lay witness testimony. *See supra* ¶ 15.

57.     Gavin's testimony about his pain while urinating and his mother's testimony about Gavin's use of AZO are proper subjects for lay witness testimony and do not require an expert medical diagnosis. *See supra* ¶¶ 5, 7.

58, 61. Gavin's feelings of humiliation, shame, and stigma as a result of discrimination are proper subjects for lay witness testimony. *See supra* ¶ 15.

64.     The Board's objections to Gavin's testimony regarding his gender dysphoria diagnosis, his hormone therapy, and his chest-reconstruction surgery are addressed *supra* ¶¶ 5, 7. The Board provides no evidence in support of its assertion that Gavin's birth certificate was not issued in accordance with Virginia law.

64-74. The Board purports to dispute paragraph 64-74 but does not identify any statements it contends are incorrect.

82.     The Board's assertions do not contradict the statement in paragraph 82 that "biological gender" does not have a common or accepted meaning. The Board's quotations from the expert reports are also incomplete and inaccurate. *See* Pl.'s Response to SUMF ¶15, ECF No. 201.

87.     The Board's attempt to dispute paragraph 87 contradicts the Board's clear and unambiguous sworn testimony at the 30(b)(6) deposition. The 30(b)(6) witness repeatedly testified that, under the Board's policy, transgender students use the restroom that matches the gender marker on their birth certificate regardless of what genitals or other physiological characteristics they possess. Anderson Dep. 75:13-76:14, 96:9-97:13, ECF No. 192-13.

93.     The Board disputes that birth certificates are printed on security paper. The bottom of Virginia birth certificates specifically states: "Do not accept unless on security paper with the seal of the Virginia Department of Health, Vital Statistics in the lower left hand corner." ECF No. 186-4. Paragraph 93 also cited Va. Code § 32.1-270, which states that vital records shall be issued on security paper. The Board contends that the statute applies only to vital records issued by the Department of Motor Vehicles and that "birth certificates are not issued by the Department of Motor Vehicles." That is not true. Va. Code § 32.1-272(A) specifically provides: "The Commissioner of the Department of Motor Vehicles shall be authorized to issue a certified

copy of a birth, death, marriage, or divorce vital record, or a part thereof, in the custody of the State Registrar."

**RESPONSE TO DEFENDANT'S ADDITIONAL FACTS**

For purposes of this motion for summary judgment, the Board's "additional facts" based on the testimony of their designated expert, Dr. Van Meter, are not material. The Board's attempt to create a disputed question of fact with respect to the medical necessity of gender-affirming transition-related care is not material to Gavin's actual legal claims.

Plaintiff also disputes the Board's "additional facts" and the testimony from Dr. Van Meter on which they are based. If summary judgment is denied, Plaintiff intends to file a *Daubert* motion to exclude Dr. Van Meter from testifying as an expert at trial in this case. Dr. Van Meter is not a psychiatrist, psychologist, or mental health provider of any kind. Van Meter Dep. 32:8-9; 33:3-12, ECF No. 192-14. His experience as an endocrinologist does not provide a basis for him to offer expert testimony with respect to what forms of psychological treatment are appropriate for treating gender dysphoria. If Dr. Van Meter is permitted to testify as an expert, the Plaintiff will vigorously dispute his testimony as falling far outside the mainstream and based on ideology, not science. The amicus brief from the AAP embodies the mainstream scientific consensus regarding gender identity and gender dysphoria.

Moreover, the following paragraphs do not accurately characterize Dr. Van Meter's testimony even if that testimony were accepted as true.

1-2.    The proffered evidence does not support the Board's assertion that sex is determined solely by reference to chromosome combinations. Dr. Van Meter stated that some individuals have intersex conditions that can create the "appearance of female external genitalia in an XY male" and the "appearance of male external genitalia in an XX female." Van Meter

Rep. ¶ 16. Dr. Van Meter also stated that "there are variations of the degree of hormonally driven changes that… prevent assigning of a specific classification as either male or female at birth." *Id.*

6.     Dr. Van Meter did not testify—and the referenced Swedish study did not reflect—that transitioning increases morbidity. The study shows that even after transitioning, rates of morbidity were higher for transgender people than for the population at large. The study did not compare rates of morbidity before and after transition. Van Meter Dep. at 118:15-18, ECF No. 192-14.

## ARGUMENT

### I.  The Board Has Failed to Create a Triable Question of Fact with Respect to Gavin's Gender Dysphoria Diagnosis or His Endocrine and Surgical Treatments for That Condition.

The Board does not present any evidence to dispute that Gavin was diagnosed with gender dysphoria, or that he received hormone therapy and chest-reconstruction surgery as treatments for that condition. Gavin provided a treatment documentation letter to school officials before starting tenth grade in 2014. The letter stated:

> I am a clinical psychologist licensed in Virginia (#0810004568) and North Carolina (#2072) and a specialist in gender identity and gender dysphoria in children and teens

> The purpose of this letter is to certify that Gavin Grimm, assigned female at birth, is under my care for gender dysphoria. Best mental health/medical practices recommend that he present as a male in all activities of daily living.

> Gavin should be afforded all the rights of a natal male and be considered and treated as male in every respect. This includes restroom usage and ability to express himself in gender-specific manners. His male name and male pronouns should be used exclusively.

Treatment Documentation Letter, ECF No. 186-1. As part of discovery in this litigation, and pursuant to this Court's protective order, ECF No. 85, Gavin has also produced over 100 pages of medical records documenting his diagnosis and treatment. *See* Medley-Warsoff Decl. 4/16/19

Ex. B, C, D, and E. The Board has never disclosed any documents or witnesses to dispute the accuracy of those records. Under normal circumstances, these uncontroverted and uncontroversial facts would be introduced into evidence by stipulation because there is no genuine disputed question of fact to be resolved.

The Board nevertheless challenges Gavin's testimony regarding these undisputed facts as inadmissible hearsay. Under the 2010 amendments to Federal Rule of Civil Procedure 56, "facts in support of or in opposition to a motion for summary judgment need not *be* in admissible form; the new requirement is that the party identifies facts that *could be* put in admissible form at trial." *Newton v. Beneficial Fin. I, Inc.*, No. 3:16-CV-00058, 2019 WL 1372163, at *2 (W.D. Va. Mar. 26, 2019) (quoting *Jones*, 187 F. Supp. 3d at 654) (internal quotation marks omitted). "Rule 56(c)(2) now prescribes a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method of doing so at trial." *Jones*, 187 F. Supp. 3d at 654 (quoting *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 10–1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011)) (internal quotation marks and brackets omitted).

To respond to that hearsay objection, Gavin has filed a motion to submit under seal copies of his medical records from his clinical psychologist (GRIMM 1-4, Medley-Warsoff Decl. 4/16/19 Ex. B), endocrinologist (GRIMM 5-R-92-R, 100-162, Medley-Warsoff Decl. 4/16/19 Ex. D and E), and surgeon (GRIMM 93, 94-R-99-R, Medley-Warsoff Decl. 4/16/19 Ex. C). *See Dansey v. Metro. Life Ins. Co.*, No. 3:11-CV-00013, 2012 WL 4747249, at *2 (W.D. Va. Oct. 4, 2012) (considering evidence submitted in reply when introduced to respond to "admissibility objections made by Defendants in their opposition to summary judgment"); *Ilozor v. Hampton Univ.*, No. CIV A 406CV90, 2007 WL 1310179, at *14 (E.D. Va. May 3, 2007), *aff'd*, 286 F.

14

App'x 834 (4th Cir. 2008) (same); *see also Bocock v. Specialized Youth Servs. of Va., Inc.*, No. 5:14-CV-00050, 2015 WL 6738331, at *4 (W.D. Va. Nov. 4, 2015) (citing *Ilozor); Kurland v. ACE Am. Ins. Co.*, No. CV JKB-15-2668, 2017 WL 354254, at *4 (D. Md. Jan. 23, 2017) ("[E]vidence attached to a reply brief is not 'new' if it responds to issues and facts raised in the non-movants opposition brief.").

Gavin's treatment documentation letter and the medical records submitted under seal can be admitted at trial with a certification from the document custodian pursuant to Fed. R. Evid. 902(11) as business records concerning "an act, event, condition, opinion, or diagnosis" to be admitted as business records." Fed. R. Evid. 803(6). *See Jones*, 187 F.Supp.3d at 654 (explaining that because "medical records could be admissible [as business records] if they were accompanied by an affidavit from the custodian of the records to authenticate the records and establish that they were kept in the course of regular business," they may be considered on a motion for summary judgment); *Mulder v. Norton,* No. 5:13-CV-574-F, 2016 WL 3566655, at *2 (E.D.N.C. June 24, 2016) ("While the medical record is not in admissible form, it could be admissible if it was accompanied by an affidavit from the custodian of the record to authenticate it and establish that it was kept in the course of regular business or made for the purpose of a medical diagnosis or treatment.").[4]

The Board's empty objections are insufficient to create a triable question of fact with respect to whether (a) Gavin was diagnosed as having gender dysphoria, (b) Gavin underwent hormone therapy as treatment for gender dysphoria, and (c) Gavin had chest-reconstruction

---

[4] The redacted copies of Gavin's medical records from Gavin's clinical psychologist, Medley-Warsoff Decl. 4/16/19 Ex. B, and surgeon, Medley-Warsoff Decl. 4/16/19 Ex. C, are accompanied by a business-records certification pursuant to Rule 902(11). The records custodian for Gavin's endocrinologist provided a business-records certification for unredacted copies of Gavin's medical records. *See* Medley-Warsoff Decl. 4/16/19 Ex. D and E.

surgery as treatment for gender dysphoria. *See U.S. Dep't. of Hous. & Urban Dev. v. Cost Control Mktg.*, 64 F.3d 920, 926 n. 8 (4th Cir.) ("[T]he practical question presented by a motion for summary judgment is whether the case presents a genuine issue of fact for trial rather than whether the parties have put their evidence in final form.").

## II.    The Board Inadvertently Concedes that Its Policy Singles Out Transgender Students for Different Treatment.

Despite the restroom policy's facially discriminatory terms, the Board has long attempted to characterize the policy as a neutral rule that treats all students equally: "All students have two choices under the policy. Every student can use a restroom associated with their physiology, whether they are boys or girls. If students choose not to use the restroom associated with their physiology, they can use a private, single-stall restroom." Def.'s Opp. 31, ECF No. 200. By describing the policy as providing students with a "choice" the Board attempts to obscure the reality that policy forces transgender students to use separate restrooms that no other student is required to use.

In its opposition to Gavin's motion for summary judgment, the Board now admits what it has spent years trying to deny: that the Board believes transgender students do not belong in *any* common restrooms, including the ones associated with their sex assigned at birth. In support of his motion for summary judgment, Gavin argued that if the goal of the policy is to prevent students with different physiologies form using the same restrooms, then that goal is not actually advanced by a policy that places a boy who is transgender and receiving testosterone in the girls' restroom (or a girl who is transgender and receiving estrogen in the boys' restroom). The Board's opposition brief responds to that argument by dropping the pretense that the policy actually allows transgender students to use one of the common restrooms:

16

> Grimm creates another strawman argument in asserting that "even if there were an actual risk of exposure to nudity, the reality is that placing a boy who is transgender in the girls' restroom … would still mean that students would be 'in the presence of individuals with physical sex characteristics of the opposite sex.'" ECF Doc. 185, p. 40. Of course, this is not what the School Board's policy does. Instead, the School Board's policy provides for a single-user restroom to eliminate this concern.

Def.'s Opp. 34 n.7, ECF No. 200. The Board thus concedes that the Board's policy only serves the Board's stated interests related to physiology if transgender students do not use either the boys' restroom or the girls' restroom and instead use separate single-stall restrooms. Treating transgender students differently is the only way the policy serves the Board's asserted governmental interest.

### III. Gavin's Feelings of Stigma, Shame, and Humiliation Can Be Proven by Lay-Witness Testimony from Gavin and His Mother, and the Board Has Failed to Create a Triable Question of Fact Disputing Their Testimony.

As explained in Gavin's Opposition to the Board's Motion for Summary Judgment, the Board's challenge to the admissibility of lay testimony and the Board's demand for expert testimony regarding Gavin's gender dysphoria reflects a misunderstanding of Gavin's claims. Pl.'s Opp. at 16-17, ECF No. 201. The Board asserts that Gavin cannot prevail without "medical or expert testimony to prove the severity of the effects of gender dysphoria on Grimm or whether it was medically necessary for Grimm to use the boys' restroom at school to treat his purported gender dysphoria." *Id.* Gavin has, in fact, presented medical records demonstrating that a clinical psychologist diagnosed him with gender dysphoria and recommended that he be allowed to use restrooms that align with his identity as part of his social transition. But Gavin's legal claims are not based on the medical necessity of using the restroom or on the Board's exacerbation of his gender dysphoria. His claims are based on the physical pain and discomfort of being unable to use the restroom and "the deprivation of personal dignity that surely accompanies denials of

equal access to public establishments." *Roberts*, 468 U.S. at 625 (internal quotation marks omitted). No expert testimony is necessary to establish that "it is humiliating to be segregated from the general population." *G.G.*, 853 F.3d at 730 (Davis, J., concurring, joined by Floyd, J.); *see Adams by & through Kasper v. Sch. Bd. of St. Johns Cty., Fla.*, 318 F. Supp. 3d 1293, 1326-27 (M.D. Fla. 2018) (awarding transgender student damages for emotional distress without expert testimony).

Gavin's testimony about his own feelings of humiliation and of the physical pain caused by being unable to use the restroom is "rationally based on [his] own perception" and admissible as lay testimony under Federal Rule of Evidence 701. Although lay witnesses cannot offer expert testimony about medical diagnoses or causation, they "may testify regarding factual matters and opinions within their personal knowledge, including emotional, mental, and physical symptoms they personally suffered." *Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD, 2013 WL 211071, at *3 (D. Nev. Jan. 17, 2013). "Thus, the general rule is that a lay witness may testify about his own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Torres v. City of Chicago*, No. 12 C 7844, 2015 WL 12843889, at *8 (N.D. Ill. Oct. 28, 2015) (internal quotation marks omitted). And, under Fourth Circuit precedent, "a plaintiff's testimony, standing alone, can support an award of compensatory damages" for emotional distress caused by discrimination if "the evidence of the emotional distress" is "demonstrable, genuine, and adequately explained." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251-52 (4th Cir. 1996); *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 547 (4th Cir. 2003) (affirming award of $50,000 in damages without expert testimony).

The Board's attempt to create a disputed question of fact with respect to the medical necessity of gender-affirming transition-related care is not material to Gavin's actual legal

claims. Gavin's gender dysphoria diagnosis and treatment documentation letter are relevant to show the sincerity and objective verifiability of Gavin's statements to school officials that he is a boy who is transgender. The expert testimony of Dr. Penn is relevant to provide background information about the types of treatments provided to transgender youth and the effects of those treatments on their physiology and anatomy. But the medical necessity of transition-related care is not on trial in this case. Regardless of whether Defendant's purported expert agrees with gender-affirming care, the undisputed evidence establishes that the treatment is endorsed by the AAP and other leading major medical organizations and is provided to transgender youth in Virginia and throughout the country. *See* Van Meter Dep. 109:22-110:1, ECF No. 192-14 (agreeing that gender identity clinics "all over the country" are providing gender-affirming transition-related care).[5] That reality provides the background for understanding Gavin's lived experience as a boy who is transgender and shows that the challenged policy does not, as the Board contends, actually assign students to facilities based on their anatomical characteristics. But Gavin's claims are not based on the special psychological harm caused by the Board's interference with his medical treatment.

## IV.    The Board Continues to Provide Contradictory and Illogical Explanations for its Definition of "Biological Gender."

The Board has given so many contradictory explanations for how it defines "biological gender," that it cannot get its own story straight. The Board testified at the 30(b)(6) deposition that its restroom policy was based on students' birth certificates, not their genitals. Now, the Board apparently contends that its policy is based on genitals after all (although the Board's

---

[5] The Board's own attorney similarly acknowledged at a public School Board meeting that, "[t]here are doctors and psychologists and counselors at the larger medical facilities around the country and throughout Virginia that specialize in treating adolescents and especially adolescents with gender transition concerns." Video recording of the Feb. 19, 2019 Gloucester County School Board meeting (Medley-Warsoff Decl. 4/16/19 ¶ 1).

references to "physiology and anatomy" remain vague on this point). To grant summary judgment, the Court does not have to determine which of the Board's shifting explanations of its policy is the "true" explanation. Regardless of how the Board chooses to define "biological gender," the Board cannot show that its policy bears any connection to its stated interest in protecting privacy interests related to nudity. But the Board's inability to tell a consistent story without contradicting itself further demonstrates the fundamentally arbitrary and ad hoc nature of its policy.

The 30(b)(6) witness repeatedly testified—under oath and with counsel present—that the policy is not based on what a student's anatomy looks like or what surgery the student has had. For example, the Board's 30(b)(6) witness testified that, under the Board's policy, two transgender boys with identical physiologies and genitals would use different restrooms from each other if they had different gender markers on their birth certificates:

> Q: Two transgender students are in this hypothetical. There are two transgender boys who are both seniors at Gloucester High School in this hypothetical; and their bodies look the same as each other; they both had testosterone; both had chest surgery; but one of them has had an updated birth certificate and the other one hasn't.
>
> Under the Board's policy, the one with the updated birth certificate can use the boys restroom, but the one who has not had an updated birth certificate can use the women's restroom; is that right?
>
> A: Correct.
>
> MR. CORRIGAN: Object to form, foundation, legal conclusion. Go ahead.
>
> THE WITNESS: Correct.
>
> BY MR. BLOCK:
>
> Q: Even though their bodies are identical?
>
> A: Going back to what we spent the majority of the morning talking about, it's tied back to the gender marker on their records. So in the hypothetical you just described, one matches and one doesn't.

Anderson Dep. 75:13-76:14, ECF No. 192-13. The 30(b)(6) witness also testified that even if a transgender girl had a vaginoplasty should would have to use the boys' restroom if she did not yet have an updated birth certificate.

> [Q]: So under the Board's policy, a student could have estrogen for purposes of puberty and hormone treatment and fully developed breasts and a vagina through vaginoplasty, and even if that student has all those things, the student would still be designated as having a male biological gender for purposes of the Board's policy if that student's birth certificate still listed them as male?
>
> MR. CORRIGAN: Object to form, foundation, legal conclusion, incomplete hypothetical. Go ahead.
>
> THE WITNESS: Correct.
>
> Q: So in that scenario, the boys in the boys restroom could be in the same restroom as the transgender girl with a vagina; is that right?
>
> A: Say that one more time, please.
>
> Q: Boys in the boys restroom could be in the same restroom as a transgender girl with a vagina under the school board's biological gender policy; is that right?
>
> MR. CORRIGAN: Object to form, foundation, incomplete hypothetical, legal conclusion. Go ahead.
>
> THE WITNESS: Under the scenario you just described, yes.

Anderson Dep. 96:9-97:13, ECF No. 192-13.

In its opposition to Gavin's motion for summary judgment, the Board (through the unsworn assertions of counsel) now attempts to disavow what the 30(b)(6) witness said and adopt the polar opposite position. The Board now contends that the policy allows students with a male gender marker on their birth certificates to use the same restrooms as other boys unless other students discover that the student "was actually physiologically and anatomically female," which presumably refers to their genitals. Def.'s Opp. 26-27, ECF No. 200. The Board then faults Gavin's counsel for failing to "close[] the loop" by asking a question that would have supposedly elicited that testimony from the 30(b)(6) witness. *Id.*

Counsel's revisionist history cannot be reconciled with what the 30(b)(6) witness actually said. At no point during the deposition did the 30(b)(6) witness or the Board's counsel give the slightest hint that all of the witness's testimony about students using restrooms based on their birth certificates was contingent on whether other students complained or was dependent on the transgender student concealing their transgender status. Indeed, the witness testified that Gavin Grimm himself, who school officials clearly knew to be transgender, would have been allowed to use the same restrooms as other boys if he had obtained an amended birth certificate before enrolling in Gloucester High School.

> Q So if Gavin had attended school in a different school district, got in his amended birth certificate before his senior year, transferred to Gloucester County Public Schools for his senior year, and presented them with his updated birth certificate that listed his sex as male, what would Gavin's school records have listed his gender marker as being?
>
> MR. CORRIGAN: Object to the form, foundation, inaccurate, and incomplete hypothetical.
>
> Go ahead.
>
> THE WITNESS: So I just want to make sure again I heard what you said. So when he transferred to Gloucester County Public Schools, he provided a birth certificate that said male, and the question is what gender marker would he have on his Gloucester County Public Schools' records?
>
> BY MR. BLOCK:
>
> Q Yes.
>
> A Male.
>
> Q And he would be allowed to use the boys restrooms; is that right?
>
> A Correct.

Anderson Dep. 62:14-63:16, ECF No. 192-13. If the latest assertions in the Board's opposition to summary judgment are to be believed, then the 30(b)(6) witness should have testified that Gavin would only have been allowed to use the boys' restrooms if no one knew he was transgender.

Otherwise, the witness's failure to provide that information renders his sworn testimony materially misleading.

The Board cannot explain away the 30(b)(6) witness's testimony by arguing that it was provided under the assumption that Gavin would have had to undergo genital surgery in order to update his birth certificate. The 30(b)(6) witness explicitly disavowed that argument:

> [Q]: So does the school board contend that the medical procedures that Gavin has undergone are insufficient to change the gender marker on his birth certificate under Virginia law.
>
> A: No, that's not one of our arguments.
>
> Q: Okay. So you're not contending that his chest surgery did not qualify as surgery that warrants changing a birth certificate under Virginia law?
>
> A: No, not one of our arguments and not within our purview as a school board to determine.

Anderson Dep. 73:3-15, ECF No. 192-13. The Board's witness thus testified with the understanding that transgender students could receive amended birth certificates without genital surgery. Nothing in the witness's testimony supports the Board's latest contention that "biological gender" is determined by genitals instead of birth certificates.

## V. The Board Continues to Provide Contradictory and Illogical Explanations for Its Disregard for Gavin's Legal Documents.

The Board similarly offers a jumble of contradictory excuses for refusing to respect Gavin's birth certificate and court order.[6] If, as the 30(b)(6) witnesses testified, the Board's rejection of Gavin's documents was based on the appearance of Gavin's birth certificate and not

---

[6] The Board objects that Janet Rainey was not disclosed as a witness until after the close of discovery. Def's. Opp. 25 n.4, ECF No. 200. The Board never articulated any concerns about the appearance of Gavin's birth certificate until their 30(b)(6) testified on the last day of discovery. That 30(b)(6) deposition was noticed in December 2018 and had been repeatedly rescheduled at Defendant's request. J. Block Ltr. to D. Corrigan dated 3/19/2019 (Medley-Warsoff Decl. 4/16/19 Ex. A). After learning of the Board's concern for the first time at the 30(b)(6) deposition, Plaintiff's counsel then disclosed Janet Rainey as a witness within a week. *Id.*

based the belief that Gavin needed to have genital surgery, then the Board's refusal to articulate its purported concerns was inexplicably cruel and deceptive. And if, as the Board now asserts through counsel, the Board's rejection of Gavin's documents *was* based on the belief that Gavin needed to have genital surgery, then requesting a Family Educational Rights and Privacy Act ("FERPA") hearing would have been futile. There are no other documents to provide the Board beyond the birth certificate and court order that the Board refuses to respect.

As explained in Gavin's opposition to the Board's Motion for Summary judgment, ECF No. 201 at 19-21, the Board offers no legal or factual support for its disavowed-and-then-revived argument that Gavin's chest reconstruction surgery is not a surgical gender reassignment procedure as the term is used by the medical community or for purposes of Virginia's statutes. The DSM-V itself refer to chest-reconstruction surgery as a gender reassignment procedure, and the Board has not offered any expert testimony saying otherwise. DSM-V at 453, ECF No. 201-5. And even if the Board had a legal basis for disagreeing with the ruling of the Circuit Court for Gloucester County, the Board would still not be entitled to collaterally attack the court's declaration in these proceedings. *Hicks ex rel. Hicks v. Mellis*, 275 Va. 213, 219-20 (2008).

## CONCLUSION

For the foregoing reasons, Gavin's motion for summary judgment should be granted.

Respectfully submitted,

Counsel for Plaintiff Gavin Grimm

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA


/s/ Eden B. Heilman
Eden B. Heilman (VSB No. 93554)
Jennifer Safstrom (VSB No. 93746)
Nicole Tortoriello (VSB No. 91129)
701E. Franklin Street, Suite 1412
Richmond, VA 23219
(804) 644-8022 (Phone)
(804) 649-2733 (Fax)
eheilman@acluva.org
jsafstrom@acluva.org
ntortoriello@acluva.org

* Admitted *pro hac vice*

Dated: April 16, 2019

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Joshua A. Block*
Leslie Cooper*
Shayna Medley-Warsoff*
125 Broad Street
18th Floor
New York, NY 10004
(212) 549-2627 (Phone)
(212) 549-2650 (Fax)
jblock@aclu.org
lcooper@aclu.org
smedley@aclu.org

25

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2019, I filed the foregoing Reply Memorandum Of Law In Further Support of Plaintiff's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will automatically serve electronic copies upon all counsel of record.

/s/       Eden B. Heilman

Eden B. Heilman (VSB No. 93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Fax: (804) 649-2733
eheilman@acluva.org
*Counsel for Plaintiff*