IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

GAVIN GRIMM,                          )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )     Civil Case No. 4:15-cv-54-AWA-DEM
                                      )
GLOUCESTER COUNTY SCHOOL              )
BOARD,                                )
                                      )
                    Defendant.        )
_____       )

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S PETITION FOR FEES AND COSTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND .............................................................................................................. 1

ARGUMENT ................................................................................................................... 6

I.  Gavin's Award of Nominal Damages Entitles Him to Attorney's Fees. ......................... 6

II.  Gavin's Requested Attorney's Fees Are Reasonable and Should Be Granted. ................ 10

    A.  The Hours Requested Are Reasonable. ................................................................. 11

    B.  The Hourly Rates Are Reasonable. ....................................................................... 14

III.  There Are No Unrelated, Unsuccessful Claims to Subtract from the Lodestar Amount .. 23

IV.  Gavin Should Be Awarded the Full Lodestar Amount Without Further Reductions. ........ 26

V.  Gavin's Requested Litigation Costs Are Reasonable and Should Be Granted. ................ 29

VI.  Gavin Should Be Awarded Fees for Time Preparing the Fee Petition. ........................... 29

CONCLUSION ............................................................................................................... 30

CERTIFICATE OF SERVICE ......................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*A.W. v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
  No. 2:16-cv-00943 (E.D. Wis., July 19, 2016) ................................................................ 2

*Adams v. Sch. Bd. of St. John's Cty.*,
  No. 18-13592, 2021 WL 2944396 (11th Cir. July 14, 2021) ........................................ 8, 28

*Alliance to End Repression v. City of Chicago*, 356 F.3d 767 (7th Cir. 2004) ................................ 24

*B.P.J. v. W.V. State Bd. of Educ.*,
  2:21-cv-00316, 2021 WL 3081883 (S.D.W. Va. July 21, 2021) ...................................... 16

*Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*,
  No. 2:16-cv-00524 (S.D. Ohio, July 21, 2016) .............................................................. 2

*Bethune-Hill v. Va. State Bd. of Elections*,
  No. 3:14-CV-852, 2020 WL 5577824 (E.D. Va. Sept. 17, 2020) .............................. 19, 22

*BiotechPharma, LLC v. W.H.P.M., Inc.*,
  No. 1:11-CV-00444 TSE, 2012 WL 253090 (E.D. Va. Jan. 26, 2012) .......................... 11

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................... 17, 19

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) ...................................................... 8

*Bourke v. Beshear*, No. 3:13-CV-00750-CRS, 2016 WL 164626 (W.D. Ky. Jan. 13, 2016) ....... 26

*Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) .................................. 24, 25

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ........................................................ 7

*Courthouse News Serv. v. Schaefer*, 484 F. Supp. 3d 273 (E.D. Va. 2020) ............. 11, 14, 18, 29

*D.L. v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019) ...................................... 19

*Daly v. Hill*, 790 F.2d 1071 (4th Cir.1986) .......................................................... 14, 15, 26, 29

*Doe v. Kidd*, 656 F. App'x 643 (4th Cir. 2016) ...................................................... 9, 10

*Evancho v. Pine-Richland Sch. Dist.*, No. 2:16-cv-01537 (E.D. Pa., Oct. 6, 2016) ............ 2

*Fisher-Borne v. Smith*, No. 1:12-CV-589, 2018 WL 3581705 (M.D.N.C. July 25, 2018) ........... 18

*Fox v. Vice*, 563 U.S. 826 (2011) .......................................................................... 11

*G.G. v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016) ................................ 1

*G.G. v. Gloucester Cty. Sch. Bd.*, 853 F.3d 729 (4th Cir. 2017) (Mem.) ...................... 4, 28

*Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191 (E.D. Va. Dec. 18, 2020) ............ 10

*Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 136 S. Ct. 2442 (2016) (Mem.) ................ 3

*Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 1239 (2017) (Mem.) ................ 4

*Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 369 (2016) (Mem.) .................. 3

*Gloucester Cty. Sch. Bd. v. Grimm*, No. 20-1163, 2021 WL 2637992 (U.S. June 28, 2021). ........ 6

*Grimm v. Gloucester Cty. Sch. Bd.*,
No. 4:15-CV-54, 2017 WL 9882602 (E.D. Va. Dec. 12, 2017).................................5

*Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730 (E.D. Va. 2018) ........................5

*Grimm v. Gloucester Cty. Sch. Bd.*, 400 F. Supp. 3d 444 (E.D. Va. 2019) .............................1, 5, 13

*Grimm v. Gloucester Cty. Sch. Bd.*, 869 F.3d 286 (4th Cir. 2017)...........................................4

*Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020)...................................6, 8, 9

*Grimm v. Gloucester Cty. Sch. Bd.*, 976 F.3d 399 (4th Cir. 2020).........................................6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)........................................................... passim

*Hollingsworth v. Perry*, 558 U.S. 183 (2010) (per curiam)................................3, 28

*Jaffee v. Redmond*, 142 F.3d 409 (7th Cir. 1998)...................................................25

*Jaffee v. Redmond*, 518 U.S. 1 (1996) .....................................................................25

*Johnson v. Georgia Highway Express Inc*., 488 F.2d 714 (5th Cir. 1974) .......................10

*Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658 (4th Cir. 2015) ....................27

*M.A.B. v. Bd. of Educ. of Talbot Cty.*, 286 F. Supp. 3d  (D. Md. 2018) ...........................16

*McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013) ............................................................10, 23

*Mercer v. Duke Univ.*, 401 F.3d 199 (4th Cir. 2005) .............................................. 6, 8, 9, 13

*Obergefell v. Hodges*, 576 U.S. 644 (2015)...................................................................12, 15

*Ohio River Valley Env't Coal., Inc. v. Green Valley Coal Co.*,
511 F.3d 407 (4th Cir. 2007) ....................................................................... 14

*Ohio Valley Env't Coal., Inc. v. Wheeler*,
No. CV 3:15-0271, 2020 WL 247312 (S.D.W. Va. Jan. 15, 2020)..................................27

*Page v. Va. State Bd. of Elections*,
No. 3:13-CV-678, 2015 WL 11256614 (E.D. Va. Mar. 11, 2015).....................20, 22, 29

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) .................................................18, 20

*Priv. Matters v. U.S. Dep't of Educ. Doe*,
No. 16-CV-3015 (WMW/LIB), 2016 WL 6436658 (D. Minn. Oct. 27, 2016) ...........................16

*Project Vote/Voting for Am., Inc. v. Dickerson*, 444 F. App'x 660 (4th Cir. 2011).............7, 10, 27

*Reaching Hearts Intern., Inc. v. Prince George's Cty.*, 478 F. App'x 54 (4th Cir. 2012) ............15

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009)...................................23

*Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169 (4th Cir. 1994).......................................13, 16

*Smith v. Loudoun Cty. Pub. Sch.*,
No. 1:15CV956 (JCC/TCB), 2017 WL 176510 (E.D. Va. Jan. 17, 2017) .....................................18

*Soule v. Conn. Ass'n of Sch., Inc.*,
No. 3:20-CV-00201 (RNC), 2021 WL 1617206 (D. Conn. Apr. 25, 2021)..................................16

*Stone v. Trump*, 280 F. Supp. 3d 747 (D. Md. 2017) .............................................................. 16

*Stuart v. Walker-McGill*,
    No. 1:11-CV-804, 2016 WL 320154 (M.D.N.C. Jan. 25, 2016)................................ 15, 17, 18, 22

*Tanco v. Haslam*, No. 3:13-CV-01159, 2016 WL 1171058 (M.D. Tenn. Mar. 25, 2016)............ 12

*United States v. McCrory*, No. 1:16-cv-00425 (M.D.N.C. May 9, 2016)............................................ 2

*United States v. Windsor*, 570 U.S. 744 (2013) ...................................................................... 15

*Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988) .................................................................. 25

*Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618 (4th Cir. 1978) ................................... 29

**Statutes**

42 U.S.C. § 1983.............................................................................................................................. 9

42 U.S.C. § 1988......................................................................................................................7, 9, 12

Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g ...................... 10

Title IX of the Education Amendments of 1972, 20 U.S.C.§ 1681, *et seq.* .................................... 1, 2

Pursuant to Federal Rule of Civil Procedure 54(d), this Court's August 9, 2019 order granting summary judgment, ECF No. 229, and this Court's order dated October 9, 2021, ECF No. 248, Plaintiff Gavin Grimm submits the following petition for $1,284,735.75 in attorney's fees, as set forth in Appendix A, and $27,467.85 in litigation expenses and costs.

## BACKGROUND

This Court has already "trace[d] the arduous journey this case has followed since its inception." *Grimm v. Gloucester Cty. Sch. Bd.*, 400 F. Supp. 3d 444, 462 (E.D. Va. 2019). On December 9, 2014, the Gloucester County School Board (the "Board") passed a new policy excluding Gavin from using the same restrooms as other boys and forcing Gavin to use an "alternative" restroom created for students "with gender identity issues." *Id.* at 450. Gavin filed this lawsuit in June 2015, arguing that the Board's new restroom policy violated his rights under Title IX of the Education Amendments of 1972, 20 U.S.C.§ 1681, *et seq.,* and the Equal Protection Clause of the Fourteenth Amendment. *See id.* at 451.

This Court initially dismissed Gavin's Title IX claim from the bench, ECF No. 47, and denied Gavin's Motion for a Preliminary Injunction because Gavin had failed to present evidence of irreparable harm that would have been admissible under the Federal Rules of Evidence. ECF Nos. 53, 57.  But after an interlocutory appeal, the Fourth Circuit reversed the dismissal of Gavin's Title IX claim and vacated the denial of Gavin's Motion for a Preliminary Injunction. *See G.G. v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016). Deferring to an *amicus* brief from the United States, the Fourth Circuit held that when a school provides sex-separated restrooms, the school must allow students who are transgender to use facilities consistent with their gender identity. *See id.* at 722-23. The Fourth Circuit also vacated the denial of Gavin's Motion for a Preliminary Injunction because the Federal Rules of Evidence do not apply to such motions. *See id.* at 725-26. After the Fourth Circuit denied the Board's petition for rehearing en banc and issued

1

its mandate, this Court granted Gavin's Motion for a Preliminary Injunction on June 23, 2016, in time for Gavin to use the boys' restrooms at the beginning of his senior year. ECF No. 69.

The Fourth Circuit's decision was the first time a federal court had held that Title IX protects the rights of transgender students to use restrooms consistent with their gender identity. The decision had an immediate and dramatic impact. Relying on the Fourth Circuit's decision, the Department of Justice and the Department of Education issued guidance documents on May 13, 2016, advising schools across the country that Title IX and its regulations do not authorize schools to exclude transgender students from sex-separated facilities and activities consistent with their gender identity. *See* Dear Colleague Letter on Transgender Students (May 13, 2016), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201605-title-ix-transgender.pdf. Following the release of its guidance, the Department of Justice also brought litigation in North Carolina to prevent the state from enforcing a new statute prohibiting transgender people from using restroom and locker facilities that did not match their birth certificate. *See, e.g.*, Complaint, ECF No. 1, *United States v. McCrory*, No. 1:16-cv-00425 (M.D.N.C. May 9, 2016). Across the country, transgender students who had been prohibited from using common restrooms filed new lawsuits in the wake of Gavin's victory. *See* Complaint, ECF No. 1, *A.W. v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, No. 2:16-cv-00943 (E.D. Wis., July 19, 2016); Jane Doe Motion to Intervene as Third-Party Plaintiff, ECF No. 15, *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-cv-00524 (S.D. Ohio, July 21, 2016); Complaint, ECF No. 1, *Evancho v. Pine-Richland Sch. Dist.*, No. 2:16-cv-01537 (E.D. Pa., Oct. 6, 2016).

But the Board continued to steadfastly oppose allowing Gavin to use the boys' restroom. Before the new school year began, the Board filed an application with the Supreme Court to recall and stay the Fourth Circuit's mandate and to stay the preliminary injunction issued by this Court

on remand. *See* Sup. Ct. Dkt, No. 16-273.[1] In accordance with the Supreme Court's standards for granting such stays, the Board argued there was "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 189 (2010) (per curiam). Only four Justices concluded that the Board had satisfied the criteria for a stay, but Justice Breyer nevertheless provided a fifth vote granting the application "as a courtesy" to other members of the Court. *Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 136 S. Ct. 2442 (2016) (Mem.).

The Board then filed a petition for a writ of certiorari, and the Supreme Court granted that petition on October 28. *See Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 369 (2016) (Mem.). The questions presented by the Board's petition and accepted by the Supreme Court for review were whether the Fourth Circuit properly deferred to the government's interpretation of Title IX and its regulations, and whether that interpretation was correct. *See* Questions Presented, No. 16-273.[2] Neither the petition nor the Board's subsequent merits briefs made any argument relating specifically to Gavin's request for injunctive relief.

Gavin's case was scheduled for oral argument to be heard on March 28, 2017. *See* Sup. Ct. Dkt, No. 16-273.[3] But after the incoming Trump administration confirmed a new Attorney General and a new Secretary of Education, the Department of Justice and Department of Education withdrew the interpretation of Title IX to which the Fourth Circuit had deferred. On March 6, 2017, the Supreme Court vacated and remanded the case to the Fourth Circuit for further consideration in light of the government's new actions. *See Gloucester Cty. Sch. Bd. v. G.G. ex*

---

[1] https://www.supremecourt.gov/search.aspx?filename=/docketfiles/16-273.htm
[2] https://www.supremecourt.gov/qp/16-00273qp.pdf.
[3] https://www.supremecourt.gov/search.aspx?filename=/docketfiles/16-273.htm

*rel. Grimm,* 137 S. Ct. 1239 (2017) (Mem.). Before the case was remanded, Gavin's attorneys had been forced to spend hundreds of hours preparing the merits brief, recruiting and working with supportive *amici curiae*, and preparing for oral argument. Block Decl. ¶¶ 20-23 and Ex. A.

By the time the case was remanded, there was also insufficient time for the Fourth Circuit to rule before Gavin would graduate from high school in the spring of 2017. The Fourth Circuit vacated the district court's preliminary injunction, which had been based on the Fourth Circuit's now-vacated opinion. *See G.G. v. Gloucester Cty. Sch. Bd.*, 853 F.3d 729 (4th Cir. 2017) (Mem.). But Judge Davis, joined by Judge Floyd, wrote separately, noting that "[t]oday [Gavin] adds his name to the list of plaintiffs whose struggle for justice has been delayed and rebuffed; as Dr. King reminded us, however, 'the arc of the moral universe is long, but it bends toward justice.' [Gavin's] journey is delayed but not finished." *Id.* at 730. A few months later, the Fourth Circuit remanded the case back to the district court to determine whether Gavin's claims for injunctive relief had been mooted by graduation. *See Grimm v. Gloucester Cty. Sch. Bd.*, 869 F.3d 286 (4th Cir. 2017).

On remand, Gavin filed an Amended Complaint to add new allegations about events that occurred at Gloucester since his case was first filed. ECF No. 133. The Amended Complaint explained that Gavin had received gender-affirming chest surgery, obtained on order from Virginia state court recognizing him as male, and obtained an updated birth certificate from the Virginia Department of Vital Records recognizing him as male in accordance with the state court order. But despite all this, the Board had refused to update Gavin's school records to match his birth certificate and continued to exclude him from using the same restrooms as other boys. The Amended Complaint also clarified that Gavin's damages claim sought only nominal damages. Although the Amended Complaint initially sought permanent injunctive relief, Gavin agreed to have that request voluntarily dismissed. *See* ECF No. 132.

4

This Court denied the Board's request to dismiss Gavin's claim for nominal damages for lack of an Article III case or controversy, *see Grimm v. Gloucester Cty. Sch. Bd.,* No. 4:15-CV-54, 2017 WL 9882602 (E.D. Va. Dec. 12, 2017), and then denied the Board's motion to dismiss for failure to state a claim, *see Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730 (E.D. Va. 2018). Revisiting the previous decision to dismiss Gavin's Title IX claim, this Court noted that "there has been a significant change in the applicable law since the Motion to Dismiss the Title IX claim was initially considered in 2015." *Grimm*, 302 F. Supp. 3d at 741. Reviewing the issues de novo, this Court held that Gavin had stated valid claims under both Title IX and the Equal Protection Clause. *See id.* at 742-52.

Discovery commenced in earnest, and a few months later, Gavin moved for leave to file a Second Amended Complaint, which this Court ultimately granted over the Board's opposition. *See* ECF No. 170, 176-77. The Second Amended Complaint added new claims under Title IX and the Equal Protection Clause based on the Board's continued refusal to provide Gavin with an accurate school transcript that matched his updated birth certificate. For these new claims, the Second Amended Complaint sought additional declaratory relief, nominal damages, and an injunction requiring the Board to provide Gavin with an updated and accurate school transcript.

Finally, on August 9, 2019—after ninth months of discovery and cross-motions for summary judgment—this Court granted Gavin's motion for summary judgment and provided Gavin with all the relief requested in the Second Amended Complaint. *See Grimm v. Gloucester Cty. Sch. Bd.*, 400 F. Supp. 3d 444 (E.D. Va. 2019). As part of its decision, this Court ordered that "[t]he Board shall pay Mr. Grimm's reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988." *Id.* at 464.

A year later, on August 26, 2020, the Fourth Circuit affirmed this Court's decision in its entirety. *See Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020). The Board petitioned for rehearing en banc, which the Fourth Circuit denied on September 9, 2020. *Grimm v. Gloucester Cty. Sch. Bd.*, 976 F.3d 399 (4th Cir. 2020). The Board then filed another petition for a writ of certiorari, which the Supreme Court denied on June 28, 2021. *See Gloucester Cty. Sch. Bd. v. Grimm*, No. 20-1163, 2021 WL 2637992 (U.S. June 28, 2021).

By agreement of the parties, and pursuant to this Court's order dated October 9, 2020, ECF No. 248, Gavin's petition for fees and costs is due 30 days after the denial of a petition for a writ of certiorari.

## ARGUMENT

### I.     Gavin's Award of Nominal Damages Entitles Him to Attorney's Fees.

When a plaintiff is awarded nominal damages, the court must make an initial assessment to determine whether the victory justifies an award of attorney's fees. In some cases, "when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees" because "the appropriate fee in such a case is no fee at all." *Farrar v. Hobby*, 506 U.S. 103, 117, 122 (1992) (O'Connor, J., concurring). In determining whether an award of nominal damages entitles a prevailing plaintiff to a fee award, courts in the Fourth Circuit must consider (1) the degree of the plaintiff's overall success, (2) the significance of the legal issue on which the plaintiff prevailed, and (3) the public purpose served by the litigation. *See Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005). All three of the *Mercer* factors strongly support Gavin's entitlement to attorney's fees in this case.

Under the first *Mercer* factor, Gavin obtained an extremely high degree of success and received all of the relief requested in his Second Amended Complaint.[4] "Unlike the plaintiff in *Farrar*,"—who sought $17 million and received only $1—Gavin "never sought any extravagant or personal financial benefit." *Project Vote/Voting for Am., Inc. v. Dickerson*, 444 F. App'x 660, 664 (4th Cir. 2011). Gavin sought nominal damages to vindicate important dignitary harms for himself and other transgender students, which cannot easily be measured by money. "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (plurality). As the Fourth Circuit recognized when it affirmed summary judgment in Gavin's favor, "winning nominal damages under 42 U.S.C. § 1983 allows for a recovery of attorney's fees under 42 U.S.C. § 1988, thereby allowing plaintiffs with insufficient funds to hire an attorney at market rate, and with little prospect of a great recovery, to be matched with a civil rights attorney." *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 604 n.6 (4th Cir. 2020).

Under the second *Mercer* factor, the legal issues on which Gavin prevailed were all significant matters of first impression for the Fourth Circuit. Gavin's 2016 victory in the Fourth Circuit was the first case in which a federal court held that Title IX protects the rights of transgender students to use restrooms consistent with their gender identity. Although federal courts across the county have now reached that conclusion, those cases were all filed in the wake of Gavin's victory. *See Grimm*, 302 F. Supp. 3d at 741 (noting that "there has been a significant

---

[4] As discussed below, Gavin's high degree of success is not diminished by the fact that his graduation ultimately mooted his claims for injunctive relief with respect to using the restrooms.

change in the applicable law since the Motion to Dismiss the Title IX claim was initially considered in 2015" and listing cases that were all filed after Gavin's Fourth Circuit victory).

Gavin's second victory before the Fourth Circuit in 2020 was equally momentous. Gavin established in this Circuit that the Supreme Court's reasoning in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), applies to Title IX and protects transgender students from discrimination. *Grimm*, 972 F.3d at 616. Gavin established that discrimination against transgender people is subject to heightened scrutiny both because it discriminates based on sex and because transgender status independently constitutes a quasi-suspect classification. *See id.* at 613. He established that treating transgender individuals based on their sex assigned at birth instead of their gender identity is a form of discriminatory and unequal treatment under both the Equal Protection Clause and Title IX. *See id.* at 609, 618-19. He established that students may challenge discriminatory refusals to update school records without exhausting alleged remedies under the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g. *See id.* at 605. And he established that such refusals violate the Equal Protection Clause and Title IX as well. *See id.* at 615-16, 619.[5]

Any one of these legal issues of first impression would be important enough to merit attorney's fees under *Mercer*. *Cf. Mercer*, 401 F.3d at 206 (holding that the legal issues in the case were important because: "Mercer's case established that the contact-sports exemption does not permit a school to discriminate against women that the school has allowed to participate in contact sports. Mercer's case was the first to so hold, and it will serve as guidance for other schools facing

---

[5] By contrast, in a case with similar facts, the Eleventh Circuit recently issued a revised opinion resolving the case on more limited grounds. *See Adams v. Sch. Bd. of St. John's Cty.*, No. 18-13592, 2021 WL 2944396 (11th Cir. July 14, 2021). Unlike the original panel opinion, the revised opinion declined to address whether a policy excluding a transgender student from the restroom violated Title IX, declined to address whether the policy constituted discrimination against transgender students, and declined to address what level of scrutiny would apply to such discrimination.

the issue."); *Doe v. Kidd,* 656 F. App'x 643, 653 (4th Cir. 2016) (holding that legal issue was important for purposes of awarding attorney's fees because the case "was the first to establish in this Circuit that a litigant can enforce their rights under the Medicaid Act through § 1983" and because it "has served as guidance to courts and parties facing this issue and similar issues that have arisen under the Medicaid Act, and will continue to do so").

Finally, under the third *Mercer* factor, Gavin's victory served a public purpose. "In our legal system, with its reliance on *stare decisis* and respect for precedent, a case involving the claim of a single individual, without any request for wide-ranging declaratory or injunctive relief, can have a profound influence on the development of the law and on society." *Mercer*, 401 F.3d at 208 Gavin's case was ground-breaking litigation that changed the landscape of legal protections for transgender students in the Fourth Circuit and throughout the country. As Judge Davis explained:

> [Gavin's] case is about much more than bathrooms. It's about a boy asking his school to treat him just like any other boy. It's about protecting the rights of transgender people in public spaces and not forcing them to exist on the margins. It's about governmental validation of the existence and experiences of transgender people, as well as the simple recognition of their humanity. His case is part of a larger movement that is redefining and broadening the scope of civil and human rights so that they extend to a vulnerable group that has traditionally been unrecognized, unrepresented, and unprotected.

*G. G.*, 853 F.3d at 730 (Davis, J., concurring, joined by Floyd, J.). And when the Fourth Circuit affirmed this Court's decision granting summary judgement, the court compared Gavin's case to some of "[t]he proudest moments of the federal judiciary . . . when we affirm the burgeoning values of our bright youth, rather than preserve the prejudices of the past." *Grimm*, 972 F.3d at 620.

Like the lawsuit in *Mercer*, Gavin's case "marked a milestone in the development of the law under Title IX" and "likewise serve[d] a significant public purpose, by furthering Title IX's goal of eliminating discrimination in educational institutions." *Mercer*, 401 F.3d at 207-08. Both as a direct result of the Fourth Circuit's holdings, and as a result of the case's influence on other

courts, Gavin's case "opened the courthouse doors" for transgender students in the Fourth Circuit and across the country. *Doe*, 656 F. App'x at 653. A case that so manifestly serves a greater public interest "is the very form of litigation Congress wished to encourage by enacting § 1988." *Project Vote/Voting for Am., Inc.*, 444 F. App'x at 664.

## II.     Gavin's Requested Attorney's Fees Are Reasonable and Should Be Granted.

"The proper calculation of an attorney's fee award involves a three-step process. First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (cleaned up). In calculating the lodestar figure, "the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Id.* (footnote omitted).[6] But "the Court need not address all twelve *Johnson* factors independently because many of these considerations are subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate." *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *6 (E.D. Va. Dec. 18, 2020).

"Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (cleaned up). "Finally, the court should award some

---

[6] The *Johnson* factors are:

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5.

10

percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (cleaned up). In performing this task, "[w]hat the court must ask is whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 92 (cleaned up).

### A. The Hours Requested Are Reasonable.

In determining whether the number of requested hours is reasonable, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*; *accord BiotechPharma, LLC v. W.H.P.M., Inc.*, No. 1:11-CV-00444 TSE, 2012 WL 253090, at *2 (E.D. Va. Jan. 26, 2012). "[I]t is not the function of the courts in reviewing fees to second guess every minute detail of time spent by an attorney in working on a case." *Courthouse News Serv. v. Schaefer*, 484 F. Supp. 3d 273, 279 (E.D. Va. 2020) (cleaned up).

Gavin seeks to recover reasonable fees for the following hours, as set forth in Block Decl. Exhibits. A-D, and Heilman Decl. Exhibits A-E:

| | |
|---|---|
| Joshua Block | 1,321.93 hours (from 2015 – 2021) |
| Rebecca Glenberg | 52.33 hours (2015) |
| Gail Deady | 149.47 hours (from 2015 – 2018) |
| Shayna Medley | 328.25 hours (from 2018 – 2019) |
| Eden Heilman | 145 hours (from 2018 – 2021) |
| Jennifer Safstrom | 81.45 hours (from 2018-2019) |

In calculating the number of hours reasonably expended, Gavin has voluntarily excluded hundreds of hours from the ACLU's current and former national Legal Director, the ACLU's Deputy Legal Director, the ACLU's LGBTQ & HIV Project Director, and other senior ACLU attorneys who helped work on the case once it reached the Supreme Court in 2016-2017 and 2020-2021. *See* Block Decl. ¶¶ 20-21, 27. Plaintiff has also excluded (a) hours spent by another attorney at the ACLU national office who reviewed drafts and provided feedback, (b) hours from the former legal director of the ACLU of Virginia in 2016 and 2017, (c) approximately 70 hours from an attorney with 2 to 5 years of experience at the ACLU of Virginia, and (d) all hours spent by paralegals at the national ACLU and ACLU of Virginia. *See* Block Decl. ¶ 19; Heilman Decl. ¶ 15.

As a result of the foregoing exclusions, the hours encompassed in the fee petition reflect a case that was staffed leanly and "in house," without the need to recruit additional law firms as co-counsel. *See* Perrelli Decl. ¶ 11 ("In my experience, both the staffing structure from 2015 to 2018 and post June 2018 as well as the amount of hours total from those periods were extraordinarily lean for this type of matter."); Sellers Decl. ¶ 12 ("The legal team handled this case in a highly efficient manner."); *cf. Tanco v. Haslam*, No. 3:13-CV-01159, 2016 WL 1171058, at *5 (M.D. Tenn. Mar. 25, 2016) (recounting the large number of attorneys and multiple law firms staffed on each of the four cases consolidated as *Obergefell v. Hodges*, 576 U.S. 644 (2015)).[7]

---

[7] Although Mr. Block was lead counsel and the primary drafter of legal briefs, the litigation also required close collaboration and contact between attorneys at the national ACLU who were admitted *pro hac vice* and attorneys at the ACLU of Virginia who have been admitted to practice in this Court. Heilman Decl. ¶ 13 Even when counsel from the national ACLU took primary responsibility for particular tasks, counsel from the ACLU of Virginia were required under Local Civil Rule 83.1(D)(2)-(3) and (F) to personally appear at every court appearance and personally file and sign every document submitted to this Court.  ACLU of Virginia attorneys also had to be sufficiently prepared "that the Court [could] deal with the attorney alone in all matters connected with the case," if necessary. Local Civil Rule 83.1(D)(3).

The hours for which Gavin seeks compensation are reasonable for a case of this duration and complexity. This Court has already "trace[d] the arduous journey this case has followed since its inception." *Grimm v. Gloucester Cty. Sch. Bd.*, 400 F. Supp. 3d 444, 462 (E.D. Va. 2019). In total, this case has spanned six years of litigation, including a motions hearing before the district court; a successful appeal to the Fourth Circuit; briefing before the Supreme Court regarding the Board's motion to stay and recall the mandate, the Board's petition for a writ of certiorari, and the merits brief after certiorari was granted; further briefing on remand to the Fourth Circuit; another round of briefing on the Board's motion to dismiss; discovery with depositions of lay and expert witnesses; more briefing on a motion for leave to file a Second Amended Complaint; summary judgment briefing and a motions hearing; another appeal to the Fourth Circuit; and further briefing at the Supreme Court opposing the Board's second petition for a writ of certiorari. And throughout the course of the litigation, the Board has opposed Gavin every step of the way. Gavin's attorneys even had to obtain a declaration from the Virginia Registrar to rebut the Board's baseless assertions that his legal documents were invalid. *See Grimm*, 400 F. Supp. 3d at 458 ("[T]he Board's continued recalcitrance in the face of Ms. Rainey's Declaration and the court order from the Gloucester County Circuit Court is egregious.").

In light of this litigation's long history, the number of hours spent by Gavin's attorneys over the course of six years simply reflects the fact that "the litigation was vigorously contested by the [Board] at every step." *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994); *cf. Mercer*, 401 F.3d at 211 ("Given the nature of this litigation, which was hard fought by both sides, has been on-going for more than seven years, and is now in the middle of its third appeal, we cannot conclude merely from the size of the fee award that the award is unreasonable."); *Doe*, 656 Fed. Appx. at 657 (affirming fee award and noting that "the litigation was vigorously

contested by the defendants at every step" and plaintiff "was required to appeal twice to this Court, each time succeeding in her effort").

A "[d]efendant cannot fight the case to its last breath, and then complain that the attorneys' fees are disproportionate." *Courthouse News Serv.*, 484 F. Supp. at 273 (cleaned up). In the face of the Board's implacable opposition, the hours spent by Gavin's attorneys were reasonable.

### B. The Hourly Rates Are Reasonable.

A spreadsheet calculating the requested lodestar amounts for each attorney is attached as Appendix A. Gavin requests that fees be awarded at the following hourly rates, with a 50% discount for hours spent on travel:

| Name | Years of Experience | Rate |
|---|---|---|
| Joshua Block | 10 (in 2015) – 16 (in 2021) | $650 (before 6/1/16); $750 (after 6/1/16) |
| Rebecca Glenberg | 18 (in 2015) | $650 |
| Eden Heilman | 12 (in 2018) – 15 (in 2021) | $650 |
| Gail Deady | 4 (in 2015) – 7 in (2018) | $450 |
| Shayna Medley | 1 (in 2018) – 2 (in 2019) | $350 |
| Jennifer Safstrom | < 1 (in 2018- 2019) | $300 |

In accordance with Fourth Circuit precedent, the requested hourly rates reflect the current market rates instead of historical ones. "In awarding attorney fees, a district court is required to account for 'the effect of delay in payment on the value of the fee.'" *Ohio River Valley Env't Coal., Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 419 (4th Cir. 2007) (quoting *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir.1986)). "The delay factor may be accounted for either by using a fee rate based on the current market or by using the historical fee rate with reasonable interest added." *Id.* "[I]n a typical case, using current market rates is "an appropriate way to compensate for a delay in

payment for attorney's fees," *Reaching Hearts Intern., Inc. v. Prince George's Cty.*, 478 F. App'x 54, 60 (4th Cir. 2012), and may also "simplify the task of the district court," *Daly*, 790 F.2d at 1081 (quotations omitted); *accord Stuart v. Walker-McGill*, No. 1:11-CV-804, 2016 WL 320154, at *17 n.54 (M.D.N.C. Jan. 25, 2016) (using current rates).

### 1.   The Rates Requested for Mr. Block Are Reasonable.

Gavin seeks fees for Joshua Block at a rate of $650 per hour for work performed before June 1, 2016, and $750 per hour for work performed after June 1, 2016. Mr. Block is a Senior Staff Attorney at the ACLU's LGBTQ & HIV Project in New York. Block Decl. ¶ 8. He was lead counsel on this case through every stage of the proceedings. *Id.* at ¶ 18. Mr. Block was the primary drafter of all memoranda of law, appellate briefs, and Supreme Court filings in the case. *Id.* He presented oral argument twice before the district court, and twice before the Fourth Circuit. *Id.* As discussed below, the rates requested for Mr. Block are reasonable in light of his level of experience, his specialized expertise, and the excellent representation provided in this case.

Mr. Block graduated from Yale Law School in 2005 and clerked the following year for Judge Robert D. Sack on the U.S. Court of Appeals for the Second Circuit. Block Decl. ¶¶ 2-3. From 2006 to 2010, Mr. Block was a litigation associate at the law firm Jenner & Block LLP in their New York office, where he worked on complex commercial litigation, internal investigations, white-collar defense, and appellate litigation at the United States Courts of Appeals and the Supreme Court. *Id.* at ¶¶ 4-7.

Mr. Block joined the ACLU's LGBTQ & HIV Project in 2010 and has worked there for the past 11 years. Block Decl. ¶ 8. As a senior litigator at the ACLU, Mr. Block has litigated landmark cases about the legal protections for LGBTQ people throughout the country, including *United States v. Windsor*, 570 U.S. 744 (2013); *Obergefell v. Hodges*, 576 U.S. 644 (2015); and

*Stone v. Trump*, 280 F. Supp. 3d 747 (D. Md. 2017), *stay denied*, No. 17-2398, 2017 WL 9732004 (4th Cir. Dec. 21, 2017). *See* Block Decl. ¶¶ 9-10 (discussing other examples).

Mr. Block has extensive experience litigating on behalf of students and people who are transgender, and he has developed particular expertise protecting transgender students from being excluded from restrooms, locker rooms, or other sex-separated education activities. *See* Block Decl. ¶¶ 9-11; *B.P.J. v. W.V. State Bd. of Educ.*, 2:21-cv-00316, 2021 WL 3081883 (S.D.W. Va. July 21, 2021) (representing girl who is transgender who was excluded from middle school athletics team); *Soule v. Conn. Ass'n of Sch., Inc.*, No. 3:20-CV-00201 (RNC), 2021 WL 1617206 (D. Conn. Apr. 25, 2021) (representing girls who are transgender in attempt to exclude them from high school athletics team); *M.A.B. v. Bd. of Educ. of Talbot Cty.*, 286 F. Supp. 3d 704 (D. Md. 2018) (represented boy who is transgender and was excluded from the locker rooms); *Priv. Matters v. U.S. Dep't of Educ. Doe*, No. 16-CV-3015 (WMW/LIB), 2016 WL 6436658 (D. Minn. Oct. 27, 2016) (represented girl who is transgender in case attempting to exclude her from locker rooms).

In determining a reasonable hourly rate for Mr. Block, the Court may properly consider the prevailing market rates, not only in Richmond, but also in New York and D.C. Under the Fourth Circuit's decision in *Rum Creek*, "[t]he relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits," but out-of-market rates may be awarded when "the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally," and "the party choosing the attorney from elsewhere acted reasonably in making the choice." 31 F.3d. at 175.

Gavin's decision to retain counsel at the national ACLU's LGBTQ & HIV Project in New York was reasonable and necessary under *Rum Creek*. *See* Perrelli Decl. ¶¶ 10-11; Sellers Decl. ¶ 11. There are no attorneys in the Virginia legal market with the same depth and breadth of

experience in litigating the constitutional rights of LGBTQ people. Heilman Decl. ¶ 17. And unlike attorneys at private law firms, Mr. Block and the ACLU were able to represent Gavin throughout the course of the litigation without payment or the prospect of a significant financial recovery though a contingency fee. *See Stuart*, 2016 WL 320154, at *16 (awarding out-of-market rates because "there is no evidence that there were any experienced constitutional lawyers in the state who were as familiar with the confluence of reproductive rights and First Amendment law as the out-of-state attorneys hired by the plaintiffs . . . . Nor is there any evidence that these hypothetical lawyers would have taken on such a labor-intensive pro bono representation.").

Retaining Mr. Block and the ACLU was also reasonable because the legal issues in this case were novel and complex, raising cutting-edge questions about the rights of transgender students under Title IX and the Constitution. At the time the case was first filed, no other federal court had previously held that Title IX protects the rights of transgender students to use restrooms consistent with their gender identity. Against the backdrop of a changing legal landscape, Gavin's case required creativity, specialized knowledge, and expertise. *See* Perrelli Decl. ¶ 10 ("Because of its critical national importance and its unusually complex procedural path, this is the sort of complex constitutional litigation that requires highly-skilled counsel who understand not only the substantive constitutional and administrative law but also appellate and Supreme Court procedure."); Sellers Decl. ¶ 11 ("This type of complex constitutional litigation requires highly-skilled counsel who understand administrative and constitutional law, complex trial and appellate procedure, and who can handle the immense pressure of litigating a case attracting intense media and other interest."). And because of his expertise and prior knowledge, Mr. Block was also able to perform tasks quickly, efficiently, and at minimal cost. *Cf. Blum v. Stenson*, 465 U.S. 886, 898 (1984) ("[W]here the experience and special skill of the attorney will require the expenditure of

fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue . . . the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.").

In similar circumstances, courts in this Circuit have repeatedly recognized that the specialized nature of complex constitutional litigation justifies an award based on out-of-market rates for out-of-market attorneys. *See Courthouse News Serv.*, 484 F. Supp. 3d at 279 (awarding out-of-market rates because "[t]he issues presented in this case go beyond basic issues of First Amendment law" and "[i]t is entirely reasonable that Plaintiff should be entitled to recover fees for the use of lawyers that have familiarity with both the Plaintiff's media practices and the complex intricacies that are involved in these right of access for the press cases"); *Fisher-Borne v. Smith*, No. 1:12-CV-589, 2018 WL 3581705, at *4 (M.D.N.C. July 25, 2018) (awarding out-of-market rates because "[t]hese cases presented complex constitutional issues in a quickly evolving area of law, justifying the services of skilled, experienced counsel").

"[T]he lodestar method" is designed to "roughly approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis omitted). Here, Gavin seeks a fee award for Mr. Block's hours at a rate of $650 per hour for work performed before June 1, 2016, and $750 per hour for work performed after June 1, 2016. The requested rates for Mr. Block are at or below the market rates for litigation in D.C. as reflected in the Adjusted Laffey Matrix (also known as the LSI Laffey Matrix).[8] According to the Adjusted

---

[8] "The Laffey matrix was established by the D.C. courts to assess presumptively reasonable local market rates for D.C.-based attorneys and is updated periodically." *Stuart*, 2016 WL 320154, at *17. "[T]here are two formulations of the Laffey Matrix: the LSI model and the more conservative U.S. Attorney's Office model." *Smith v. Loudoun Cty. Pub. Sch.*, No. 1:15CV956 (JCC/TCB), 2017 WL 176510, at *3 (E.D. Va. Jan. 17, 2017). Courts within the Fourth Circuit

Laffey Matrix, the prevailing market rate in D.C. for an attorney with 8-10 years of experience is $672, and the prevailing market rate for an attorney with 11-19 years of experience is $759. *See* http://www.laffeymatrix.com/see.html.

As explained in the declarations of Mr. Perrelli and Mr. Sellers, the requested hourly rates for Mr. Block "are not only reasonable but significantly less than the prevailing rates for this kind of work in the legal markets in Washington, D.C. and New York," where attorneys engaged in similar complex constitutional litigation are often compensated at rates "at least 50% higher than the rates at which compensation is sought here." Sellers Decl. ¶ 14. Indeed, attorneys with the same level of experience engaged in such litigation "would typically be billed at a rate of approximately $1,000 or more." Perrelli Decl. ¶ 15.  In other words, the actual rate that an attorney comparable to Mr. Block would receive from a paying client in a comparable case is "well above the market rates for complex constitutional litigation in D.C. as reflected in the Adjusted Laffey Matrix." Perrelli Decl. ¶ 16.

Moreover, even if the Court were to focus exclusively on market rates in Virginia, the requested rates for Mr. Block are also within the range of rates charged by Richmond law firms. As discussed below in connection with the rates for other counsel, the market rates at large Richmond firms in 2019 ranged from $585 for junior partners to $937 for senior partners. *See Bethune-Hill v. Va. State Bd. of Elections*, No. 3:14-CV-852, 2020 WL 5577824, at *8-*9 (E.D. Va. Sept. 17, 2020). Mr. Block's expertise in this area of law and his high quality of representation would justify a fee award at the "high end" of the market range. *See Blum*, 465 U.S. at 899 ("The

---

have relied upon the Adjusted Laffey Matrix as "more accurate" when determining the prevailing market rates for litigation in D.C. *Id.* Although some courts had previously favored the U.S. Attorney's Office model, the D.C. Circuit recently held that the U.S. Attorney's Office model did not accurately reflect the market rates for complex civil litigation in D.C. and should not be relied upon. *D.L. v. District of Columbia.*, 924 F.3d 585, 591 (D.C. Cir. 2019).

'quality of representation,' . . . generally is reflected in the reasonable hourly rate."); *Perdue*, 559 U.S. at 554-55 (explaining that "if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar)" the hourly rates may be increased to "measure the attorney's true market value"); *cf. Page v. Va. State Bd. of Elections*, No. 3:13-CV-678, 2015 WL 11256614, at *7 (E.D. Va. Mar. 11, 2015) (explaining that an award of "high-end rates to these attorneys is justified given their extensive political law and redistricting litigation experience, which proved essential to Plaintiffs' success in a case that was vigorously defended" and "[t]he Court's hourly rate award will thus reflect counsel's high quality of representation").

Considering all the relevant factors, the requested rates for Mr. Block are reasonable and should be granted.

### 2. The Rates Requested for Ms. Medley and ACLU of Virginia Attorneys Are Reasonable.

For many of the same reasons that apply to Mr. Block, the rates requested for Ms. Medley and the ACLU of Virginia attorneys are reasonable in the Richmond market. The extensive credentials and years of experience for each of these attorneys is recounted in Block Decl. ¶¶ 24, Medley Decl. ¶¶ 2-5, and Heilman Decl. ¶¶ 1-8, 10-11.

- Rebecca Glenberg is the former Legal Director of the ACLU of Virginia. Ms. Glenberg graduated from the University of Chicago School of Law in 1997 and served as Legal Director at the ACLU of Virginia from 1999 until November 2015. Since 2015, Ms. Glenberg has worked at the ACLU of Illinois as Senior Civil Liberties Staff Counsel. *See* Heilman Decl. ¶ 11.

- Eden Heilman is the current Legal Director of the ACLU of Virginia. She graduated from Loyola University New Orleans College of Law in 2006. Before joining the ACLU of Virginia in 2018, Ms. Heilman served as the Managing Attorney of the

Southern Poverty Law Center's office in New Orleans where she directed the organization's litigation and policy advocacy efforts in Louisiana, with a specific emphasis on children's rights, education, and juvenile justice. *See* Heilman Decl. ¶¶ 1-8.

- Gail Deady was an attorney at the ACLU of Virginia when she worked on Gavin's case. She graduated from Washington & Lee University School of Law in 2011 and worked as a litigation associate at McCandlish Holton in Richmond before joining the ACLU of Virginia in 2015. She is currently a staff attorney at the Center for Reproductive Rights in New York. *See* Heilman Decl. ¶ 11.

- Shayna Medley worked at the ACLU LGBTQ & HIV Project for two years as a Skadden fellow following her graduation from Harvard Law School in 2017. She began working on Gavin's case during the second year of her fellowship and had already developed significant litigation experience defending the ability of transgender students to use restrooms consistent with their gender identity. Ms. Medley is currently working as a legal fellow at the Center for Reproductive Rights in New York. *See* Block Decl. ¶ 24; Medley Decl. ¶¶ 2-5.

- Jennifer Safstrom worked as a legal fellow at the ACLU of Virginia following her graduation from Georgetown University Law Center in 2018. She currently works as Counsel at the Institute for Constitutional Advocacy and Protection at Georgetown University Law Center. *See* Heilman Decl. ¶ 10.

Gavin seeks hourly rates for these attorneys based on the prevailing legal market in Richmond, where the ACLU of Virginia is located. As noted above in connection with the rates for Mr. Block, there is no comparable law firm in Norfolk that would have the same expertise in

civil rights litigation and that would be financially able to represent Gavin over the course of six years without payment or the prospect of a contingency fee. *See* Heilman Decl. ¶ 17; *Stuart*, 2016 WL 320154, at *16. Moreover, as with the rates for Mr. Block, rates at the higher end of the legal market are warranted based on counsel's high quality of representation and the excellent results they obtained. *Cf. Page*, 2015 WL 11256614, at *7.

The requested rates are well within the range of rates for the Richmond legal market. In *Bethune-Hill v. Virginia State Bd. of Elections*, No. 3:14-CV-852, 2020 WL 5577824, at *8-*9 (E.D. Va. Sept. 17, 2020), a three-judge court accepted declarations from attorneys at McGuireWoods and Troutman Sanders as reliable evidence of the prevailing market rates in Richmond for purposes of awarding attorney's fees. According to one of those declarations, Richmond market rates for McGuireWoods between 2017-2019 were between $870 and $937 for senior partners, between $732 and $760 for junior partners, between $496 and $534 for senior associates, between $368 and $432 for junior associates, and between $260 and $281 for paralegals. *See* Haynes Decl. from *Bethune-Hill* ¶ 6 (attached as Block Decl. Ex. E). According to the other declaration, Richmond markets rates in 2019 for Troutman Sanders were between $585 and $855 for partners, between $370 and $550 for associates, and between $145 and $270 for paralegals. *See* Angle Decl. from *Bethune-Hill* ¶ 12 (attached as Block Decl. Ex. F).

The requested rates for all of Gavin's attorneys are either below—or squarely within—the market rates accepted in *Bethune-Hill*:

| Name | Years | Requested Rate | McGuireWoods 2017-19 Rate | Troutman Sanders 2019 Rate |
|---|---|---|---|---|
| Joshua Block | 10– 16 | $650 until 6/1/16 $750 after 6/1/16 | $732 to $937 | $585 to $855 |
| Rebecca Glenberg | 18-20 | $650 | $870 to $937 | $585 to $855 |

| Eden Heilman | 12– 15 | $650 | $732 to $937 | $585 to $855 |
| Gail Deady | 4– 7 | $450 | $496 to $543 | $370 to $550 |
| Shayna Medley | 1– 2 | $350 | $368 to $432 | $370 to $550 |
| Jennifer Safstrom | < 1 | $300 | $368 to $432 | $370 to $550 |

Considering all relevant factors, the requested hourly rates are reasonable and should be granted.

### III.  There Are No Unrelated, Unsuccessful Claims to Subtract from the Lodestar Amount.

After calculating the proper lodestar amount, the court must then "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (cleaned up). But this step applies only when a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories" and "counsel's work on one claim [is] unrelated to his work on another claim." *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983). It does not apply when "the plaintiff's claims for relief [involve] a common core of facts or [are] based on related legal theories." *Id.* at 435. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Because Gavin prevailed on all of his claims, and because those claims all revolved around a common core of facts, there are no "unsuccessful" or "unrelated" claims to subtract from the lodestar amount. Although Gavin graduated before he was able to obtain a permanent injunction allowing him to resume using the boys' restrooms, a plaintiff's failure to obtain a particular form of relief is taken into account by the court in "step three" of the "three-step process," *McAfee*, 738 F.3d at 88, when evaluating the plaintiff's overall degree of success—not in "step two" when

subtracting hours for unrelated claims. Moreover, as discussed below, a plaintiff who obtains excellent results may recover a full fee award even if they "did not receive all the relief requested." *Hensley*, 461 U.S. at 435 n.11.

There is also no basis to subtract fees for allegedly "unsuccessful" hours spent by counsel at the Supreme Court opposing the Board's application to stay and recall the mandate, opposing the Board's petition for a writ of certiorari, and filing a brief on the merits before the Supreme Court remanded the case to the Fourth Circuit for further consideration. "[A] plaintiff is not to be denied full attorneys' fees merely because he lost some interim rulings en route to ultimate success." *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 770 (7th Cir. 2004) (citations omitted). Rather, "a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to [his] ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

The Ninth Circuit's decision in *Cabrales* is directly on point. The plaintiff in *Cabrales* prevailed in the Ninth Circuit, but the defendant filed a petition for a writ of certiorari, and the Supreme Court vacated and remanded the decision for further consideration. On remand, the plaintiff again prevailed before the Ninth Circuit and successfully opposed the defendant's second petition for a writ of certiorari. The Ninth Circuit held that the plaintiff was entitled to attorney's fees for the work opposing *both* petitions for writs of certiorari, including the "unsuccessful" work opposing certiorari the first time around. The court explained that "[i]f a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings. Here, although the Supreme Court vacated our judgment, the Court's order was simply a temporary setback on the way to a complete victory for plaintiff." *Cabrales*, 935 F.2d at 1053.

The Seventh Circuit reached the same conclusion in *Jaffee v. Redmond*, 142 F.3d 409 (7th Cir. 1998), when it held that a plaintiff who prevailed on her section 1983 claim was entitled to recover fees for time she spent at the Supreme Court unsuccessfully arguing against recognition of a psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996). Agreeing with the Ninth Circuit's decision in *Cabrales*, the Seventh Circuit explained that "the adverse rulings" on the psychotherapist-patient privilege "that she suffered along the way were merely temporary setbacks on her way to victory. That these setbacks did not contribute to Jaffee's ultimate success is not completely determinative; what is critical is whether the argument, and the extent to which Jaffee pursued it, was reasonable." *Jaffee*, 142 F.3d at 414 (citations omitted).

As in *Cabrales* and *Jaffee*, Gavin's "unsuccessful" briefing before the Supreme Court in 2016 and 2017 was "simply a temporary setback on the way to a complete victory." *Cabrales*, 935 F.2d at 1053. Indeed, Gavin's entitlement to attorney's fees is even stronger than the right to attorney's fees in *Jaffee* because—unlike Jaffee—Gavin was the party defending the judgment below, not the party who sought out the Supreme Court's review. "[W]hen the defendant appeals and the plaintiff incurs expenses in defending against the appeal . . . he should be entitled to reimbursement of those fees" because "he had no choice but to incur them or forfeit his victory." *Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988).

The number of hours spent by Gavin's attorneys defending his victory at the Supreme Court was also reasonable. In an exercise of billing judgment, Gavin's counsel has already limited the requested fees for the ACLU to hours spent by Mr. Block, who was the primary drafter of the briefs. The fee petition excludes hundreds of hours spent by other ACLU attorneys reviewing and editing various drafts, planning legal strategy, coordinating and reviewing *amicus* briefs, and

helping Mr. Block prepare for oral argument. Block Decl. ¶¶ 10-21.[9] Especially with these reductions, the number of hours reflected in this fee petition is well within the range of hours typically incurred for Supreme Court litigation. *See* Sellers Decl. ¶ 13 ("The hours Mr. Grimm's attorneys devoted to litigating the case in the Supreme Court appear lower than is typical for litigation in that Court, and reflect highly efficient work.").

Excluding or further reducing hours spent at the Supreme Court would also be inappropriate because the time invested by Gavin's attorneys at the Supreme Court paid dividends throughout the rest of the litigation. Block Decl. ¶ 23. Using the Supreme Court brief as a starting point, Gavin's attorneys were able to reduce the hours spent when drafting briefs later in the case. *Id.* The Board is now able to reap the benefits of those reduced hours in the form of reduced attorney's fees. If the Court were to exclude hours litigating before the Supreme Court from Gavin's fee award, it would give the Board a windfall by allowing the Board to enjoy the benefits of time Gavin's attorneys invested at the Supreme Court without paying for the cost of the investment.

## IV. Gavin Should Be Awarded the Full Lodestar Amount Without Further Reductions.

The final step in calculating a fee award is to determine whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. "A proper computation of the lodestar fee will, in the great majority of cases, constitute the 'reasonable fee' contemplated by [Section] 1988." *Daly v. Hill*,

---

[9] Fees for these hours would typically be fully recoverable as part of Supreme Court litigation. *See Bourke v. Beshear*, No. 3:13-CV-00750-CRS, 2016 WL 164626, at *3 (W.D. Ky. Jan. 13, 2016) (awarding fees for 390.95 hours spent by eight additional attorneys who reviewed the drafts of Supreme Court briefs because "[b]rief writing is often a collaborative process" and "it is reasonable to have multiple individuals revising and reworking a draft brief"); *id.* at *6 (awarding fees for time spent coordinating amicus briefs because "[a] paying client would expect an attorney to seek out a variety of amici that could assist in the case's presentation").

790 F.2d 1071, 1078 (4th Cir. 1986). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and the award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.

The fact that Gavin graduated from high school before he was able to obtain permanent injunctive relief with respect to using the restroom does not undermine his degree of overall success or justify departing from the lodestar amount. The Supreme Court in *Hensley* explained that when a plaintiff obtains excellent results it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Id.* at 435 n.11. "For example, a plaintiff who failed to recover damages but obtained injunctive relief, *or vice versa*, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* (emphasis added). Instead of "view[ing]" the lawsuit "as a series of discrete claims," the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435; *accord Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015) (court did not abuse its discretion in declining to reduce the lodestar figure even though plaintiff obtained only one-third of the damages sought); *see also Ohio Valley Env't Coal., Inc. v. Wheeler*, No. CV 3:15-0271, 2020 WL 247312, at *4 (S.D.W. Va. Jan. 15, 2020).

Reducing the lodestar amount would be particularly unwarranted in this case because Gavin's inability to obtain permanent injunctive relief before graduation "did not turn on the court's judgment as to the merits of the case." *Project Vote/Voting for Am., Inc. v. Dickerson*, 444 F. App'x 660, 663–64 (4th Cir. 2011). Gavin successfully obtained a preliminary injunction on June 23, 2016. Although the Supreme Court subsequently stayed that injunction pending disposition of the Board's petition for a writ of certiorari, the Supreme Court grants such stays

based on merely "a fair prospect" of reversal. *Hollingsworth v. Perry*, 558 U.S. 183, 189 (2010). And under the unique facts of this case, a majority of Justices did not agree that a stay was warranted but Justice Breyer nevertheless provided a fifth vote for the stay merely "as a courtesy." The injunction was subsequently vacated, not based on the Supreme Court's assessment of the merits of the case, but based on the Trump administration's unilateral withdrawal of guidance that the Fourth Circuit had relied upon.

For all these reasons, the fact that Gavin graduated before he could receive a second injunction does not detract from his extraordinary level of success. "Despite his youth and the formidable power of those arrayed against him at every stage of these proceedings," *G.G.*, 853 F.3d at 731 (Davis, J., concurring), Gavin ultimately won a landmark victory that completely vindicated his legal claims and awarded all the relief requested in the Second Amended Complaint. The Fourth Circuit's ruling affirming summary judgement vindicated each and every one of Gavin's legal arguments, resolved several important questions of first impression, and was a landmark victory that will continue to shape the landscape of legal protections for transgender students.[10] That overwhelming victory amply "justified th[e] expenditure of attorney time" over the long life of this hard-fought litigation. *Hensley*, 461 U.S. at 435 n.11. Because Gavin achieved "excellent results," he "should recover a fully compensatory fee." *Id.* at 435.[11]

---

[10] By contrast, as noted above, the Eleventh Circuit recently issued a revised opinion resolving the *Adams* case on more limited grounds. *See Adams v. Sch. Bd. of St. John's Cty.*, No. 18-13592, 2021 WL 2944396 (11th Cir. July 14, 2021).

[11] Even if a reduction were otherwise appropriate, such a reduction has already been factored into the lodestar amount because—as discussed above—plaintiff has already excluded hundreds of hours spent by other ACLU attorneys who worked on Gavin's case at the Supreme Court. In light of those very substantial exclusions, any further reduction to the lodestar would be improper.

**V.      Gavin's Requested Litigation Costs Are Reasonable and Should Be Granted.**

A plaintiff who is entitled to attorney's fees is also entitled to recover reasonable litigation expenses. *See Daly*, 790 F.2d at 1084. These reasonable expenses include "supplemental secretarial costs, copying, telephone costs and necessary travel." *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623-24 (4th Cir. 1978). "[T]ravel expenses and meals [that] coincide with appearances before [the] Court and deposition dates . . . fall squarely within the definition of 'necessary travel.'" *Page*, 2015 WL 11256614, at *14.

As set forth in Block Decl. Ex. G (totaling $24,889.14 in expenses) and Heilman Decl. Ex. F (totaling $2,578.71 in expenses), Gavin is entitled to $27,467.85 in recoverable litigation expenses and costs.

**VI.     Gavin Should Be Awarded Fees for Time Preparing the Fee Petition.**

"Time spent defending entitlement to attorney's fees is properly compensable in a § 1988 fee award." *Daly*, 790 F.2d at 1080. Gavin's award of attorney's fees should include the hours preparing this petition and supporting documents, as set forth in Block Decl. Ex. C and Heilman Decl. Ex. A. Using billing judgment, Gavin has reduced the number of hours actually spent preparing the petition and seeks an award based on 35 hours from Mr. Block and 15 hours for Ms. Heilman. Gavin also seeks fees at a reduced rate of $550 per hour for both attorneys. Applying that reduced rate, this Court should award additional attorney's fees in the amount of $27,500, which is well within the range of what other courts in this district have found reasonable. *Cf. Courthouse News Serv.*, 484 F. Supp. 3d at 280 (finding that 219.9 hours is an excessive amount of time to devote to a fee petition and reducing requested fees on fees from $135,747.50 to $50,000).

**CONCLUSION**

The Court should award a total of $1,284,735.75 in attorney's fees, as set forth in Appendix

A, and $27,467.85 in litigation expenses and costs.

Dated: July 26, 2021                                    Respectfully submitted,


AMERICAN CIVIL LIBERTIES UNION                          AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.                            FOUNDATION
                                                        Joshua A. Block*
_____/s/_____                                   Leslie Cooper*
Eden B. Heilman (VSB No. 93554)                         125 Broad Street
ACLU of Virginia                                        18th Floor
701E. Franklin Street, Suite 1412                       New York, NY 10004
Richmond, VA 23219                                      (212) 549-2627 (Phone)
(804) 644-8022 (Phone)                                  (212) 549-2650 (Fax)
(804) 649-2733 (Fax)                                    jblock@aclu.org
eheilman@acluva.org                                     lcooper@aclu.org


* Admitted *pro hac vice*

*Counsel for Plaintiff Gavin Grimm*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July 2021, I filed the foregoing Memorandum of

Law in Support of Petition for Fees and Costs with the Clerk of the Court using the CM/ECF

system, which will automatically serve electronic copies upon all counsel of record.


_____/s/_____Eden B. Heilman_____

Eden B. Heilman (VSB No. 93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Fax: (804) 649-2733
eheilman@acluva.org

*Counsel for Plaintiff*